## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

Charles Pernell Prophet and
Shirley Ann Prophet,
                          Debtors.

Case No. 20-03131-dd
Chapter 7

## MOTION OF THE UNITED STATES TRUSTEE FOR REVIEW OF THE CONDUCT OF BENJAMIN R. MATTHEWS & ASSOCIATES, CANCELLATION OF ATTORNEY FEE AGREEMENTS, DISALLOWANCE AND RETURN OF FUNDS PAID, AND OTHER RELIEF AS MAY BE APPROPRIATE WITH SUPPORTING MEMORANDUM

The Acting United States Trustee for Region Four (the "UST") hereby moves for the

Court to review the conduct of Benjamin R. Matthews & Associates (hereafter referred to as

"Attorney"), to order the cancellation of attorney fee agreements, disallowance and return of

fees paid to Attorney, and to grant other relief as may be appropriate pursuant to 11 U.S.C.

§§ 105(a), 329(b), 526, Fed. R. Bankr. P. ("Rules") 2016 and 2017, and the Court's inherent

authority to address attorney conduct (the "Motion") in the above-captioned debtors' ("debtors"

or "the Prophets") case.[1]

### JURISDICTION, VENUE AND STANDING

1.   The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This

Motion is filed pursuant to 11 U.S.C. §§ 105, 329, and 526, Rules 2016 and 2017, and Local

Civil Rule 83.IX.01 DSC and the Court's inherent authority.

2.   This matter is a core proceeding.  28 U.S.C. § 157(b)(2)(A) and (O).

3.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The UST is also filing similar motions in the cases of *In re Rosenchein*, Case No. 20-03171-dd
and *In re Naughton*, Case No. 20-03293-dd.

4.    The UST has standing to bring this Motion pursuant to 11 U.S.C. § 307[2] and 28
U.S.C. § 586(a).

## **INTRODUCTION**

This Motion concerns the chapter 7 consumer business practices of the debtors' attorney.
Upon information and belief, in an attempt to increase his client base, Attorney has implemented
business practices which include the following features: (1) the marketing of no money down
chapter 7 bankruptcy cases; (2) bifurcation of bankruptcy services into pre-petition and post-
petition components; (3) performance of limited pre-petition services for purportedly no charge;
(4) the post-petition collection of fees for post-petition services in an amount significantly higher
than normally charged in chapter 7 cases where fees are collected pre-petition; and (5) the
assignment of accounts receivable for attorney fees owed by the debtors in exchange for the
immediate receipt of a significantly discounted amount.  These practices resulted in contracts for
the payment of fees in excess of the value of the services provided, in the failure of the attorney
to adequately disclose the arrangements related to the payment of attorney fees, in conflicts of
interest, in sharing of confidential client information with a third party, and in violation of local
rules regarding the limitation on the scope of representation.

In order to address the concerns based on the facts and arguments set forth below, the
UST requests that the Court enter an order granting the following relief: (1) cancellation of the
fee agreements, (2) disallowance and return of fees, and (3) other relief that may be appropriate
under §§ 105(a), 329(b), 526, Fed. R. Bankr. P. ("Rules") 2016 and 2017.

---

[2]  All further references to 11 U.S.C. § 101 *et seq*. will be by section number only.

# FACTS

A. Facts Specific to This Case

1.  The debtors filed for relief pursuant to chapter 7 of the United States Bankruptcy Code on August 3, 2020.  Counsel of record for the debtors is Attorney.  Attorney, on behalf of the debtors, filed their petition, statement of social security number, certificates of credit counseling, and list of creditors.  The filing fee was paid at the time the petition was filed.

2.  Attorney is a "debt relief agency" as defined in § 101(12A) that provided bankruptcy assistance to the debtors.

3.  The debtors are "assisted persons" as defined by § 101(3) because they have primarily consumer debts and the value of their non-exempt property is less than $204,425.

4.  On August 7, 2020, copies of the debtors' pay advices were filed.

5.  On August 14, 2020, Attorney filed on behalf of the debtors their bankruptcy schedules, statement of financial affairs, statement of intent, and chapter 7 statement of current monthly income.  Attorney also filed his disclosure of compensation (the "Fee Disclosure").  A copy of the Fee Disclosure is attached as *Exhibit A*.

6.  The Fee Disclosure reflected that the debtors agreed to pay $2,400 for legal services, of which $1,200 had been received prior to filing and $1,200 remained due.  The source of the compensation paid to Attorney was shown as "X" before debtor and a "?" before Other.  The Fee Disclosure also has a "?" in the box before "other" in response to the source of compensation to be paid to me.  The Fee Disclosure also has a "?" before: "I have agreed to share the above-disclosed compensation with [an]other person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached."  No agreement is attached.

7.  In section 7 of the Fee Disclosure, it states that the filing fee is included in the fee described above.

8.  In section 8 of the Fee Disclosure, it describes that the debtors were offered two options for payment of the fees: (1) pre-pay the full amount prior to the chapter 7 bankruptcy petition being filed; or (2) bifurcate the attorney services into pre- and post-petition work to allow the debtors to file "right away" and making post-petition fees for the post-petition work. The Fee Disclosures provides that "**Counsel charges a higher fee for the second option.**" [emphasis added]

9.  The reasons given in the Fee Disclosure for the higher fee are:

   a.  Counsel performs additional work to split the engagement;

   b.  Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front;

   c.  The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;

   d.  The option gives the debtor an opportunity to begin rebuilding their credit score by making timely payments toward the attorney fee;

   e.  Counsel will not charge the debtor additional fees for certain services that if required would otherwise cost the debtor(s) more if debtor(s) had paid the entire fee before the case was filed; and

   f.  FSF (described below) charges a fee to Counsel for its financing, payment management, credit reporting and other services provided to Counsel, for which FSF charges a fee equal to 25% of the attorney fee that the Law Firm charges debtor(s) for the post-petition services.

10. Other than a second meeting with the debtors to sign the post-petition filing agreement, it is not clear what additional work Attorney provides due to the split engagement.

11. In regards to the debtors receiving the benefit of a quicker filing, a review of chapter 7 cases filed by Attorney in April 2020 show that Attorney filed 12 cases. A review of item 16 of the statement of financial affairs ("SOFA") show that 7 of the 12 cases paid their fees in March 2020 and the cases were filed in April 2020. A review of item 16 of SOFA in the 17 cases filed in August 2020[3] show that 4 of the 17 cases paid fees for credit counseling or some pre-petition funds in July or June 2020[4]. Item 16 of SOFA for the Prophets show they paid in July and August 2020.

12. In regards to the debtors benefitting from the rebuilding of their credit score by making timely payments toward the attorney fees, the post-petition filing agreement (discussed below) provides in paragraph 3D, that FSF can report negatively on the debtor's credit if the debtors fail to make the agreed payments.

13. If the bifurcated option is chosen, based on the pre-filing agreement, services for which no additional fees are charged are: reviewing and revising on any turnover demands from the chapter 7 trustee; attending continued meeting of creditors; reviewing and advising regarding any 2004 exams and attending such exams; reviewing and advising regarding any audit by the UST; preparing and filing claims or objections to claims when appropriate; reviewing and advising on avoidance of liens impairing a debtor's exemption; drafting and/or negotiating a reaffirmation agreement and attending an related hearing; preparing and filing amendments to the debtor's schedule sand statements; and preparing and filing a motion to reinstate the case. If

---

[3] Attorney filed 19 chapter 7 cases in August 2020, but two cases paid total fees of $1,950 and $500 upfront and were not part of the bifurcated system. Item 16 of SOFA in these two cases show $1,950 paid and no separate listing for the filing fee or credit counseling, and $125 for attorneys' fees and $14.95 for credit counseling (Case No. 20-03337-dd and Case No, 20-03150-dd), respectively.
[4] Four of the cases had "no" marked for item 16 of SOFA.

the bifurcated option is not chosen, these services are charged at $250 per hour for attorney time

and $120 per hour for paralegal time.  Of the 12 chapter 7 cases filed in April 2020, one case had

a reaffirmation agreement filed and two had amended schedules and statements filed.  There was

no supplement fee disclosure statement filed showing any additional fees paid as required by

Rule 2016(b), thus, it is presumed no additional charge was made in these cases.  Of the 17 cases

filed in August 2020, one case had two reaffirmation agreements filed.[5]

14. A review of fee disclosures filed in upfront payment cases show that Attorney

included in his services: negotiations with secured creditors to reduce to market value;

exemption planning; preparing and filing of reaffirmation agreements and applications as

needed; preparation and filing of motions pursuant to 11 U.S.C. § 522(f)(2)(A) for avoidance of

liens on household goods.  A copy of one of the fee disclosures is attached as *Exhibit B*.  It

appears some services that had been included in the flat fee were changed to supplemental

services under the bifurcated system.

15. The last reason given for the higher fee is that FSF charges 25% of the post-petition

fees charged by the debtor.  It appears this is the primary reason for the higher fee and does not

benefit the debtor, but only the Attorney in charging the higher fee to cover this charge.

16. Paragraph 11 of the Fee Disclosure provides that debtor(s) were fully informed and

provided their informed consent to the bifurcation of services, lien of FSF against the receivable,

FSF's payment management and credit reporting services, and to a limited sharing of

information with FSF concerning debtors to facilitate counsel's financing and FSF's payment

management, processing, and credit reporting concerning the debtors.  However, the Fee

Disclosure appears to show that Attorney is not certain of the impact of the bifurcated system as

---

[5] Motions to avoid liens on household goods were not filed in any of the cases although
numerous cases indicated on the statement of intent that the debtor would avoid the lien.

"?" were used to indicate who made the payment and whether Attorney is sharing his fees.   If

Attorney does not understand the bifurcated system, the debtors certainly would not understand

and be able to provide their informed consent.

B. <u>Pre-Filing Agreement</u>.

17. The attorney for the UST contacted Attorney and requested copies of the agreements

used in the bifurcated system.   Two sets of pre-filing and post-filing agreements were provided

and are attached hereto as *Exhibits C and D*  In one set of the documents, the debtor(s) can

choose to pay $500 down and $2,060 over time, or, they can choose to pay $0 down and $2,800

over time.[6] If the debtor choses to pay all the fees upfront, the fees due are shown as $2,350.

Under all options, the total amount includes the filing fee.   The amounts listed in the pre-filing

agreement show the mark-up for the bifurcated services as $200 if $500 is paid pre-petition or

$450 if $0 is paid upfront.   However, a review of the fees charged in the chapter 7 cases filed by

Attorney in April 2020 show that six cases paid $1,715, one paid $1,800, one paid $1,815, one

paid $975, one paid $1,250, one paid $2,115, and one paid $2,130.[7] Using the mode of $1,715,

the mark-up under the bifurcated system is actually $1,085 if $0 is paid upfront and $845 if $500

is paid upfront.[8]

---

[6] In this case according to the Fee Disclosure, the debtors agreed to pay $2,400 and paid $1,200
prior to the bankruptcy filing.
[7] Attorney has stated that these cases do not include the filing fee, credit report, and credit
counseling expenses.  The fee for the credit report is unknow, but the remaining expenses total
$350.  Thus, the mark-up is still significant.
[8] In May 2020, Attorney filed 10 chapter 7 cases, according to the fee disclosures filed in those
cases Attorney received $1,715 in four cases, $1,750 in three cases, $1,700 in one case, $2,100 in
one case, and $1,560 in one case.  In June 2020, Attorney filed 12 chapter 7 cases, in which
Attorney was paid upfront in nine of the cases.  Of the nine cases, Attorney received $1,715 in
four cases, $1,750 in one case, $1,315 in one case, $1,365 in one case, $1,550 in one case, and
$1,900 in one case.  In July 2020, Attorney filed 11 chapter 7 cases, in which he was paid
upfront in six cases.  In the six cases, Attorney received $1,715 in two cases, $1,725 in one case,
$1,740 in one case, $1,665 in one case, and $1,975 in one case.

18. The pre-filing services to be provided under the bifurcated system are: meeting and consulting with the client as needed prior to the case; analyzing the information from the intake questionnaire and other documents providing due diligence, legal analysis and legal advice; and preparing and filing the petition, statement about social security numbers, filing pre-petition counseling certificates, and a list of creditors. Attorney represented to the UST that in pre-filing he determined the debtor's income to be sure they qualified for chapter 7 and asked questions that may affect bankruptcy such as whether they had filed bankruptcy before. Attorney stated that no documents were reviewed.

19. If the debtors choose to pay $0 down, the pre-petition services are free. If the debtors choose to pay $500 down, Attorney stated that this covered the filing fee, credit report, and other expenses. Thus, the pre-petition legal services are free. In the debtors' case, they paid $1,200 pre-petition which Attorney has stated $500 is applied pre-petition for expenses and the remaining $700 is applied to post-petition services, thereby reducing the monthly payments made by the debtors for post-petition work.

20. Under the pre-filing agreement, if the debtors choose option #1, the debtors are paying $2,350 upfront, which includes the filing fee. Part (4) under option #1 states that if you cannot pay the $335 filing fee, you may request the court to allow you to pay it over time. Part 4 does not clearly state that $2,015 would be the required upfront fee and not $2,350 if this option is chosen.

21. Under the pre-filing agreement, if the debtors choose to file now and pay later, they are told that it is more expensive and that the **pre-filing services are not all of the tasks that must be completed to successfully complete your chapter 7 case.** After the case is filed, the debtor may choose to proceed *pro se*, hire another attorney, or within 10 days after the case is

filed enter into a post-filing agreement with Attorney. The debtors are told that if they do not choose to enter into the post-filing agreement, then Attorney will seek to be relieved as counsel but will continue to provide services until the court allows Attorney to withdraw.

22. Part 3 of the pre-filing agreement provides information on Attorney's borrowing funds from Fresh Start Funding ("FSF") and FSF's collection of payments from the debtors. It also provides that the debtors understand that Attorney will share personal information regarding the debtors with FSF, and that FSF may pursue collection activities against the debtors if they do not make the required payments.

23. Part 3, paragraph E, also provides that the debtors represent that although the schedules may reflect that the debtors cannot afford to make the post-petition payments, the debtors believe that they can make the payments. None of the schedule Js filed in the bifurcated cases reflect the post-petition payments to be made to FSF. Of the 17 cases filed in August 2020 under the bifurcated system, the net income shown on Schedule J ranged from **negative** $2,134.57 to positive $202, with an average net income of **negative** $168.92. Seven of the seventeen cases had negative net income on Schedule J. Here, the Prophets had a net income of $202 on Schedule J.

24. Part 3, paragraph F, provides that FSF has underwriting guidelines regarding which of Attorney's clients qualify "for the FSF Program". If the debtors do not meet the guidelines, Attorney reserves the right to not offer the file now pay later option. Thus, debtors responding to the advertisement of chapter 7 cases for no money down may find themselves being ineligible for this arrangement. The advertising used on Attorney's website states that "most people should qualify for this program". A copy of the advertisement is attached hereto as *Exhibit E.*

25. Part 4 of the pre-filing agreement discusses conflicts of interest.  It provides that Attorney cannot represent the debtor in deciding whether to enter into the agreement, that there is a conflict in Attorney trying to help the debtor obtain a fresh start while having the debtor incur a non-dischargeable debt for Attorney's services, that Attorney is borrowing funds for the debt being incurred by the debtor, that Attorney expects the debtor to pay FSF to pay off the debt, that Attorney is sharing information about the debtor with FSF[9], that if the debtor opposes Attorney withdrawing due to the debtors' failure to sign the post-filing agreement, it creates a conflict, and that if collection actions are initiated due to the debtors' failure to make the required payments, it would create a non-waivable conflict.

26. Part 6 of the pre-filing agreement states that the bifurcated system is not intended to unbundle services, but instead "to facilitate you making payments over time for your attorney fee."

27. Part 6 also provides that "after further analysis and review of your financial situation, the Law Firm may determine that you do not qualify for a Chapter 7 or that a Chapter 13 bankruptcy will be more appropriate."

C.  Post-Filing Agreement.

28. The post-filing agreement has much of the same language as the pre-filing agreement. In Part 6, paragraph H, it includes a three-day right of recission.  In paragraph J, the debtors, in part, authorize FSF to collect payments and re-attempt to process a payment multiple times and

---

[9] The agreement discusses the waiver of the attorney-client privilege, but it does not discuss the broader requirement of confidentiality under Rule 1.6 of the South Carolina Rules of Professional Conduct.

on different dates until a payment clears, and can charge the debtors $25 for each returned

payment, which can be separately debited from the debtors' account.

29. The post-filing agreement includes the debtors' bank account/debit card number,

address, email, cell phone, date of birth, and social security number, all of which the debtors

agree to be provided to FSF.[10]

D.  FSF Solicitation.

30. A member of the bankruptcy bar shared with the UST an e-mail solicitation sent by

FSF.  In the e-mail, FSF states that once the attorney lets people know they have a $0 down

option, "the response rate from your marketing will at least double without spending any (or very

little) money." FSF also states that referral rates will increase by 30% and "virtually everyone

that meets with you" will sign up because zero down eliminates any price objection.

31. According to the e-mail, FSF funds the post-petition fees within 3 to 5 days while the

debtor pays over 12 months.

32.  According to the e-mail, FSF payment collection has an 8% default rate and uses

hi-tech automation (including text messages, emails, and payment portal).

33. According to the e-mail, FSF will prepare all briefs and represent attorneys all the

way through appeal and will indemnify the attorney up to $50,000 in the unlikely event that the

attorney has to return fees.

## DISCUSSION

In *Lamie v. United States Trustee*, 540 U.S. 526 (2004), the United States Supreme Court

held that a chapter 7 debtor's attorney fees could not be treated as an administrative expense, and

---

[10] Attorney has stated that he also provides a copy of the debtor's pay advices.  Without
reviewing the agreement between Attorney and FSF, it is not known whether any other
information regarding the debtors is provided to FSF.

therefore, could not be paid from estate assets. *Lamie*, 540 U.S. at 538-539. Some courts have

held that a pre-petition agreement to pay attorney fees post-petition is dischargeable in a chapter

7 case. *Rittenhouse v. Eisen*, 404 F.3d 395,396 (6th Cir. 2005); *In re Fickling*, 361 F.3d 172 (2nd

Cir. 2004). Attorney's bifurcated system is an attempt to work around these decisions.

Attorney stated that he is relying on the opinion of *Hazlett* in the Bankruptcy Court in the

District of Utah regarding the appropriateness of the bifurcated system. *Hazlett*, 2019 Bankr.

LEXIS 1166, slip op. C/A 16-30360 (Bankr. D. Utah April 10, 2019). In *Hazlett*, the court

found that bifurcated contracts are appropriate where:

    (1) It is in the best interest of the client;

    (2) The attorney provides appropriate disclosures, options, and explanations;

    (3) The client gives informed consent in writing; and

    (4) The attorney's fee and costs are reasonable and necessary.

*Hazlett*, slip op. C/A 16-30360 *19. As discussed below, Attorney's bifurcated system does not

meet the factors above and creates other issues.

A. Attorney's Pre-Filing and Post-Filing Agreements Do Not Comply with Local Rules

    Local Rule 9011-1(b) of the District of South Carolina Local Bankruptcy Rules

provides:

> Except as may be provided in an attorney's written agreement with a
> party concerning appeals and adversary proceedings, any attorney
> who files documents for or on behalf of a party in interest shall
> remain the responsible attorney of record for all purposes including
> the representation of the party at all hearings and in all matters that
> arise in conjunction with the case.

The pre-filing and post-filing agreements (the "Agreements") do not comply with the District of

South Carolina Local Rules. The pre-petition agreement charges no consideration for limited

services necessary to file a bankruptcy petition and does not provide for Attorney to furnish

additional services, unless the debtors sign the post-petition agreement, while acknowledging

that further tasks are necessary for the debtors to successfully complete bankruptcy. The post-

petition agreement confirms the unbundling of services and limitation on representation by

providing for the performance of additional core bankruptcy legal services even though such

services fall within the Local Rules' requirements that an attorney must represent a debtor in all

aspects of a case.

The Agreements include language that the Attorney will continue to represent the debtor

until relieved by the bankruptcy court. However, the statement falls short of bringing the

bifurcated system into compliance with Local Rule 9011-1(b). Attorney's continued

representation may simply be filing motions to extend the time to file required documents while

seeking to be relieved as counsel, while causing the debtors' case to be at risk for dismissal due

to the failure to timely prosecute the bankruptcy case.

The pre-filing agreement also includes language that the debtor is not choosing to file

now and pay later with the intention of simply having the law firm file the petition and then

withdrawal. See pre-filing agreement, part 6, paragraph A. However, it is difficult to imagine

that some of the cases filed by Attorney in August 2020 would have the ability to make the post-

petition payments, instead leading the debtors to choose to proceed *pro se*.

Pursuant to § 105 and the Court's inherent authority, the Court can cancel the agreements

and require Attorney to return fees that have been paid and/or relieve the debtors from paying

any fees still due.

B.  <u>The Fees Charged are Excessive and the Bifurcated System Creates Troubling Ethical
Issues</u>

Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a

statement of compensation paid or agreed to be paid for legal services related to a bankruptcy

case. Section 329(b) permits the court to cancel the agreement and order the return of funds to the extent the compensation exceeds the reasonable value of such services. Section 329 reflects Congress' recognition that payments by a debtor to his or her attorney present a "serious potential for overreaching by the debtor's attorney" and that such payments should therefore be subjected to "careful scrutiny." H.R. Rep. No. 95-595, at 329 (1977) (reprinted in 1978 U.S.C.C.A.N. 5963, 6285). Pursuant to § 329 and Rule 2017(a), the Court may review and determine the reasonable value of the services rendered by an attorney who has represented a debtor in, or in connection with, a case under Title 11. "These provisions [§ 329 and B.R. 2017] furnish the court with express power to review payments to attorneys for excessiveness . . ." *In re Walters*, 868 F.2d 665, 667 (4th Cir. 1989) (quoting *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987). It is the attorney's burden to show the reasonableness of his fees. *See In re Fowler*, C/A 05-10053-hb, slip op., (Bankr. D.S.C. July 9, 2008); *In re Busche*, C/A No. 15-02559-dd, 2015 Bankr. LEXIS 3669 (Bankr. D.S.C. Oct. 27, 2015). A fee agreement may be cancelled and compensation denied under § 329(b) if an attorney fails to comply with disclosure obligations under § 329(a) and Rule 2016(b). *See In re TJN, Inc.,* 194 B.R. 400 (Bankr. D.S.C. 1996); *Turner v. Davis, Gellenwater & Lynch (In re Inc. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993). Attorneys representing debtors in bankruptcy cases have an affirmative duty to fully and completely disclose all fee arrangements and all payments. *See* § 329(a); Rule 2016(b).

Here, the Fee Disclosure and pre-filing agreement fail to properly disclose the mark-up for debtors who choose the file now pay later option. A review of Attorney's cases in the last four months indicate Attorney has increased his fees by $735 for $0 down file now pay later cases, and he increased his fees by $495[11] for those who pay $500 upfront. In these cases, the

---

[11] These figures presume that the filing fee and credit counseling expenses are paid separately although this is not reflected clearly in some of the SOFAs.

upfront fee is significantly less than the $2,350 provided in the pre-filing agreement. Nothing in the Fee Disclosure specifically provides notice of the amount of the mark-up in bifurcated service cases. Moreover, some of the services shown as being included in the post-filing agreement at no extra charge were covered by Attorney in the upfront cases. Thus, Attorney's disclosures are inaccurate, contradictory, and incomplete.

The Fee Disclosure is also deficient in setting forth from whom Attorney is receiving payment and whether Attorney is sharing the fees with another. If Attorney is uncertain of the agreements, the debtors cannot have been fully informed and made an informed decision.

"Section 329 permits unethical conduct to serve as a factor considered in analyzing the reasonableness of legal fees paid by a debtor." *In re Soulisak*, 227 B.R. 77, 82 (Bankr. E.D. Va. 1998) (citing *In re Devers*, 507 F. Supp. 468 (D.D.C. 1981). Outside the bankruptcy context, a fee agreement providing for the payment of attorneys' fees over time does not create a conflict. The intervention of bankruptcy, however, changes the analysis. The obligation to pay fees under a pre-petition agreement is generally discharged. *See Rittenhouse*, 404 F.3d at 395. A debtor's interest in obtaining the broadest possible discharge conflicts with the attorney's self-interest in collecting fees post-petition. *See In re Martin*, 197 B.R. 120, 128-129 (Bankr. D. Colo. 1996).

Adequate and competent legal representation in connection with a bankruptcy case requires time to be spent before the filing of the bankruptcy case. *See In re Haynes*, 216 B.R. 440, 443 (Bankr. D. Colo.1997). Section 707(b)(4)(C) and Rule 9011 require an attorney to perform a reasonable investigation or inquiry to determine whether a bankruptcy petition is filed for a proper purpose, has adequate legal factual and evidentiary support, and is in the debtor's best interest. See *In re Cornelius,* 2005 Bankr. LEXIS 2741, slip op. C/A 05-01833 (Bankr. D.S.C. July 8, 2005). An analysis of the necessity for and the benefits, risks, and appropriate

chapter for bankruptcy relief is also required, as is informing and advising a client with respect to these matters. The performance of these duties before the filing of the bankruptcy petition is necessary to serve a client's interest in all but the most urgent situations.

Attorney acknowledges that he is providing limited services prior to the bankruptcy filing. Attorney is not reviewing documents or performing any public searches. According to his statement, Attorney confirms the debtor's income to ensure they qualify under a chapter 7 and asks some questions that may affect the bankruptcy. Such a review is ripe for oversights that could materially impact debtors. Additionally, the Agreements are silent as to the risks in providing such limited consultation prior to the bankruptcy filing except for a disclaimer that after further review and analysis it may be determined that a chapter 13 bankruptcy case is more appropriate. *See* Pre-filing agreement part 6, paragraph B.

The bifurcated fee and services structure used by Attorney conflicts with his duty to adequately represent his client and conflicts with the client's interests. Because the bifurcated fee structure denies compensation for pre-petition services, it has the logical and practical effect of discouraging attorneys from performing pre-petition services and limiting the time and effort spent on such services. Therefore, the bifurcated system either impairs the necessary pre-petition investigation and analysis or encourages the deceptive labeling of pre-filing services as post-filing services. This is done to prevent the compensation for these services from being discharged and to facilitate the collection of such compensation.

Bankruptcy courts have broad discretion under § 329(b) to disallow and require the return of excessive fees. Attorney has the burden to show that the fees charged to the Prophets were reasonable. Here, the fees charged are excessive, and the disclosures fall short of providing accurate information. The Fee Disclosure shows that the debtors are proceeding under the

bifurcated services option, but they paid $1,200 pre-petition for limited services. The UST

requests that the Court cancel the Agreements and find that no attorneys' fees are due from the

debtors.

C. The Bifurcated System Violates Debt Relief Agency Provisions

Section 526 provides that a debt relief agency may not make any statements or advise an

assisted person to make any statement in a document filed with the court that are untrue or

misleading or that the agency, upon the exercise of reasonable care, should have known to be

untrue or misleading. § 526(a)(2). The Fee Disclosure includes "?" marks for the source of the

compensation paid and to be paid to Attorney and whether Attorney has agreed to share the

compensation with another person who is not a member of his firm. The Fee Disclosure fails to

disclose the mark-up of the higher fee for "file now pay later", to disclose the amount of

payments that the debtor will make over time[12], to accurately disclose that certain services will

not require additional fees that would be required if the debtor chose to pay upfront, to accurately

disclose that, upon information and belief, FSF advances 60% of the post-petition fees, and to

fully disclose the debtor's information shared with FSF.

As a debt relief agency, Attorney was required, within five (5) days after first providing

services and before the filing of the bankruptcy petition, to execute a written contract that

explains clearly and conspicuously, the services Attorney will provide to the debtor and the fees

or charges for such agreement and the terms of payment. § 528(a)(1). The pre-filing agreement,

which is the agreement signed by the debtor before the bankruptcy filing, does not contain a

clear and conspicuous explanation. The agreement is unclear and confusing in the following

material ways: (1) it fails to accurately describe the fees charged and supplemental services

---

[12] The payments are also not included in Schedule J.

provided in cases in which the debtors paid upfront during the same time period that Attorney is

using the bifurcated agreements; (2) it fails to accurately state the mark-up for the "file now pay

later" option; (3) it states that Attorney will continue as attorney of record until relieved by court

order, while excluding legal services necessary to provide adequate legal representation after the

filing of the petition; (4) it fails to clarify what services Attorney will continue to provide if the

debtor fails to sign the post-filing agreement and how the process to relieved as counsel works;

(5) it states that the cost of the legal services is $0 or $500 (or in the Prophets' case $1,200) but

sets forth payment terms involving payments to be made over 52 weeks, 26 bi-weeks, 24 semi-

months, or 12 months; (6) it states Attorney performs additional work to split your engagement,

however, it fails to state what additional work is required; and (7) it fails to specifically set forth

what information Attorney will share with FSF.  Due to these unclear and confusing provisions,

the pre-filing agreement does not comply with the material provisions of § 528 and is void and

unenforceable.  § 526(c)(1).  As both fee agreements are part of a unitary arrangement for

charging and collecting attorneys' fees, the post-filing agreement should be void and

unenforceable as well.

   D.  Section 105 and the Court's Inherent Authority Allow the Court to Address Attorney's
       Bifurcated System

       Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title.  No provision of this title

providing for the raising of an issue by a party in interest shall be construed to preclude the court

from, *sua sponte*, taking any action or making any determination necessary or appropriate to

enforce or implement court orders or rules, or to prevent an abuse of process." § 105(a).

       The Court has the duty and authority to regulate the litigants that appear before it and

address improper conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *In re Weiss*,

111 F.3d 1159, 1171 (4th Cir. 1997) (holding federal courts inherent authority to regulate

litigants). This inherent power allows bankruptcy courts to discipline attorneys who appear

before them. *Williams v. Lynch (In re Lewis)*, 611 Fed. Appx. 134, 2015 U.S. App. LEXIS 9597,

at *4 (4th Cir. 2015). Bankruptcy courts have the inherent authority to impose civil sanctions for

abuses of the bankruptcy process. *See In re Ulmer*, 363 B.R. 777 (Bankr. D.S.C. 2007); *Jones v.*

*Bank of Santa Fe (In re Courtesy Inns Ltd., Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994).

Additionally, § 105 gives bankruptcy courts the broad power to implement the provisions of the

Bankruptcy Code and to prevent the abuse of the bankruptcy process. *Walters*, 868 F.2d at 669;

*In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000); *Caldwell v. Unified Capital Corp. (In re Rainbow*

*Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996).

    Here, Attorney is using the advertisement of $0 Down Chapter 7 Bankruptcy to increase

his client base. However, to implement the system, Attorney appears to have inflated his fees for

clients wishing to pay all fees upfront, changed at least two services to supplemental instead of

included, and is having his clients enter into two agreements, one of which the debtor may be

unlikely to make the required payments subjecting them to collection actions in contravention to

the fresh start being sought.

    Cause exists under §105(a) and the Court's inherent powers for the Court to order

Attorney to explain, among other things, (i) how the fees charged are not excessive, (ii) how the

pre-petition legal services provide adequate analysis and review of the debtors' situation; (iii)

how the bifurcated system allows the debtors to obtain a fresh start; (iv) how its disclosures are

clear, conspicuous, and complete; and (v) how the bifurcated system complies with Attorney's

ethical obligations, to include sharing the debtors' information with a third party.

## CONCLUSION

Attorney has argued that the bifurcated system he is using is in compliance with the

court's analysis in *Hazlett*. As discussed herein, the Attorney's bifurcated system does not meet

the factors in *Hazlett* and has additional problems.  The bifurcated system being use by Attorney

is not in the client's best interest.  The debtors' case does not indicate an urgent situation

requiring inadequate consultation and analysis prior to the bankruptcy filing  Rather than

obtaining a fresh start, the debtors are likely to struggle to make the post-petition payments,

which may result in collection actions and negative credit reporting.  The debtors are paying

substantially more than debtors paying upfront and Attorney's disclosures of this is misleading

and inaccurate.  The debtors are allowing confidential information to be shared with a third party

for the purposes of an underwriting review, collection of fees, and collection activities.

Attorney has not provided appropriate disclosures, options, and explanations.  In the pre-

filing agreement, it appears Attorney has inflated the upfront fees and made some services

supplemental requiring additional fees if the debtor does not choose the "file now pay later"

option.  As discussed above, the information in the pre-filing agreement is not clear and

conspicuous regarding the fees being paid, the services being provided, and the risks therein.

The Fee Disclosure indicates that Attorney does not understand how the bifurcated system works

by his use of "?".  Clearly, if Attorney does not understand it, the debtors cannot provide

informed consent in writing.

Additionally, the attorney fee and costs are not reasonable and necessary.  It appears that

the fees under the "file now pay later option" are significantly higher than normally charged to

cover the costs of Attorney's arrangement with FSF.  The UST requests that the Court cancel the

Agreements, disallow and require the return of funds, and other relief as the Court deems

appropriate.

WHEREFORE, for the reasons set forth herein, the UST requests that the Court: (1)

cancel the agreements; (2) require the disallowance and return of funds received by Attorney;

and (3) impose other remedies as may be just and appropriate.

JOHN P. FITZGERALD, III
Acting United States Trustee, Region 4

By: /s/ Linda K. Barr
Linda K. Barr, Id. 6284
Office of the U. S. Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina  29201
(803) 765-5219
September 25, 2020          linda.k.barr@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>
<u>Case No: 20-03131-dd</u>

I, the undersigned, do hereby certify that on the 25th day of September, 2020, I served the below-named parties with copies of the following documents:

**MOTION OF THE UNITED STATES TRUSTEE FOR REVIEW OF THE CONDUCT OF BENJAMIN R. MATTHEWS & ASSOCIATES, CANCELLATION OF ATTORNEY FEE AGREEMENTS, DISALLOWANCE AND RETURN OF FUNDS PAID, AND OTHER RELIEF AS MAY BE APPROPRIATE <u>WITH SUPPORTING MEMORANDUM</u>**

and

**CERTIFICATE OF SERVICE**

by electronic transmission to participants to the Court's Electronic Case Filing system to include the following participants:

Benjamin R. Matthews

By: <u>/s/ Linda K. Barr</u>
     Linda K. Barr
     Office of U. S. Trustee
     1835 Assembly St., Suite 953
     Columbia, South Carolina 29201
     (803) 765-5219

# EXHIBIT A

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
### District of South Carolina

In re  Charles Pernell Prophet     Case No.  **20-03131**
       Shirley Ann Prophet
_____     Chapter  **7**
                          Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, debtor(s) have agreed to pay. . . . . . . . . . . . . . . . . . . . . . . . . $   2,400.00

   Prior to the filing of this statement I have received . . . . . . . . . . . . . . . . . . . . . . $   1200.00

   Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $   1,200.00

2. The source of the compensation paid to me was:

   X Debtor       ? Other (specify)

3. The source of compensation to be paid to me is:

   Debtor         ? Other (specify)

4. I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ? I have agreed to share the above-disclosed compensation with a other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

   b.  Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

   c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

6. By agreement with the debtor(s), the above-disclosed fee does not include the following services:

   Representation of the debtor(s) in any:

   ? adversary proceedings, dischargeability actions and other contested bankruptcy matters
   ? municipal, county, state or other local jurisdiction court matters
   ? tax matters
   ? efforts to discharge student loans
   ? creditor violations of the automatic stay, discharge injunction or Fair Credit Reporting Act

7. The fees described above include the filing fee.

In re  **Charles Pernell Prophet**                             Case No.  **20-03131**
**Shirley Ann Prophet** _____                _____
Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)
(Continuation Sheet)

8.   Counsel offered debtor(s) two options for the payment of counsel's fees: (1) pre-pay the fees in full prior to the Chapter 7 bankruptcy petition being filed, or (2) bifurcate the attorney services into pre- and post-petition work in order to facilitate the debtor(s) obtaining the benefit of being filed right away and making payments post-petition for the post-petition work. Counsel charges a higher fee for the second option. There are a number of reasons for charging a higher fee:

   a.   Counsel performs additional work to split the engagement;

   b.   Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front;

   c.   The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;

   d.   The option gives debtor(s) an opportunity to begin rebuilding their credit score by making timely payments toward the attorney fee;

   e.   Counsel will not charge the debtor additional fees for certain services that if required would otherwise cost the debtor(s) more if debtor(s) had paid the entire fee before the case was filed; and

   f.   FSF (described below) charges a fee to Counsel for its financing, payment management, credit reporting and other services provided to Counsel, for which FSF charges a fee equal to 25% of the attorney fee that the Law Firm charges debtor(s) for the post-petition services.

This higher fee nonetheless satisfies the reasonableness requirement under Section 329 applying the Lodestar analysis. The additional cost was fully disclosed to debtor(s) and debtor(s) chose the second option.

9.   Debtor and counsel entered into two, separate fee agreements for pre- and post-petition work.

   a.   The first, pre-petition fee agreement was signed prior to the filing of the petition for the preparation and filing of the bankruptcy petition, statement about social security number, creditor list and other documents required at the time of filing; and review, analysis and advisement of the typical matters that are required to be performed prior to filing by a bankruptcy attorney under the applicable bankruptcy and ethical rules. Counsel's fees paid under the first fee agreement (if any) are shown in Section 1 above as "Prior to the filing of this statement I have received", and any fees earned but not paid for the pre-petition work were waived by counsel.

   b.   The second, post-petition fee agreement was signed after the petition was filed for post-petition work to be performed, including the preparation of schedules of assets and liabilities, and statement of financial affairs; preparation and filing of other required documents; representation at the first meeting of creditors; and other services outlined in the fee agreement. Counsel's fees owed by debtor under the second fee agreement for post-petition work are reflected in Section 1 above as the Balance Due. The second fee agreement allows the debtor(s) to pay these post-petition fees and costs in installments over 12 months following the bankruptcy filing.

10.   Counsel has a recourse line of credit from Fresh Start Funding LLC ("FSF") secured by a lien against the accounts receivable of counsel, including amounts owed by debtor(s) to counsel. FSF also provides payment management and processing services and will collect installment payments from debtor(s) as well as any third-party guarantor (if applicable) on behalf of counsel. FSF will apply amounts paid by debtor(s) against counsel's indebtedness to FSF under the line of credit. FSF also provides credit reporting services to the debtor(s), education and training to counsel and his/her staff, and a defense guaranty and indemnity to counsel.

In re   **Charles Pernell Prophet**
**Shirley Ann Prophet** _____     Case No.   **20-03131** _____
_____
Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)
### (Continuation Sheet)

For its services, FSF charges a fee calculated as 25% of the receivable owed by debtor(s) to counsel and counsel is required to pay this fee regardless of whether debtor(s) makes their required payments.  As a fully-recourse obligation this fee does not constitute fee sharing under the Bankruptcy Code or the Rules of Professional Conduct.

11.  Counsel has fully informed debtor(s) and obtained their informed consent to the bifurcation of services, lien of FSF against the receivable, FSF's payment management and credit reporting services, and to a limited sharing of information with FSF concerning debtor(s) to facilitate counsel's financing and FSF's payment management, processing and credit reporting concerning debtor(s).

---

**CERTIFICATION**

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**August 14, 2020** _____     /s/ Benjamin R. Matthews _____
*Date*                                             **Benjamin R. Matthews 3332**
                                                   *Signature of Attorney*
                                                   **Matthews & Associates, LLC**
                                                   **2010 Gadsden St**
                                                   **Columbia, SC 29201**
                                                   **803-799-1700   Fax: 803-728-6718**
                                                   **benrusmat@gmail.com** _____
                                                   *Name of law firm*

---

# EXHIBIT B

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## District of South Carolina

In re ████████████████                                              Case No. _____

                              _____    Chapter   **7**
                                    Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is is as follows:

    | | | |
    |---|---|---|
    | For legal services, I have agreed to accept | $ | 1,950.00 |
    | Prior to the filing of this statement I have received | $ | 1,950.00 |
    | Balance Due | $ | 0.00 |

2.  $ **335.00** of the filing fee has been paid.

3.  The source of the compensation paid to me was:

    ■ Debtor      ☐ Other (specify):

4.  The source of compensation to be paid to me is:

    ■ Debtor      ☐ Other (specify):

5.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

    a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.  [Other provisions as needed]
        **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
    **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**August 25, 2020**                              /s/ Benjamin R. Matthews
_Date_                                            **Benjamin R. Matthews 3332**
                                                  _Signature of Attorney_
                                                  **Matthews & Associates, LLC**
                                                  **2010 Gadsden St**
                                                  **Columbia, SC 29201**
                                                  **803-799-1700  Fax: 803-728-6718**
                                                  **benrusmat@gmail.com**
                                                  _Name of law firm_

---

# EXHIBIT C

## TO BE PROVIDED

# EXHIBIT D

## TO BE PROVIDED

# EXHIBIT E



*Benjamin R.*
# Matthews
*Associates*

BANKRUPTCY LAWYERS
SOUTH CAROLINA

Home   About Us   Contact Us   Locations

# 803-219-8612

| BANKRUPTCY ▶ | CHAPTER 7 ▶ | CHAPTER 13 ▶ | ESTATE LAW ▶ |

Home » Bankruptcy » No Money Down Chapter 7
Bankruptcy Filing

## 'No Money Down' Chapter 7 Bankruptcy Filing In South Carolina

### Our law firm can help you file for Chapter 7 bankruptcy with no money down

In response to looming financial difficulties caused by the Coronavirus pandemic, our South Carolina law firm is now offering "0" down Chapter 7 bankruptcy filings to those who qualify – and most people should qualify for this program.

Our law firm realizes money is tight. We realize lots of people need help. That's why we want our legal services to be available to more people when they need our help the most in South Carolina.

Normally, when individuals file for bankruptcy, they usually pay our law firm their legal fees up front. We realize many people with serious financial difficulties currently do not have the money to pay these fees. Many people are out of work. They don't have the cash they need to take the necessary steps to declare financial freedom. That's why we want to help.

**You have options. We can help. Learn more about Chapter 7 bankruptcy.**



## Free Case Consultation

Name

Phone

Email

Message

☐ I'm not a robot

Representative ✕
Welcome to Benjamin R. Matthews &
Associates, LLC! A live, real person is
available to talk at no obligation. How
can we help you?

## Related Links

Bankruptcy
Chapter 7
Chapter 13
Estate Law

Representative ✕
Welcome to Benjamin R. Matthews &
Associates, LLC! A live, real person is
available to talk at no obligation. How
can we help you?

The legal team at Benjamin R. Matthews and Associates, LLC understands what you're going through – and we want to offer our services to you during this difficult time. Our law firm can file your initial Chapter 7 bankruptcy application at no charge to get the process started.

If you need additional help filing for Chapter 7 bankruptcy, we can help you with the process and work out a 12-month payment plan to complete your filing.

Chapter 7 bankruptcy in South Carolina has many rules and regulations. Only certain people qualify, based on their income and many other factors. That's why it's critical that you consult with an experienced South Carolina bankruptcy attorney.

**You may be able to keep your car and home if you file for Chapter 7 bankruptcy**

Chapter 7 bankruptcy allows individuals to wipe out most of their debts -- while also being able to keep their home and their car in most cases.



People who file for Chapter 7 bankruptcy have a

of their debts – while also being able to keep their home and their car in most cases.

People who file for Chapter 7 bankruptcy have a "discharge of debt" issued by the U.S. Bankruptcy Court. If you choose to file for Chapter 7 bankruptcy, you may not have to pay:

- Unsecured debt
- Credit card debt
- Personal loans
- Medical bills

Our attorneys can help you decide if Chapter 7 bankruptcy is right for you. If you qualify, we can file your initial Chapter 7 application in South Carolina with no cash up front. In most cases, you can keep your car and your home, even if you file for Chapter 7 bankruptcy.

**Make a fresh start. File for Chapter 7 bankruptcy in South Carolina.**

Make a fresh start. Contact Benjamin R. Matthews and Associates, LLC. You can reach us online or call (803) 219-8612 for a free initial evaluation. Our discussion will be fully confidential. Anything you say will be between us.



We are a debt relief agency. We are here to help you
understand your financial options and file for bankruptcy.