Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF MINNESOTA

3   Case No. 19-33190-wjf

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   MARY JANE RYAN,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                 United States Bankruptcy Court

13                 316 North Robert Street

14                 St. Paul, MN 55101

15

16                 September 30, 2020

17

18

19

20

21   B E F O R E :

22   HON WILLIAM J. FISHER

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

Page 2

1    HEARING re Court's decision.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

```
 1   A P P E A R A N C E S :

 2

 3   PROTEGO LAW PLLC

 4        Attorneys for Edward Russell

 5        1805 North Scottsdale Road

 6        Scottsdale, Arizona 85281

 7

 8   BY:  DANIEL E. GARRISON (TELEPHONICALLY)

 9

10   UNITED STATES DEPARTMENT OF JUSTICE

11        Attorneys for The United States Trustee

12        316 N. Robert Street

13        St. Paul, MN 55101

14

15   BY:  COLIN KREUZIGER (TELEPHONICALLY)

16

17

18

19

20

21

22

23

24

25
```

Page 4

1                         P R O C E E D I N G S

2              CLERK:  Good Morning.  We're going to

3    go on the record in the Mary Jane Ryan matter,

4    19-33190.  This is on a motion to avoid a -- the

5    agreements.  Let's me get the appearances for the

6    record.  Do I have Mr. Kreuziger on the line for

7    the U.S. Trustee?

8              MR. KREUZIGER:  Yes, Your Honor.  Good

9    morning.

10             THE COURT:  Good morning.  Do I have a

11   Mr. Garrison on the line for Mr. Russell?

12             MR. GARRISON:  Yes, Your Honor.  Good

13   morning.

14             THE COURT:  Do I have anyone else on

15   the line who wishes to make an appearance?

16             Okay.  In that case, I'll start.  Let

17   me go through a couple of rules, I suppose,

18   first.  Please put your phones on mute.  You

19   won't be doing any talking during the point --

20   during the part that I'm reading the decision.

21             Also, please do not interrupt me during

22   the decision.  If you have -- I will ask -- I

23   will give you a chance to talk at the end of the

24   hearing.  Not to argue with the decision, but

25   rather to -- if there's any clarification.  Is

Page 5

1   there anything else you need to know but we can

2   deal with it at the end.

3          So, I appreciate that.  And with that,

4   I will start.  And I -- the parties know what's

5   in dispute here, it's basically Mr. Russell's

6   fees of $2000 post-petition.

7          I will file findings of fact -- I will

8   not read those -- I will file the findings of

9   fact later today.  Along with the -- with a very

10  brief order.  What I'm going to read on the

11  record will be incorporated into the final

12  decision in the order itself.

13         As well the findings of fact.  And I

14  will also file a list of the cases that I cite so

15  if I miscite a case here, or you -- I'm talking

16  too quickly and you can't write it down quickly

17  enough, it will -- you will see the name of the

18  case in the list that I will file also today.

19  So, all those will be filed by the end of the day

20  today.  With that, here's my decision.

21         The fees allowed to Mr. Russell are

22  reduced to $1285.50 for the reasons stated today.

23         Since the U.S. Trustee has not argued

24  that bifurcated fee agreements in Chapter 7

25  consumer cases are per se impermissible, I will

Page 6

1    not address that issue.

2            Further, I'm not considering the

3    enforceability of the fee arrangement as the

4    parties agree that issue is not performing at

5    this time.

6            Thus, I'm not deciding whether the

7    post-petition payment lack consideration as local

8    rules require full representation once an

9    attorney appears in the case, as Mr. Russell did

10   when he filed this case.

11           Whether the obligation of Ms. Ryan to

12   pay Mr. Russell is really a pre-bankruptcy

13   agreement subject to discharge, or any other

14   issue regarding enforceability of the agreement.

15           These issues can be raised by Ms. Ryan

16   should she chose to do so and can be dealt with

17   at that time.

18           Further, I'm not considering the effect

19   of Mr. Russell's personal Chapter 13 bankruptcy

20   case, which is pending before me, and the effect

21   of that case on the agreement he entered into

22   with Fresh Start Funding without court approval

23   after he filed bankruptcy in 2017.

24           The only issues before me are whether

25   Mr. Russell's fees should be disgorged or

Page 7

1   disallowed in their entirety or reduced as

2   excessive.

3            That is also one of the principal

4   reasons why I'm not doing a written opinion --

5   because this -- I don't want it floating around

6   as some kind of pronouncement that would have any

7   effect other than this case.

8            I. Mr. Russell's fees are excessive

9   under Section 329(b) of the Bankruptcy Code.  The

10  U.S. Trustee argues the court should cancel the

11  pre-petition and post-petition agreements between

12  Mr. Russell and Ms. Ryan under Section 329(b)

13  because the agreements were not in Ms. Ryan's

14  best interest.

15           Mr. Russell's compensation is

16  excessive, and his disclosures under 329(a) were

17  inadequate.  That Docket No. 30 -- and these are

18  their arguments -- Docket No. 30 at 98, Docket

19  No. 53 at 19.

20           Section 329 provides (a) any attorney

21  representing a debtor in a case under this title,

22  or in connection with such a case, whether or not

23  such attorney applies for compensation under this

24  title, shall file with the court a statement of

25  the compensation paid or agreed to be paid, if

Page 8

1    such payment or agreement was made after one year

2    before the date of the filing of the petition,

3    for services rendered or to be rendered in

4    contemplation of or in connection with the case

5    by such attorney, and the source of such

6    compensation.

7              (b) If such compensation exceeds the

8    reasonable value of any such services, the court

9    may cancel such agreement, or order the return of

10   any such payment, to the extent excessive.

11             Most courts have declined the whole

12   bifurcated fee agreements per se impermissible.

13             See for example in re Carr, 613 B.R.

14   427 at 441 to 442.  The Bankruptcy Eastern

15   District of Kentucky, 2020.

16             Here, the U.S. Trustee cites recent

17   case law from other Bankruptcy Courts considering

18   the propriety of such arrangements including in

19   re Milner, 612 B.R. 415, Bankruptcy Western

20   District of Oklahoma, 2019.

21             In re Wright, 591 B.R. 68, Bankruptcy

22   Northern District of Oklahoma, 2018.  And in re

23   Hazlett, Number 16-30360, 2019 Westlaw 1567751,

24   Bankruptcy District Utah, April 10, 2019.

25             The U.S. Trustee argues this case

Page 9

1    provide an analytical framework for evaluating

2    the reasonableness of bifurcated -- the

3    agreements.  Under these approaches, I should

4    cancel Mr. Russell's fee arrangements.  That's

5    Docket number 30 at 100.

6           The U.S. Trustee cites the following

7    for "prime directive" announced in Hazlett for

8    considering the propriety of any particular

9    bifurcated agreement.

10          1. And this is a quote -- "other than

11   deciding whether to represent a debtor, all

12   dealings, and decisions, including the offered

13   methods of payment must be based on the client's

14   best interest, and that the lawyers financial

15   interest.

16          2. All fees for legal services,

17   including any finance charge and installment

18   payments must be reasonable and necessary.

19          3. All fee arrangements must be fully

20   revealed in the statement of compensation which

21   must be filed within 14 days of the petition.

22          4. The client elects to proceed pro se

23   or to retain the services of another lawyer.  The

24   filing attorney must immediately comply with

25   local rule regarding the substitution or withdraw

Page 10

1   of counsel."  That's Hazlett 2019, Westlaw

2   1567751 at pages 9 through 10.  See also Milner

3   612 B.R. at 432 to 33.

4          Further, the Hazlett Court stated that

5   "fees for post-petition services should not be

6   directly or surreptitiously slipped into the fee

7   charged for post-petition services."  Hazlett at

8   page 9.

9          In Hazlett, the Court granted some

10  rejudgement in favor of the debtor's attorney.

11  That's on page 14.

12         The U.S. Trustee also cites two

13  additional concerns and in discussion of the Ryan

14  case including:

15         1. The attorney's failure to list in

16  the disclosure of compensation all aspects of the

17  fee splitting arrangement.

18         2. Clients who use the zero money down

19  option with fees factored ended up paying 25

20  percent more than those who paid the retainer up

21  front.

22         3. The improper shifting of most, if

23  not all the fees, to the post-petition fee

24  arrangement, or a conflict of interest in both

25  creating a non-dischargeable debt for the use of

Page 11

1    a post-petition fee agreement, and a conflict

2    arising from the attorney's desire to maintain a

3    favorable relationship with the factoring entity

4    while representing the client.  Hazlett at 11 and

5    12 discussing Wright 590 B.R. 89 through 99.

6             The Hazlett decision involved a

7    factoring company with debtors counsel signing

8    the right to collect the attorney's fees and cost

9    in exchange for an immediate receipt of 75

10   percent of the total amount from the factoring

11   company.  Hazlett at 11.

12            Here, on the other hand, Fresh Start

13   Funding's approach involves the extension of a

14   line of credit to Mr. Russell, as opposed to the

15   strict assignment of Mr. Russell's right to

16   collect fees from Ms. Ryan.  Docket Number 30 at

17   101.

18            The Bankruptcy Court for the Western

19   District of Oklahoma recently considered Fresh

20   Start Funding's specific business model in the

21   Milner case.  The U.S. Trustee argues that the

22   facts in the Milner case track closely with the

23   facts in Ms. Ryan's case.  Docket number 30 at

24   101.

25            In Milner, the debtor's attorney

Page 12

1  entered into a line of credit with Fresh Start

2  Funding.  That's Milner at 422.

3           The terms in the line of credit

4  agreement in Milner appear to be substantially

5  similar to, or the same, as the terms in this

6  case.  Milner at 422 to 23.

7           The debtor's attorney then entered into

8  pre-petition and post-petition agreements with

9  the debtor.  Milner at 423 to 26.

10          The debtor paid $300 in attorney's

11  fees.  And the $335 case filing fee prior to the

12  filing of her bankruptcy petition.  Milner at 424

13  to 425.

14          In Milner, the debtor's attorney

15  entered into a post-petition agreement the day

16  after the bankruptcy was filed that required the

17  debtor to pay $2400 for post-petition services.

18  Milner at 425 to 26.

19          The Milner Court voided the pre-

20  petition and post-petition agreements and ordered

21  the debtor's attorney and Fresh Start Funding to

22  have no further contact with the debtor.  That's

23  Milner at 443 to 44.

24          The U.S. Trustee argues that chief

25  among the Milner's -- Court's concerns were the

Page 13

1  following:

2          1. It was not in the debtor's best

3  interest to enter into the bifurcated fee

4  agreement because the debtor could not afford to

5  make the payments to Fresh Start Funding.

6          2. The debtor -- debtor's attorney's

7  disclosures under Rule 2016(b) were inadequate.

8          3. The debtor's attorney charged 50 to

9  80 percent more than he did in cases that did not

10  involve bifurcation.

11          4. The pre-petition and post-petition

12  agreements violated Section 528 of the Bankruptcy

13  Code.  See Milner at 433 to 443.

14          Holding that the bifurcated agreements

15  in Milner did not satisfy the standards set by

16  Hazlett.

17          The U.S. Trustee argues that the Milner

18  case exemplifies the most recent decision to

19  consider bifurcated fee structures.  That's

20  Docket number 30 at 102.

21          Further, the U.S. Trustee contends that

22  Milner dealt with facts that are most similar to

23  the facts in Ms. Ryan's case.  Docket number 30

24  at 102.

25          Therefore, the U.S. Trustee concludes

Page 14

1    that this Court should reach the same result as

2    the Milner Court for the same reasons.  Docket

3    number 30 at 102.

4            Counsel for Mr. Russell indicates that

5    Milner is under appeal.  That's Docket number 34

6    at 1.

7            A. The U.S. Trustee's best interest

8    analysis fails to show that the retainer

9    agreement should be cancelled.  The U.S. Trustee

10   argues Mr. Russell's agreements with Ms. Ryan

11   were not in Ms. Ryan's best interest.  Docket

12   number 30 at 102.  Docket number 53 at 19.

13           The U.S. Trustee contends that, as in

14   Milner, Ms. Ryan's means are very limited.

15   Docket number 30 at 102.  Docket number 53 at 19.

16           In support, the U.S. Trustee points to

17   the fact that Ms. Ryan is 73 years old, retired,

18   and her income currently consists entirely of

19   Social Security benefits of $1679 per month.

20   Docket number 53 at 19.

21           Further, Ms. Ryan's total gross annual

22   income is less than $20,000.

23           U.S. Trustee argues that even more

24   egregious is the fact that Ms. Ryan's schedule in

25   that income was negative when Mr. Russell filled

Page 15

1   her case.  Docket number 53 at 19.

2           Further, the U.S. Trustee maintains

3   that the only reason Ms. Ryan can afford to make

4   the payments to Fresh Start Funding is that she

5   is living with a friend who does not charge her

6   rent.  Docket number 53 at 19 to 20.

7           While this is true, her rent would have

8   been nearly 80 percent of her income.  $1340 in

9   rent over $1679 in monthly income at the time of

10  her deposition.  Clearly, she needed to reduce

11  her rent regardless of the $100 monthly

12  obligation to Mr. Russell.

13          She also clearly stated that if she

14  started renting again, she could afford rent and

15  the $100 payment as the Ryan deposition

16  transcript 100 -- page 112, 1 through 24.  No

17  contrary evidence was produced by the U.S.

18  Trustee.

19          The U.S. Trustee further argues that

20  the value of Ms. Ryan's discharge remains

21  questionable.  Docket number 30 at 103.  Docket

22  number 53 at 20 to 21.

23          In support of this argument, the U.S.

24  Trustee notes that Ms. Ryan listed $3200 in

25  assets that are except from collection under

Page 16

1    state law.  With the exception of $200 in Ms.

2    Ryan's checking account.  That's stipulation

3    paragraph 21.  See Minnesota Statute 550.37 subd.

4    4(a) through (b).

5            Further, a majority of Ms. Ryan's debt

6    -- educational loan -- was not discharged in her

7    bankruptcy.  See 11 USC Section 523 (a)(8).

8            Nevertheless, Ms. Ryan had roughly

9    $22,277 in debt that has been discharged.  That's

10   Ryan deposition transcript page -- transcript

11   pages 94 line 25 to 95 line 3.

12           Thus, there was significant debt to be

13   discharged.  The U.S. Trustee also argues that

14   Ms. Ryan's earnings and Social Security Benefits

15   are also exempt from garnishment because she was

16   earning less than the federal minimum wage.  See

17   42 USC Section 407(a).  Minnesota Statute

18   571.922(a).

19           However, these were only except if an

20   exemption form for Minnesota Statute Section

21   571.922 is filled out by a debtor when garnished,

22   which can be difficult, burdensome, and stressful

23   for a debtor.

24           Further, dealing with creditors can be

25   very difficult.  See Russell deposition

Page 17

1    transcript page 133, line 11 to 134, line 8.

2              The U.S. Trustee maintains there was

3    little, if any, evidence on the record that Mr.

4    Russell explained to Ms. Ryan how little

5    practical relief bankruptcy could afford her.

6    Docket number 53 at 20.

7              For example, the U.S. Trustee argues,

8    there's no evidence that Mr. Russell explained to

9    Ms. Ryan that bankruptcy would not excuse her

10   from paying rent or -- it would not enable her to

11   keep her car without making her car payments.

12   Docket number 53 at 20.

13             And according to U.S. Trustee, there is

14   little, if any, evidence that Mr. Russell

15   explained that even without bankruptcy, Ms.

16   Ryan's creditors could not attach her assets or

17   garnish her wages.  Docket number 53 at 20.

18             However, Ms. Ryan testified that Mr.

19   Russell told her Social Security benefits and

20   income could not be garnished.  That's the Ryan

21   deposition 95, lines 9 to 3.

22             And as previously discussed, Ms. Ryan

23   will need to file exemption forms which many

24   debtors fail to complete.  The U.S. Trustee

25   concludes that Mr. Russell advised his client to

Page 18

1    incur purportedly non-dischargeable obligation to

2    pay $2335 in order to get a discharge of

3    questionable value.  Docket number 53 at 20 to

4    21.

5            Yet Ms. Ryan did testify that her debts

6    were causing stress and her stress has now been

7    relieved.

8            The U.S. Trustee also maintains that

9    Mr. Russell did not appear to have made any

10   serious attempt to advise Ms. Ryan of these

11   facts.  And he stated that he does not assist

12   clients in negotiating with creditors.  Docket

13   number 53 at 21.

14           Mr. Russell also failed to advise Ms.

15   Ryan that she could seek pro-bono assistance in

16   filing her case or that she could seek a waiver

17   of the Chapter 7 filing fee despite his knowledge

18   that Ms. Ryan could not afford to pay even the

19   bankruptcy filing fee before her case was filed.

20   That's Ryan deposition transcript 99, lines 18

21   through 25.  Russell deposition transcript 117,

22   line 2 to 118, line 1.

23           The U.S. Trustee argues that Ms. Ryan

24   was desperate.  She relied on Mr. Russell's

25   judgement as an attorney and she was not properly

Page 19

1  advised as to all her options.  Docket number 53

2  at 21.

3          While it is true that he could have

4  recommended pro-bono assistance, the U.S. Trustee

5  offered no evidence on her qualifications for

6  pro-bono assistance by providers.

7          Mr. Russell testified that filing

8  through a pro-bono provider can take some time as

9  he has taken pro-bono cases.  Russell deposition

10  transcript 117, line 20 to 118, line 1; and 180,

11  lines 18 through 25.

12          According to the U.S. Trustee, Mr.

13  Russell also failed to minimally advice Ms. Ryan

14  that there were, at a minimum, serious issues as

15  to whether Mr. Russell had a significant conflict

16  of interest and was putting his own and Fresh

17  Start's interest above his clients.  Docket

18  number 53 at 21.

19          The U.S. Trustee further maintains that

20  Mr. Russell did not advice Ms. Ryan that there

21  were significant arguments that the entire fee

22  was dischargeable because it was really agreed to

23  pre-petition and was merely formalized post-

24  petition in an attempt to attempt the discharging

25  junction.  Docket number 53 at 21.

Page 20

1          The U.S. Trustee notes that Mr. Russell

2     and Fresh Start Funding's agreements with Ms.

3     Ryan committed her to pay -- to payments of $100

4     per month for almost two years.  Russell

5     deposition Exhibit 5 at page 73.

6          This was $500 more than Mr. Russell's

7     standard fee.  Russell deposition transcript 30,

8     lines 4 through 12.  147, lines -- line 19

9     through 148, line 5.

10         U.S. Trustee argues that Ms. Ryan

11    cannot afford the payments and all of virtually -

12    - all of her assets and income were exempt from

13    collection efforts.  Docket number 30 at 103.

14         Further, a vast majority of Ms. Ryan's

15    debt was not discharged in new bankruptcy.  See

16    stipulation paragraph 21.

17         According to the U.S. Trustee, it is

18    solely the grace of a friend that allows Ms. Ryan

19    to pay Fresh Start Funding at all.  However, Ms.

20    Ryan testified that if needed, she could pay for

21    rent and $100 per month under the fee agreement.

22    Ryan deposition transcript 112, 1 through 24.

23         The U.S. Trustee maintains that like

24    Milner, it was not in Ms. Ryan's best interest

25    entering into the agreements with Mr. Russell.

Page 21

1  And the agreement should be cancelled under

2  Section 329(b).

3            Further, the U.S. Trustee argues that

4  unlike Milner, there was no compelling exigency

5  that required Ms. Ryan to file her bankruptcy

6  case.  Docket number 53 at 22.

7            The U.S. Trustee also contends that

8  utilizing the asset approach does not yield

9  different results because Hazlett also requires

10  consideration of the debtor's best interest.

11            Therefore, the U.S. Trustee concludes

12  this Court should cancel the agreements.

13            In this case, Ms. Ryan felt financial

14  stress and had debts.  And she had experience

15  from her prior bankruptcy in 2001 -- 2009, excuse

16  me.

17            Despite she knew most of her debt was a

18  student loan that wouldn't be discharged, Ms.

19  Ryan went to file a Chapter 7 case to lessen her

20  financial burden and stress by discharging

21  $22,277 in debt.

22            Ms. Ryan testified that this stress is

23  much less since she was able to file bankruptcy.

24            Further, as in her prior case, Ms. Ryan

25  attested that her monthly expenses exceeded her

Page 22

1   income, this time by approximately $600.  Despite

2   this, since her bankruptcy filing, Ms. Ryan has

3   been able to eliminate her rent by staying with a

4   friend.

5           When she does move out, she believes

6   she can afford rent and the $100 monthly payment

7   under the fee agreement.

8           At the time of her deposition in May of

9   2020, she had made the payments in full and on

10  time.  She had debts of $22,277 that were

11  discharged and has less stress now.

12          Attorneys are not required to take pro-

13  bono cases or refer to pro-bono providers.  If

14  that were the legal standard, numerous cases in

15  this district, and nationally, would have to be

16  reevaluated.

17          Further, such pro-bono services are not

18  unlimited.  There's no evidence as to whether Ms.

19  Ryan would even qualify for pro-bono assistance

20  or what kind.  There is evidence for Mr. Russell

21  that a pro-bono case can take a while.  I will

22  not require attorneys to explore pro-bono actions

23  in -- prior to filing bankruptcy unless they

24  still choose to take the case pro-bono.

25          The conflicts the U.S. Trustee

Page 23

1   discusses exist in many cases.  And Ms. Ryan was

2   given the option to confer with another attorney.

3   Mr. Russell acted as most attorneys would in this

4   case by taking whatever legal action for the

5   bankruptcy that was being asked of him.

6          Attorneys have an interest in

7   completing legal actions requested.  There's no

8   evidence that Mr. Russell pushed Ms. Ryan into

9   bankruptcy to get paid.

10          Ms. Ryan is intelligent, understood the

11   process as she's filed bankruptcy before, felt

12   stress and she wanted to file bankruptcy.  I will

13   not hold that Ms. Ryan cannot file for bankruptcy

14   and the attorney must take case pro-bono.

15          Even if her assets were all exempt from

16   collection -- what we call collection proof --

17   she still would be required to complete paperwork

18   to stop collection activity and deal with her

19   creditors, which as Mr. Russell testified can be

20   complicated and cause stress.

21          Mr. Russell believed that the fee is a

22   post-petition obligation and not a discharge.

23   The U.S. Trustee did not show that he had an

24   obligation to tell his client he could be wrong

25   in this conclusion.

Page 24

1          However, as part of this decision, Mr.

2     Russell must show Ms. Ryan the order -- which

3     will be entered later today -- which clearly

4     states that this issue has not been decided and

5     might be available to her.

6          Therefore, the U.S. Trustee's best

7     interest analysis fails to demonstrate the

8     retainer agreement should be completely cancelled

9     under Section 329(b) -- B.

10          Mr. Russell's inaccurate 2016 lead

11     disclosures do not warrant disgorgement of fees.

12          The evidence is clear that the errors

13     in the disclosures were unintentional.  Section

14     329(a) of the Bankruptcy Code requires an

15     attorney for the debtor to file -- "file with the

16     Court a statement of the compensation paid or

17     agreed to be paid for services rendered or to be

18     rendered and the source of such compensation."

19          Rule 2016(b) requires the statement for

20     Section 329 to include, "whether the attorney has

21     shared or agreed to share the compensation with

22     any other entity.  The statement shall include

23     the particulars of any sharing or agreement -- to

24     share by the attorney."

25          Local rule 1006-1 states "the statement

Page 25

1    of compensation shall conform substantially to

2    local form 1007-1."

3             Schroeder v. Rouse (In re Redding), 263

4    B.R. 874 at 878 8th Circuit Bankruptcy Appeal

5    Panel 2001.  The 8th Circuit B.A.P. recognize,

6    "when an attorney files a bankruptcy case on

7    behalf of a debtor, Section 329 requires the

8    attorney to submit a specific statement of the

9    compensation paid or agreed to be paid for the

10   services already rendered or to be rendered."

11            Excuse me.

12            "The statement filed pursuant to the

13   guidelines established by Rule 2016, in this

14   instance, further delineated by local rule, must

15   be filed.  The Code and Rules requires without

16   exception, the amount and source of the

17   compensation be disclosed."

18            This provision is derived in large part

19   from the Bankruptcy Act and reflects Congress'

20   concern that payments to attorneys in the

21   bankruptcy context might be the result of evasion

22   of creditor protections and provide the

23   opportunity for overreaching attorneys."

24   Redding, 263 B.R. 878.

25            The Bankruptcy Court has the broad

Page 26

1   power and discretion to award or deny fees.

2   That's from Karsch v. LaBarge -- B-A-R-G-E -- in

3   re Clark, 223 F.3d 859 and 863 (8th Circuit

4   2000).  "And it's well settled that disgorgement

5   of fees as appropriate -- is an appropriate

6   sanction for failure to comply with the

7   disclosure requirements of Section 328 and Rule

8   216."

9           Redding 263 B.R. 880 affirming

10  disgorgement based on failure to disclose.

11  "Negligent or inadvertent admissions -- quote --

12  do not vitiate the failure to disclose."

13          Jensen v. United States Treasury, I

14  believe, in re Smitty's Truck Stop, 210 B.R. 844,

15  848 (10th Circuit B.A.P. 1997).  Quoting Neben &

16  Starrett v. Chartwell Financial Corporation in re

17  Park-Helena -- H-E -- or Helena -- H-E-L-E-N-A --

18  Corp. 6 -- 63 F.3d 877 and 881 (9th Circuit

19  1995).

20          See also in re Frye -- F-R-Y-E -- 570

21  B.R. 21, 27-28 (Bankruptcy District of Vermont

22  2017) stating that an inadvertent failure to

23  disclose -- failure to disclose is grounds for

24  disgorgement.

25          In re Gorski, 519 B.R. 67, 73

Page 27

1   (Bankruptcy Southern District of New York 2014,

2   "anything less than full disclosure leaves

3   counsel exposed to the possibility entire fee may

4   be denied."

5          On the other hand, Courts have

6   discretion to determine whether inaccuracies in

7   the statement of compensation wherein --

8   inadvertent drafting errors that necessitate no

9   sanctions.

10          See in re Bulen -- B-U-L-E-N -- 375

11   B.R. 858 and 862 to 63 (Bankruptcy District of

12   Minnesota 2007).  Foregoing sanctions where the

13   attorney made inadvertent drafting errors and

14   cooperated in response to inquiries.

15          See also in re Parklex Associates Inc.

16   435 B.R. 195 and 207 (Bankruptcy Southern

17   District of New York 2010).

18          Quoting Vergos v Mendes and Gonzales

19   PLLC.  That's in re McCrary -- M-C-C-R-A-R-Y --

20   and Dunlap Construction Company LLC 79 Federal

21   Appendix 77 -- 770 at 779 (6th Circuit 2003)

22   recognizing that non-compliance with the

23   disclosure requirements can be "inadvertent

24   technical violations which may cause for the

25   imposition of no sanction whatsoever."

Page 28

1          In re Gage, 394 B.R. 184 at 191

2     (Bankruptcy Northern District of Illinois 2008).

3     "The determination whether the inaccuracies in

4     the 20 -- Rule 2016 statement are purposeful

5     failure to disclose or merely amount to

6     scrivener's error is clearly within the purview

7     of the Court."

8          Here the U.S. Trustee cites Milner to

9     support his argument that the Court should cancel

10    Mr. Russell's agreements with Ms. Ryan because

11    his Rule 2016(b) disclosures were not accurate.

12    Docket number 30 at 104.

13         In Milner, the Court took issue with

14    the initial disclosure filled by the attorney for

15    the debtor that stated he "agreed to accept $3035

16    while the amended disclosure stated the debtor

17    has agreed to pay $3035".

18         Milner, 612 B.R. at 435.  The Milner

19    Court found that the disclosure to be misleading

20    because the debtor's attorney was not receiving

21    $3035, instead he was receiving $2435 and Fresh

22    Start Funding was receiving $600.

23         Here, Mr. Russell's disclosure states

24    "for legal service, debtor has agreed to pay

25    $2000."  Russell deposition Exhibit 2 at Part 49,

Page 29

1    Docket number 16 at 1.

2           Based on these facts, the U.S. Trustee

3    knows that Mr. Russell was not in fact receiving

4    the full amount of the fee.  Docket number 30 at

5    105.

6           However, the Trustee recognizes that

7    Mr. Russell did not make the similar disclosure

8    error, as in Milner, regarding how much Mr.

9    Russell would accept for the representation

10   assuming that's relevant.  Docket number 30 at

11   105.

12          But Mr. Russell did disclose that a

13   lender would take Ms. Ryan's obligation as

14   collateral and the lender would manage Mr.

15   Russell's receivable, which give -- clearly gives

16   notice that the lender would be paid by Ms. Ryan.

17          And in fact when I said she's been

18   paying Fresh Start Funding, that's just a fact.

19   She's paying them as -- at least as the manager

20   of Mr. Russell's receivable.

21          The U.S. Trustee next argues that Mr.

22   Russell inaccurately disclosed the source of

23   compensation as Ms. Ryan.  Docket number 30 at

24   105.  Docket number 55 at 25 to 26.

25          The U.S. Trustee contends that Fresh

Page 30

1    Start Funding's line of credit is the source of

2    compensation.  And according to the U.S. Trustee,

3    Mr. Russell's disclosures fail to make clear that

4    Mr. Russell received his compensation by

5    borrowing money from Fresh Start Funding.  Docket

6    number 30 at 105.  Docket number 53 at 25 to 26.

7             The U.S. Trustee further maintains that

8    Ms. Ryan has not paid Mr. Russell in connection

9    with his representation in the case, but she pays

10   Fresh Start Funding and Fresh Start Funding has

11   paid Mr. Russell.  Docket number 53 at 25.

12            Nevertheless, the U.S. Trustee also

13   recognizes that Fresh Start Funding's approach

14   involves the extension of a line of credit to Mr.

15   Russell.  Docket number 30 at 101.

16            Further, I note that Ms. Ryan's

17   payments were only pledged for security for the

18   debt of Mr. Russell.  Fresh Start Funding's fee

19   for the financing, payment management services,

20   credit reporting, et cetera, is calculated as a

21   percentage of the value of the assets securing

22   the line of credit.  The amount of the total

23   post-petition fee receivable in each Chapter 7

24   case, which counsel pledges to Fresh Start

25   Funding to be able to make draws against the line

Page 31

1    of credit.

2            Ms. Ryan is the source of the payment.

3    If Ms. Ryan did not pay, Mr. Russell was liable

4    with Fresh Start Funding for any unpaid amounts.

5    Therefore, I found the disclosures accurate

6    enough because Mr. Russell did disclose the line

7    of credit and the management of the receivable

8    allowing proper inquiry into the complex

9    arrangement.

10           U.S. Trustee also points to Mr.

11   Russell's inaccurate disclosure that he agreed to

12   represent Ms. Ryan in contested matters.  Docket

13   number 30 at 105.  Docket number 53 at 26.

14           U.S. Trustee notes that the disclosure

15   directly conflicts with the fee agreements and

16   notice of responsibilities.  Docket number 53 at

17   26.

18           Nevertheless, there is nothing to show

19   anything more than a mistake rather than an

20   intentional deception.  It appears that Mr.

21   Russell understood he would have to represent Ms.

22   Ryan in contested matters as required in the --

23   in this disclosure.

24           And, in fact, Mr. Russell did so in Ms.

25   Ryan's previous case, and other client's cases.

Page 32

1    And she knew he represented her in that motion to

2    dismiss -- contested motion to dismiss in

3    previous case without charging extra.

4            Further, I certainly would have

5    required Mr. Russell to represent Ms. Ryan in all

6    contested matters.  See Local Rule 1007-3-1,

7    9010-3(g), Local Form 1007-3-1(7).

8            The U.S. Trustee argues that like

9    Milner, Mr. Russell represented in his

10   disclosures that he did not agree to share his

11   compensation with any other person other than

12   members or associates of his firm.  Docket number

13   30 at 106.

14           The U.S. Trustee contends that the

15   disclosure failed to acknowledge that Ms. Ryan

16   pays fees to Fresh Start Funding which then

17   shares the fees with Mr. Russell.  Docket number

18   53 at 27.

19           Thus, the U.S. Trustee maintains that

20   Mr. Russell is sharing compensation with Fresh

21   Start Funding and is questionable at best that

22   Ms. Ryan was aware that Fresh Start Funding was

23   retaining 25 percent of her total payment

24   payments under a fee arrangement.  Docket number

25   30 at 106.

Page 33

1          Nevertheless, as previously discussed,

2     Fresh Start Funding provides a recourse line of

3     credit, the repayment of which is secured by

4     collateral assignment of counsel's fee

5     receivables.  And the repayment of that debt is

6     due from Russell.  Whether his clients pay or

7     not, Mr. Russell received a loan by -- from Fresh

8     Start Funding.

9          Mr. Russell must repay the line of

10    credit regardless of what he eventually receives

11    in fees from Ms. Ryan.  And the amounts paid to

12    Fresh Start Funding are not contingent on Mr.

13    Russell's recovery from Ms. Ryan.

14          Mr. Russell disclosed the financing

15    arrangement, disclosed the line of credit with a

16    letter -- lender.  There is no evidence of an

17    intent to deceive by Mr. Russell in this

18    statement as it disclosed the lender line of

19    credit and receivable management.

20          And Mr. Russell still maintains he is

21    not sharing compensation.  Russell deposition

22    transcript page 69, lines 2 through 14.  170,

23    line 10 through 171, line 6.

24          Even though the agreement could be

25    recharacterized as an assignment of the

Page 34

1   receivable, under the agreement as written, the

2   receivable is not assigned.  Mr. Russell is not

3   required to recharacterize the agreements as an

4   assignment.  The important thing is to disclose

5   the arrangements, which he did.

6            U.S. Trustee next points to the

7   inaccurate disclosure that Ms. Ryan will only

8   make 12 monthly payments rather than the actual

9   number of payments which is roughly 23 payments

10  of $100, and a single payment of $35.  Docket

11  number 30 at 106.  Docket number 53 at 28.

12           This is clearly a mistake and was not

13  an intentional deception.  There was no evidence

14  to the contrary.  Ms. Ryan clearly understood she

15  had to make 24 payments; thus the mistake does

16  not rise to a level necessitating disgorgement.

17           The U.S. Trustee argues that Mr.

18  Russell's agreements with Ms. Ryan repeat the

19  same practice that drew the Milner court's ire.

20  That being a failure to disclose the claim in the

21  agreements that the bifurcated agreement causes

22  Mr. Russell to charge an additional $500.  Docket

23  number 30 at 106.

24           Even such a disclosure is required, I

25  find that Mr. Russell did not engage in

Page 35

1    intentional deception that necessitates

2    disgorgement in this case.

3            Further, Ms. Ryan clearly understood

4    she was obligated to pay an extra $500 by

5    choosing to have her legal services for the case

6    split into two contracts.  Ryan deposition

7    transcript 28, lines 9 through 13.

8            The U.S. Trustee next takes issue with

9    Mr. Russell's initial disclosure that simply left

10   amounts blank.  Docket number 30 at 106.

11           This error was corrected and was

12   clearly a mistake by Mr. Russell.  Not

13   intentional deception.

14           The U.S. Trustee also contends that,

15   like Milner, Mr. Russell's disclosures are

16   confusing and less than complete.  Docket number

17   30 at 107.  See Milner, 612 B.R. 436.

18           Further, the U.S. Trustee argues that

19   there are gaps in the disclosure that would

20   likely lead to the same result if analyzed under

21   the rubric discussed in Hazlett 2019 Westlaw

22   1567751 at page 10 including that, "all fee

23   arrangements must be fully disclosed in the form

24   B 2030, disclosure of compensation, which must be

25   filed within 14 days of the petition."  That's

Page 36

1   Docket number 30 at 107.

2            Here, Mr. Russell's disclosures

3   sufficiently revealed a fee arrangement.

4   Further, Local Rule Local Form 1007-1(a) states,

5   "statement of compensation shall conform

6   substantially to Local Form 1007-1."

7            In this case, Mr. Russell's fee

8   disclosure substantially conform to the Local

9   Form.  See Russell deposition Exhibit 2 at pages

10  49 through 50.  Docket number 16, Local Form

11  1007-1.

12           His disclosures also added paragraphs

13  beyond the Local Form, and the added paragraph

14  describe the fee arrangements or highlighted the

15  contained amounts that were not filled out.  See

16  Russell deposition Exhibit 2 at 49 through 50.

17  Docket number 16, Local Form 1007-1.

18           In review of the disclosures, the

19  arrangement caught the Court's attention to

20  further examine the fee arrangement.  See Federal

21  Rule of Bankruptcy Procedure 20 -- 2017(b)

22           Further, Mr. Russell complied with

23  inquiries to supplement the record for me to

24  determine reasonable compensation under Section

25  329(b).

Page 37

1          The U.S. Trustee's last argument is Mr.

2     Russell's disclosure failed to provide an

3     accurate and reasonably complete account of his

4     arrangement with Fresh Start Funding.  Docket

5     number 53 at 28 to 29.

6          Further, the U.S. Trustee contends that

7     errors in the initial disclosure suggest that Mr.

8     Russell may not even have reviewed the original

9     disclosure.  Docket number 53, 29.

10          But as previously discussed, while the

11     disclosures should have been better, Mr.

12     Russell's disclosures contain sufficient

13     information as errors were correctable mistakes,

14     not intentional deception.

15          In Milner, the Court voided the

16     retainer agreements, but nevertheless, allowed

17     attorney's fees in what I assume to be to be the

18     amount of $1900.  See 16 -- see 612 423 to 24,

19     26, 443 to 44.  Ordering one final payment of

20     $200 in December for payments that started in May

21     and included $300 in fees that were paid pre-

22     petition.

23          The Milner Court allowed those fees

24     giving the debtor "had a satisfactory income" --

25     excuse me -- "outcome in her bankruptcy case."

Page 38

1   Page 443 -- 4-4-3.

2            In its reasoning for the order, the

3   Court stated that its "sole concern is the

4   mechanism counsel selected for payments of his

5   attorney's fees.  Such mechanism with

6   insufficient disclosures and confusing contracts

7   resulted in a significant upcharge in the form of

8   post-petition debt being incurred by a

9   financially challenged, distress and unfit --

10  unsophisticated debtor."  That's page 443, note -

11  - footnote 32.

12           Here I find the disclosures in this

13  case are distinguishable from Milner.  In this

14  case, Ms. Ryan testified she understood the fee

15  arrangement.  Further, there's no evidence before

16  me that she's an unsophisticated debtor who was

17  confused by the retainer agreements or

18  disclosures.  To the contrary, she appears to

19  have a good understanding of the agreements and

20  is quite intelligent.

21           But even if I voided the agreements, I

22  would still allow $1285.50 in fees -- to be

23  discussed in a minute here -- since there was a

24  satisfactory result for the work performed, just

25  as in Milner.

Page 39

1          Therefore, Mr. Russell's taking the

2    compensation meets the requirement under Code and

3    Rules and does not warrant disgorgement.

4          C. The amount of Mr. Russell's fees is

5    unreasonable.  Section 329 of the Bankruptcy Code

6    governs the fee arrangements when the debtor and

7    the attorney representing the debtor -- that's

8    Schroeder v. Rouse in re Redding, 247 B.R. 474

9    and 478, (8th Circuit B.A.P. 2000).

10          See also Fiegen -- F-I-E-G-E-N -- Law

11   Firm v. Fokkena -- F-O-K-K-E-N-A -- in re On-Line

12   Servs. Ltd., 324 B.R. 342 at pages 347-49 (8th

13   Circuit B.A.P. 2005).

14          Applying Lamie v. United States, 540

15   unit -- U.S. 526 (2004).

16          Section 329(b) provides "if such

17   compensation exceeds the reasonable value of any

18   such services, the Court may cancel any such

19   agreement or order the return of any such payment

20   to the extent excessive."

21          "Section 329 requires the attorney to

22   show the agreed upon compensation for legal

23   services is reasonable.

24          Zepecki -- Z-E-P-E-C-K-I -- v. Luker in

25   re Zepecki, 277 F.3d 1041 at 1046 (8th Circuit

Page 40

1    2002).  Citing Snyder v. Dewoskin -- D-E-W-O-S-K-

2    I-N -- in re Mahendra -- M-A-H-E-N-D-R-A, 131

3    F.3d 750 at 757 (8th Circuit 1997).

4              See Clark, 223 F.3d at 863.  "A

5    disgorgement is only allowed to the extent that

6    the fees are excessive."

7              Brown v. Luker in re Zepecki, 258 B.R.

8    719 at 725 (8th Circuit B.A.P. 2001).

9              Citing Redding 247 B.R. at 478-79.

10             Here, as previously discussed, the U.S.

11   Trustee's best interest analysis fails to

12   demonstrate under 329(b) that Mr. Russell should

13   be required to refund the entire fee to Ms. Ryan.

14             Both parties have decided the lodestar

15   method as a standard to apply to a determination

16   of reasonable compensation of a debtor's

17   attorney.  Docket number 30 at 108 and Docket

18   number 55 at 14.

19             "Section 330 governs the allowance of

20   attorney's fees and permits the Court on its own

21   motion or on the motion of a Trustee or other

22   party in interest to award compensation that is

23   less the amount requested."

24             Bachman v. Pelofsky in re Peterson --

25   Pelofsky is P-E-L-O-F-S-K-Y -- , 251 B.R. 359 at

Page 41

1   363 (8th Circuit B.A.P. 2000), aff'd, 13 F.

2   Appendix -- A-P-P-'-X -- 491 (8th Circuit 2001).

3          See also American Law Ctr. v. Stanley

4   in re Jastrem -- J-A-S-T-R-E-M --253 F.3d 438 at

5   443 (9th Circuit 2001).  "Section 330 sets out

6   the standard by which courts should determine the

7   reasonableness of fees under Section 329."

8          Under 11 U.S.C. Section 330(a)(3),

9   "Court shall consider the nature, the extent, and

10  the value of such services, taking into account

11  all relevant factors."

12         In determining the reasonableness of

13  fees under 330, the 8th Circuit applies the

14  lodestar method.

15         Chamberlain v. Kula in re Kula -- K-U-

16  L-A --, 213 B.R. 729 at 736 (8th Circuit B.A.P.

17  1997).

18         Citing P.A. Novelly -- N-O-V-E-L-L-Y --

19  v. Palans -- P-A-L-A-N-S -- in re Apex Oil.

20  That's 960 F.2d 728 at 731 (8th Circuit 1992).

21         Under the lodestar method, a Court

22  multiplies the hours expended by the attorney and

23  the action by a reasonable hourly rate of

24  compensation and makes any necessary adjustment

25  to that figure.  Johnston v. Comerica Mortgage

Page 42

1   Corporation, 83 F.3d 241 at 244 (8th Circuit
2   1996).
3              See also Peterson, 251 B.R. 363 to 364.
4   "We have consistently held that the lodestar
5   method calculated by multiplying the reasonable
6   hourly rate by the reasonable number of hours
7   required to represent the debtor in the case is
8   the appropriate approach for determining
9   reasonable compensation under section 30."
10             I note that the 8th Circuit Bankruptcy
11  Appellate Panel has recognized there are
12  circumstances where the lodestar method is
13  inappropriate for calculating reasonable fees
14  such as the flat fee -- such as in flat fee
15  arrangements.
16             In re Kula, 213 B.R. 737 footnote 5,
17  describing various flat fee arrangements that
18  have been permitted without application of
19  lodestar, including a "normal and customary debt-
20  based formula."
21             Mr. Russell usually charges a flat fee.
22  A $1500 to $1700 for his services, which
23  according to precedent would not necessarily
24  require him an analysis utilizing the lodestar
25  method.

Page 43

1          However, since both Courts have

2     referenced the lodestar method in their arguments

3     regarding Mr. Russell's fees, I will apply the

4     lodestar method.

5          I will not allow Mr. Russell a fee of

6     $2000.  A fee of $2000 is $300 to $500 more than

7     Mr. Russell generally charges for his

8     representations in bankruptcy cases.

9          It is clear that the additional amount

10    charged by Mr. Russell as a result of his funding

11    agreement with Fresh Start Funding which was

12    entitled 25% of the $2000 and leaving Mr. Russell

13    with approximately his normal flat fee.

14          The additional labor required by Mr.

15    Russell in this case related to the paperwork for

16    financing with Fresh Start Funding, his lender,

17    Ms. Ryan should not be required to pay for the

18    financing arrangements of Mr. Russell with Fresh

19    Start Funding.

20          See Milner 612 B.R. at 440.  Finding

21    the upcharge for the fee arrangement behind the

22    attorney's customary rate as excessive

23    compensation.

24          See also Hazlett, 2019 Westlaw at 12,

25    recognizing the concern with a client who pays an

Page 44

1   upcharge for a bifurcated fee arrangement.

2          In fact, his -- Ms. Ryan's case is

3   clearly a relatively simple case with fee assets

4   or debts and no potential contested matters as

5   occurred in her 2009 case where he charged

6   approximately $1400.

7          But it makes no sense to charge more

8   for this simple case than her more complex case

9   solely because the attorney's financing

10  arrangements.

11         To the extent Mr. Russell can charge

12  $500 more for this case because of the risk of

13  Ms. Ryan's failure to pay, he concedes her

14  payment is not particularly risky.  The money is

15  deducted from the bank automatically and she

16  receives Social Security.

17         Further, she paid $1000 post-petition

18  in her 2000 case, even though she knew she was

19  not required to do so.

20         In any event, Mr. Russell did not

21  calculate or produce evidence of an appropriate

22  interest rate.  In fact, Mr. Russell was willing

23  to take this case if Ms. Ryan would pay only the

24  filing fee pre-petition and then, he would rely

25  on her moral obligation to pay the rest of the

Page 45

1   fee post-petition.

2           In this case, Mr. Russell estimated he

3   performed approximately $1965.50 in services in

4   Ms. Ryan's case.  But that amount included Mr.

5   Russell's pre-petition services which he has

6   waived in this case.  Without the fees associated

7   with his pre-petition work, which he waived, it

8   is estimated that Mr. Russell's -- Mr. Russell

9   performed approximately $1285.50 worth of

10  services in Ms. Ryan's case.

11          Mr. Russell's uses of a flat fee rate

12  in this case makes a typical lodestar

13  multiplication analysis difficult.  On the basis

14  of his estimation of work performed and time

15  expended in belief that $250 would be a

16  reasonable rate for an attorney with his

17  experience, I find that $1285.50 is the

18  reasonable fee amount to be charged in this case.

19          Just to be clear, that amount is a --

20  Mr. Russell, on an exhibit to his deposition, it

21  list what he would -- the tasks that he normally

22  performs in a Chapter 7 case, pre- and post-

23  petition.  We deduct out the pre-petition which

24  make -- which is being waved and deduct out

25  services he never had to perform.  And that's how

Page 46

1   we get down to the $1965, and then take out the

2   pre-petition amount which, I believe, was $680.

3   And that's where we get the $1285.50.

4          Counsel for Mr. Russell concedes this

5   Court has discretion in determining reasonable

6   fees under Section 329.  And I can take into

7   account what's a normal fee based on my own

8   experience.

9          See Childress v. Fox Associates LLC,

10  932 F.3d 1165 at 1172 (8th Circuit 2019).  "A

11  Court has great latitude to determine a

12  reasonably hour -- a reasonable hourly rate

13  because it is intimately familiar with its local

14  bar."

15          Quoting Michael J Banks v. Slay, 875

16  F.3d 876 at 882 (8th Circuit 2017).  Bryant v.

17  Jeffrey Sand Company, 919 F.3d 520 at 529 (8th

18  Cir. 2019).  "When determining reasonable hourly

19  rates, the court may rely on their own experience

20  and knowledge of prevailing markets."

21          Quoting Hanig v. Lee -- H-A-N-I-G -- v.

22  Lee, 415 F.3d 822 at 825 (8th Cir. 2005).

23  Although I -- reluctant to take my own experience

24  to account, and don't base the decision on my own

25  experience, I do know that $2000 is excessive in

Page 47

1    this district for a simple case such as this one.

2            Therefore, any amount paid in excess of

3    $1285.50 by Ms. Ryan for services rendered by Mr.

4    Russell must be disgorged and not collected.

5            II. The U.S. Trustee fails to

6    demonstrate that Mr. Russell's agreements with

7    Ms. Ryan violate Sections 526 and 528 of the

8    Bankruptcy Code.

9            Mr. Russell meets the statutory

10   definition of Bankruptcy Code of a "debt relief

11   bankruptcy."  See 11 USC Section 101(12)(a).

12           As such, he's subject to Sections 526

13   to 28 of the Bankruptcy Code.  Section 526(c)(1)

14   provides "any contract for bankruptcy assistance

15   in a debt relief agency and an assisted person

16   that does not comply with the material

17   requirements of this section, section 527, or

18   section 528 shall be void and may not be enforced

19   by any Federal or State court or by any other

20   person, other than such assisted person."

21           11 USC Section 526(c)(1).  Here the

22   U.S. Trustee does not cite material requirements

23   from Section 526 or 527.  Rather, the U.S.

24   Trustee specifically cites Section 528(a)(1),

25   Docket number 30 at 109, Docket number 53 at 34

Page 48

1    through 36.

2              Section 528(a)(1) states "a debt relief

3    agency shall --

4              (1) not later than five days after the

5    first date on which such agency provides any

6    bankruptcy assistance services to an assisted

7    person, but prior to such assisted person's

8    petition under this title being filed, execute a

9    written contract with such assisted person that

10   explains clearly and conspicuously --

11             (A) the services such agency will

12   provide to such assisted person; and

13             (B) the fees or charges for such

14   services, and the terms of payment.  11 USC

15   Section 528(a)(1).

16             The U.S. Trustee again argues what

17   Milner has instructed.  Docket number 30 at 109.

18             In Milner, the Court noted the length

19   and density of the pre-petition and post-petition

20   agreements and criticized the extensive use of

21   legalese in both documents.  Milner, 442 to 443.

22             For example, the Milner court found

23   that "confusing legalese included an express

24   disclaimer of any legal representation with

25   respect to the pre-petition contract or the post-

Page 49

1   petition contract combined with a recommendation

2   that debtor seek independent legal counsel to

3   review the contracts."  At page 443.

4           Here, the U.S. Trustee argues that Mr.

5   Russell's agreements with Ms. Ryan suffer from

6   most of the same defects.  Docket number 30 at

7   109.

8           Further, the U.S. Trustee contends that

9   it appears that Fresh Start Funding has increased

10  the lengthy -- has increased the length and

11  complexity of the agreements that it provides the

12  bankruptcy attorney.  Docket number 30 at 109.

13          Therefore, the U.S. Trustee argues that

14  the evidence shows that Mr. Russell's agreement

15  did not explain clearly and conspicuously the

16  scope of services.  Docket number 53 at 34.

17          U.S. Trustee also argues that Mr.

18  Russell has not read and did not understand the

19  language regarding potential conflicts.  Docket

20  number 53 and 35.

21          For example, Mr. Russell acknowledge

22  the language in the agreements he had purported

23  to exclude purported contested matters from the

24  scope of representation and was incorrect.

25  That's Russell deposition transcript 138, line 25

Page 50

1    through 140, line 5.

2            U.S. Trustee next argues that Mr.

3    Russell admitted to the notion of a separate

4    attorney reviewing the reasonableness of the

5    terms in the engagement or of Ms. Ryan obtaining

6    new counsel post-petition was largely illusory.

7    Docket number 53 at 35.

8            Further, the U.S. Trustee contends that

9    Ms. Ryan did not understand that Mr. Russell

10   would have to keep representing her and her

11   bankruptcy case even if she declined to hire him

12   for post-petition services.  Docket number 53 at

13   35.

14           The U.S. Trustee also points to Ms.

15   Ryan's admission that Ms. Ryan did not see either

16   of the retainer agreements prior to the day that

17   Mr. Russell filed her petition.  Docket number 53

18   at 35.

19           And Ms. Ryan did not see the post-

20   petition agreement until after the filing of the

21   petition, and apparently, and no more than at

22   most nine minutes to review it.

23           U.S. Trustee contends that's it is

24   unlikely that anyone, including a seasoned

25   bankruptcy attorney, could read through the post-

Page 51

1   petition agreement in that amount of time and

2   emerge with a meaningful understanding of all the

3   terms contained in the agreement.  Docket number

4   30 at 109 and 110.

5            The U.S. Trustee states there's no

6   reason to believe that Ms. Ryan understood it

7   either.  Docket number 30 at 110.

8            The U.S. Trustee again relies on Milner

9   and argues that to compound the complexity of the

10  post-petition agreement, both agreements included

11  provisions that required the debtor to

12  acknowledge that she understood about the various

13  potential conflicts of interest and the right to

14  independent counsel and choose to waive that

15  right in any potential conflicts.  Docket number

16  30 at 110.

17           The U.S. Trustee also argues that the

18  agreements do not adequately convey the impact of

19  Fresh Start Funding's involvement in the case.

20  Docket number 30 at 110.

21           In other words, the U.S. Trustee

22  maintains that neither agreement communicates

23  that Fresh Start Funding will retain 25 percent

24  of the fees paid by Ms. Ryan.  Docket number 30

25  at 110.

Page 52

1         And the U.S. Trustee argues that

2    passage in the agreement is a material

3    requirement of Section 528(a)(1).

4         A. Mr. Russell's engagement agreement

5    meets 528's requirements in this case.  Here, Mr.

6    Russell's fee -- pre-petition agreement explains

7    "payments and filing actions" in paragraph one

8    which also disclosed the higher fee if the client

9    chooses not to prepay for the entire engagement.

10   Russell deposition Exhibit 5 at 72.

11        Paragraph 2 identifies all the services

12   that Mr. Russell will provide pre-petition if the

13   client choose to split the engagement in order to

14   make post-petition installment payments of the

15   attorney's fees.  Russell deposition Exhibit 5 at

16   72.

17        It further explains in paragraph 4 the

18   options that Ms. Ryan will have to complete the

19   case and enumerates exactly what services will be

20   provided post-petition if the debtor signs a

21   separate post-petition agreement.  Russell

22   deposition Exhibit 5 at 72 to 73.

23        This list of services is reiterated in

24   the post-petition agreement in paragraph 1.  See

25   Russell deposition Exhibit 6 at 79.

Page 53

1          As to payment terms, the pre-petition

2    agreement explains the maximum payment term and

3    different options for payment frequency in

4    paragraph 4(a).  Russell deposition Exhibit 5 at

5    73.

6          Paragraph one of the post-petition

7    agreement parallels this exact disclosure.

8    Russell deposition Exhibit 6 at 79.

9          In this case, Ms. Ryan's testimony

10   makes it clear she understood the fundament --

11   these fundamental attributes of her engagement of

12   Mr. Russell.  Most importantly, the U.S. Trustee

13   provided no evidence that Ms. Ryan found it

14   complex and confusing or was more complex than a

15   lease, car loan or student load.  Documents that

16   she clearly agreed to in the past and actually

17   testified she understood the arrangement.

18          Of course, this only applies to Ms.

19   Ryan.  It's possible, with appropriate evidence,

20   I would hold that the agreements violate these

21   provisions in other cases.

22          Therefore, I find that while the

23   agreements between Mr. Russell and Ms. Ryan are

24   lengthy and detailed, the agreements are clear

25   and conspicuous in their explanation of the exact

Page 54

1    services that will be provided and the

2    alternatives that Ms. Ryan was presented for a

3    pre-paid and bifurcated engagement and the terms

4    of payment.

5              Further, Mr. Russell explained the

6    terms of the engagement to Ms. Ryan, including

7    her options to either prepay the attorney fee or

8    to pay a higher fee in installments after her

9    case was filed.  And the explanation spanned

10   almost two weeks -- three in person meetings and

11   several hours before the case was filed.

12             Therefore, the retainer agreements meet

13   the narrow statutory requirements in Section 528

14   in this case.

15             I note that the Milner case, upon which

16   the U.S. Trustee predicates nearly the entirely

17   of its arguments is distinguishable from this

18   case in at least one way.

19             In Milner, the debtor was not available

20   to testify, leaving the court having to look at

21   that issue in a virtual vacuum.  That's Milner at

22   433, note 17.

23             Here, in contrast, I need not rely on

24   the documents or speculate about what the debtor

25   might or might not have understood.  Ms. Ryan has

Page 55

1   removed all doubt about whether she gave informed

2   consent to the bifurcation of her agreement, and

3   to the higher fee to pay Mr. Russell over time.

4           However, the agreement might in fact be

5   too confusing or complex for other debtors in

6   other cases.  Again, this decision only applies

7   to this case.

8           Further, as to the broader issue of

9   informed consent, consumers like Ms. Ryan are

10  legally expected to understand and make binding

11  choices about a host of life issues where the

12  operative documents were -- are at, at least, in

13  many instances, much more complicated than

14  Russell's engagement agreement.

15          Consider for example the disclosures

16  Congress mandated debtors receive and then

17  paralegally presume to understand for 11 USC

18  Section 342(b) Bankruptcy Form 2010.

19          Ms. Ryan assumably has signed complex

20  student loan lease and car loan documents and in

21  the past, she had a mortgage in her 2009 case.

22          Those disclosures are easily as

23  complicated -- or those agreements rather -- are

24  as easily as complicated or more so than the

25  engagement agreement here.

Page 56

1          And again, that's not evidence in this

2     case.  That's just stating what might be an

3     assumption.

4          And while it is certainly true that Mr.

5     Russell's documents also must satisfy the

6     requirements of Section 528, those requirements

7     are actually narrow and simple, and there could

8     be no reasonable argument that Mr. Russell's

9     engagement failed to satisfy Section 528 mandate

10    in this case.

11         U.S. Trustee next argues the retainer

12    agreements are difficult to understand when run

13    in conjunction with a notice of responsibility in

14    Mr. Russell's 2016 disclosures.  Docket number 30

15    at 110.

16         In support of the argument, the U.S.

17    Trustee points to Mr. Russell's rule 2016(b)

18    disclosures that conflict with the retainer

19    agreements in the question of how many payments

20    Ms. Ryan's required to make, and by implication,

21    the amount of the payments.  Docket number 30 at

22    110.

23         Further, the U.S. Trustee contends the

24    retainer agreements also appear to conflict with

25    the representations about the scope of services

Page 57

1   in the notice of responsibilities and in the 2016

2   disclosures.  Docket number 30 at 110.

3             The U.S. Trustee indicates that the

4   scope of Mr. Russell's services and the payment

5   schedule for Ms. Ryan also represents material

6   requirements of 528(a)(1).  Docket number 30 at

7   110.

8             However, the idea that Ms. Ryan would

9   be confused by counsels B -- 20-- 30 disclosure

10  is not supported by any evidence.  That

11  disclosure is made to the court, not to the

12  client.  Ms. Ryan already entered into her

13  engagement before Mr. Russell even filed his

14  first, and later amended, disclosure with the

15  court.

16            Further, the minor inconsistencies with

17  the notice of rights and responsibilities are not

18  material and should be corrected in future

19  arrangements.

20            Thus, if there's any confusion about

21  the scope of services, the whole point of the

22  notice of rights and responsibilities is to make

23  sure that it represented -- better understands

24  what to expect from counsel.

25            Therefore, they -- the U.S. Trustee

Page 58

1   fails to show that the retainer agreements are

2   void under Section 526(c)(1), at least that's --

3   as in this case.

4            So, the end result here is that Mr.

5   Russell's fees are reduced to $1285.50.

6   assumably -- I don't know this but -- assumably

7   at $100 a month, Ms. Ryan has not paid that.  We

8   have to add in the $335 filing fee.  And so, we

9   get a total of $1620.50.  $1620.50.  Assuming

10  that's not already been paid.  That is the total

11  amount that Mr. Russell is allowed to receive.

12           And Ms. Ryan is not required to pay

13  anything more than that.  She is not required to

14  do so.

15           And again, some of the issues -- the

16  Trustee rates also might go to the enforceability

17  of the agreement, but that's not before me.

18           For example, was it really a pre-

19  petition agreement?  Did she really decide and

20  did the parties really decide that this was how

21  they were going to go prior to the bankruptcy?

22  And, therefore, an argument that it's -- that

23  this has been discharged.  That the -- I also

24  note that even if I had ruled and voided the

25  agreements and found they violated Section 526

Page 59

1    and 528, for example, I still would have followed

2    the Milner decision and allowed fees which would

3    have been the exact same amount to $1285.50 based

4    on the evidence that I had.  Just as the Milner

5    court allowed a larger amount in that case

6    because of the positive result in the case which

7    also occurred here.

8              I also not again that although it's

9    true a number of -- a large number of her debts

10   are not discharged -- or could be at some point

11   if she brought a lawsuit on the student loans --

12   but in any event, could be if -- depending on how

13   that kind of case go.  Whether she could prove

14   it's an undue hardship, et cetera.

15             Nonetheless, that the $2200 plus in

16   fees have been discharged.  Her stress has been

17   relieved.  And that $1285.50 is a reasonable fee

18   to pay for that result.  Plus the $335 in filing

19   fee.  I also note -- we discussed that the

20   Trustee argued that she could have filed for a

21   fee waiver.  She could have but if she had the

22   ability to pay $100 a month post-petition, I

23   can't say how I'd rule on something like that.

24   But one of the things that Congress has us look

25   at is can they pay it in installments.  Even if

Page 60

1  they're below the 150 percent of the poverty

2  level.

3              And so, even if she's below that

4  amount, the second inquiry, of course, can she

5  pay in installment?  And the evidence I have here

6  is, based on her deposition, is that yes, she

7  could.

8              So, in any event, that's the decision .

9  I want to again emphasize, and you may be

10 wondering why didn't I put all this in writing

11 since I was clearly reading it?  Why not file it

12 in that way, you know, and the principal reason

13 is because I don't want this decision to be

14 floating around as some kind of pronouncement on

15 other cases.  This is very unique to the -- this

16 particular case.

17             A decision could be quite different in

18 another case.  It's also important that the

19 parties did not bring a number of issues agreed.

20 The number of issues were not before me.  And

21 although I'm not amused about various thing

22 during oral argument, I agree with the parties.

23 Those issues ultimately -- I'm convinced by those

24 arguments of counsel.  Those things are just

25 simply not before me.

Page 61

1              And -- including the -- whether or not
2      this type of arrangement is not, per se, not
3      allowed.  I'm not deciding that that today.  The
4      U.S. Trustee did not argue it.  That's not to say
5      how I decide that one way or the other.  But it's
6      just not before me.  I have all the facts in this
7      case, and the facts in this case point to
8      $1285.50 being allowed as a fee.  And that Ms.
9      Ryan is not required to pay any more than that
10     amount.
11             I will issue a very brief order with a
12     summary of what I said today.  Hopefully, in a
13     manner that a layman can understand so that Ms.
14     Ryan can read that and understand what I did not
15     decide today as well so she understands what's
16     happened here.
17             And I will require that Mr. Russell get
18     a copy of that to Ms. Ryan as well.
19             So, again, it's very important that
20     counsel understand what I'm not deciding here
21     today and that these -- if they were hoping for -
22     - if either one of them or both were hoping for
23     some broad pronouncements, almost to the
24     legislative nature, it's just not happening.
25     Those issues were not before me.  The facts of

Page 62

1    this case are fairly unique.  And a result could

2    be quite different.  I'd also note that some of

3    the things the U.S. Trustee has complained of in

4    the disclosures are -- can easily be met even if

5    I'd agree in this case that they were sufficient,

6    in future cases, many of the things that the U.S.

7    Trustee has complained of could be easily met and

8    supplemented in disclosures to potentially avoid

9    this type of problem in the future -- or this

10   type of motion in the future.

11           So, that is something to give some

12   thought to.  At least in this district.

13           And with that, I've got nothing else.

14   I will put on the record here today -- as I did

15   mention, I will -- again, not a chance to argue

16   with me, but if there's a procedural issue or

17   something along those lines, you certainly can

18   raise it now.

19           Mr. Kreuziger, is there anything you

20   want raise with me before we go off the record?

21           MR. KREUZIGER:  No, Your Honor.  Thank

22   you.

23           THE COURT:  Thank you for your time.

24           Mr. Garrison, anything you want to

25   raise with me before we go off the record?

Page 63

1              MR. GARRISON:  Just to thank you for

2    your attention to detail and your fairness,

3    Judge.  It's been a pleasure appearing before you

4    and I appreciate again the privilege of

5    (indiscernible).

6              THE COURT:  Well, thank you, sir.  And

7    I do want to -- I should have mentioned this.  I

8    was very impressed with how the two of you got

9    along in this case and how you both argued this

10   case.

11             I read those deposition transcripts and

12   they were a pleasure to read.  The two of you

13   were clearly polite to each other and rarely

14   objected.  And if you did object, it was

15   unobtrusive and it was for the record.  And I was

16   extremely impressed.  I think back to my days in

17   practice and some of the things attorneys did --

18   and I think things have changed since those day,

19   by the way.

20             But putting that aside, the two of you

21   clearly minimized attorney's fees, cooperated,

22   understood you had a difference of opinion, but

23   also understood that you needed to be

24   professional and you were.

25             And I was extremely impressed.  And

Page 64

1   also, I was extremely impressed with your oral

2   arguments.  By the way, I -- went off on some

3   tangents there, certainly.  This was a new issue

4   for me, and I wanted to explore certain things

5   and certain things that I've now told you today,

6   I don't believe were before me.  So, I made you

7   all go up a couple of blind alleys.

8           And I'm sorry I did that, but I wanted

9   to get my arms around this thing.  And I, again,

10  appreciate your patience in doing that.  The two

11  of you indulged me and did that.  And I very much

12  appreciate that.  So, I, again, I can't tell you

13  -- reading those deposition transcripts, how

14  happy that made me feel to see that people were -

15  - to see how two attorneys can get along and not

16  play games and let the evidence come out in a way

17  that's appropriate and object when it is

18  appropriate but also not to do so just simply to

19  coach witnesses or to block things.

20          And so, again -- and it's also --

21  again, extremely impressed that you were able to

22  submit those and not have live testimony or semi-

23  live testimony and minimizing Ms. Ryan's time,

24  which is very important.  And for that matter,

25  Mr. Russell's time.

Page 65

1           And so, I -- thanks to your

2     cooperation, I think you minimized some of the

3     pain that might have occurred in this case or did

4     occur in this case.

5           So, again, I thank you both very much.

6     I hope you both remain healthy and safe and have

7     a good remainder of your week.

8           I'll get the orders -- I'll get

9     everything filed today so you'll be seeing those

10    trickling out during the afternoon.

11          Thank you all very much.  And again,

12    have a good afternoon.

13          MR. KREUZIGER:  Thank you, Judge.

14          MR. GARRISON:  Thank you, Your Honor.

15       (Whereupon these proceedings were concluded.)

16

17

18

19

20

21

22

23

24

25

Page 66

1                           I N D E X

2

3                           RULINGS

4                                           Page        Line

5

6   Fees reduced to $1285.50                  5           21

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 67

1                         C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9      Veritext Legal Solutions

10    330 Old Country Road

11    Suite 300

12    Mineola, NY 11501

13

14

15    Date:  October 15, 2020

16

17

18

19

20

21

22

23

24

25

**[& - 25]**                                                                      Page 1

| & |
| --- |
| **&**   26:15 |

**1**

**1**   9:10 10:15 13:2
  14:6 15:16 18:22
  19:10 20:22 29:1
  47:13,21,24 48:2,4
  48:15 52:3,24
  57:6 58:2
**10**   8:24 10:2 33:23
  35:22
**100**   9:5 15:11,15
  15:16 20:3,21
  22:6 34:10 58:7
  59:22
**1000**   44:17
**1006-1**   24:25
**1007-1**   25:2 36:4,6
  36:11,17
**1007-3-1**   32:6,7
**101**   11:17,24 30:15
  47:11
**102**   13:20,24 14:3
  14:12,15
**103**   15:21 20:13
**104**   28:12
**1041**   39:25
**1046**   39:25
**105**   29:5,11,24
  30:6 31:13
**106**   32:13,25 34:11
  34:23 35:10
**107**   35:17 36:1
**108**   40:17
**109**   47:25 48:17
  49:7,12 51:4
**10th**   26:15
**11**   11:4,11 16:7
  17:1 41:8 47:11
  47:21 48:14 55:17

**110**   51:4,7,16,20
  51:25 56:15,22
  57:2,7
**112**   15:16 20:22
**11501**   67:12
**1165**   46:10
**117**   18:21 19:10
**1172**   46:10
**118**   18:22 19:10
**12**   11:5 20:8 34:8
  43:24 47:11
**12151**   67:7
**1285.50**   5:22 38:22
  45:9,17 47:3 59:3
  59:17 61:8 66:6
**1285.50.**   46:3 58:5
**13**   6:19 35:7 41:1
**131**   40:2
**133**   17:1
**134**   17:1
**1340**   15:8
**138**   49:25
**14**   9:21 10:11
  33:22 35:25 40:18
**140**   50:1
**1400**   44:6
**147**   20:8
**148**   20:9
**15**   67:15
**150**   60:1
**1500**   42:22
**1567751**   8:23 10:2
  35:22
**16**   29:1 36:10,17
  37:18
**16-30360**   8:23
**1620.50.**   58:9,9
**1679**   14:19 15:9
**17**   54:22
**170**   33:22

**1700**   42:22
**171**   33:23
**18**   18:20 19:11
**180**   19:10
**1805**   3:5
**184**   28:1
**19**   7:19 14:12,15
  14:20 15:1,6 20:8
**19-33190**   1:3 4:4
**1900**   37:18
**191**   28:1
**195**   27:16
**1965**   46:1
**1965.50**   45:3
**1992**   41:20
**1995**   26:19
**1996**   42:2
**1997**   26:15 40:3
  41:17

**2**

**2**   9:16 10:18 13:6
  18:22 28:25 33:22
  36:9,16 52:11
**20**   15:6,22 17:6,12
  17:17 18:3 19:10
  28:4 36:21 57:9
**20,000**   14:22
**200**   16:1 37:20
**2000**   5:6 26:4
  28:25 39:9 41:1
  43:6,6,12 44:18
  46:25
**2001**   21:15 25:5
  40:8 41:2,5
**2002**   40:1
**2003**   27:21
**2004**   39:15
**2005**   39:13 46:22
**2007**   27:12
**2008**   28:2

**2009**   21:15 44:5
  55:21
**2010**   27:17 55:18
**2014**   27:1
**2016**   13:7 24:10,19
  25:13 28:4,11
  56:14,17 57:1
**2017**   6:23 26:22
  36:21 46:16
**2018**   8:22
**2019**   8:20,23,24
  10:1 35:21 43:24
  46:10,18
**2020**   1:16 8:15
  22:9 67:15
**2030**   35:24
**207**   27:16
**21**   15:22 16:3 18:4
  18:13 19:2,18,25
  20:16 26:21 66:6
**210**   26:14
**213**   41:16 42:16
**216**   26:8
**22**   21:6
**22,277**   16:9 21:21
  22:10
**2200**   59:15
**223**   26:3 40:4
**23**   12:6 34:9
**2335**   18:2
**24**   15:16 20:22
  34:15 37:18
**2400**   12:17
**241**   42:1
**2435**   28:21
**244**   42:1
**247**   39:8 40:9
**25**   10:19 16:11
  18:21 19:11 29:24
  30:6,11 32:23
  43:12 49:25 51:23

**250**   45:15
**251**   40:25 42:3
**253**   41:4
**258**   40:7
**26**   12:9,18 29:24
  30:6 31:13,17
  37:19
**263**   25:3,24 26:9
**27**   32:18
**27-28**   26:21
**277**   39:25
**28**   34:11 35:7 37:5
  47:13
**29**   37:5,9

**3**

**3**   9:19 10:22 13:8
  16:11 17:21 41:8
**30**   1:16 7:17,18
  9:5 11:16,23
  13:20,23 14:3,12
  14:15 15:21 20:7
  20:13 28:12 29:4
  29:10,23 30:6,15
  31:13 32:13,25
  34:11,23 35:10,17
  36:1 40:17 42:9
  47:25 48:17 49:6
  49:12 51:4,7,16,20
  51:24 56:14,21
  57:2,6,9
**300**   12:10 37:21
  43:6 67:11
**3035**   28:15,17,21
**316**   1:13 3:12
**32**   38:11
**3200**   15:24
**324**   39:12
**328**   26:7
**329**   7:9,12,16,20
  21:2 24:9,14,20
  25:7 36:25 39:5

**39**:16,21 40:12
  41:7 46:6
**33**   10:3
**330**   40:19 41:5,8
  41:13 67:10
**335**   12:11 58:8
  59:18
**34**   14:5 47:25
  49:16
**342**   39:12 55:18
**347-49**   39:12
**35**   34:10 49:20
  50:7,13,18
**359**   40:25
**36**   48:1
**363**   41:1 42:3
**364**   42:3
**375**   27:10
**394**   28:1

**4**

**4**   9:22 13:11 16:4
  20:8 52:17 53:4
**4-4-3**   38:1
**407**   16:17
**415**   8:19 46:22
**42**   16:17
**422**   12:2,6
**423**   12:9 37:18
**424**   12:12
**425**   12:13,18
**427**   8:14
**432**   10:3
**433**   13:13 54:22
**435**   27:16 28:18
**436**   35:17
**438**   41:4
**44**   12:23 37:19
**440**   43:20
**441**   8:14
**442**   8:14 48:21

**443**   12:23 13:13
  37:19 38:1,10
  41:5 48:21 49:3
**474**   39:8
**478**   39:9
**478-79**   40:9
**49**   28:25 36:10,16
**491**   41:2

**5**

**5**   20:5,9 42:16
  50:1 52:10,15,22
  53:4 66:6
**50**   13:8 36:10,16
**500**   20:6 34:22
  35:4 43:6 44:12
**519**   26:25
**520**   46:17
**523**   16:7
**526**   39:15 47:7,12
  47:13,21,23 58:2
  58:25
**527**   47:17,23
**528**   13:12 47:7,18
  47:24 48:2,15
  52:3 54:13 56:6,9
  57:6 59:1
**528's**   52:5
**529**   46:17
**53**   7:19 14:12,15
  14:20 15:1,6,22
  17:6,12,17 18:3,13
  19:1,18,25 21:6
  30:6,11 31:13,16
  32:18 34:11 37:5
  37:9 47:25 49:16
  49:20 50:7,12,17
**540**   39:14
**55**   29:24 40:18
**550.37**   16:3
**55101**   1:14 3:13

**570**   26:20
**571.922**   16:18,21
**590**   11:5
**591**   8:21

**6**

**6**   26:18 33:23
  52:25 53:8
**600**   22:1 28:22
**612**   8:19 10:3
  28:18 35:17 37:18
  43:20
**613**   8:13
**63**   26:18 27:11
**67**   26:25
**68**   8:21
**680**   46:2
**69**   33:22
**6th**   27:21

**7**

**7**   5:24 18:17 21:19
  30:23 32:7 45:22
**719**   40:8
**72**   52:10,16,22
**725**   40:8
**728**   41:20
**729**   41:16
**73**   14:17 20:5
  26:25 52:22 53:5
**731**   41:20
**736**   41:16
**737**   42:16
**75**   11:9
**750**   40:3
**757**   40:3
**77**   27:21
**770**   27:21
**779**   27:21
**79**   27:20 52:25
  53:8

[8 - appreciate]                                                                    Page 3

| 8 | a | | |
|---|---|---|---|
| **8**  16:7 17:1 | **ability**  59:22 | **agree**  6:4 32:10 | **amended**  28:16 |
| **80**   13:9 15:8 | **able**  21:23 22:3 | 60:22 62:5 | 57:14 |
| **822**  46:22 | 30:25 64:21 | **agreed**  7:25 19:22 | **american**  41:3 |
| **825**  46:22 | **accept**  28:15 29:9 | 24:17,21 25:9 | **amount**  11:10 |
| **83**  42:1 | **account**  16:2 37:3 | 28:15,17,24 31:11 | 25:16 28:5 29:4 |
| **844**  26:14 | 41:10 46:7,24 | 39:22 53:16 60:19 | 30:22 37:18 39:4 |
| **848**  26:15 | **accurate**  28:11 | **agreement**  6:13,14 | 40:23 43:9 45:4 |
| **85281**  3:6 | 31:5 37:3 67:4 | 6:21 8:1,9 9:9 | 45:18,19 46:2 |
| **858**  27:11 | **acknowledge** | 11:1 12:4,15 13:4 | 47:2 51:1 56:21 |
| **859**  26:3 | 32:15 49:21 51:12 | 14:9 20:21 21:1 | 58:11 59:3,5 60:4 |
| **862**  27:11 | **act**  25:19 | 22:7 24:8,23 | 61:10 |
| **863**  26:3 40:4 | **acted**  23:3 | 33:24 34:1,21 | **amounts**  31:4 |
| **874**  25:4 | **action**  23:4 41:23 | 39:19 43:11 49:14 | 33:11 35:10 36:15 |
| **875**  46:15 | **actions**  22:22 23:7 | 50:20 51:1,3,10,22 | **amused**  60:21 |
| **876**  46:16 | 52:7 | 52:2,4,6,21,24 | **analysis**  14:8 24:7 |
| **877**  26:18 | **activity**  23:18 | 53:2,7 55:2,4,14 | 40:11 42:24 45:13 |
| **878**  25:4,24 | **actual**  34:8 | 55:25 58:17,19 | **analytical**  9:1 |
| **880**  26:9 | **add**  58:8 | **agreements**  4:5 | **analyzed**  35:20 |
| **881**  26:18 | **added**  36:12,13 | 5:24 7:11,13 8:12 | **announced**  9:7 |
| **882**  46:16 | **additional**  10:13 | 9:3 12:8,20 13:12 | **annual**  14:21 |
| **89**  11:5 | 34:22 43:9,14 | 13:14 14:10 20:2 | **apex**  41:19 |
| **8th**  25:4,5 26:3 | **address**  6:1 | 20:25 21:12 28:10 | **apparently**  50:21 |
| 39:9,12,25 40:3,8 | **adequately**  51:18 | 31:15 34:3,18,21 | **appeal**  14:5 25:4 |
| 41:1,2,13,16,20 | **adjustment**  41:24 | 37:16 38:17,19,21 | **appear**  12:4 18:9 |
| 42:1,10 46:10,16 | **admission**  50:15 | 47:6 48:20 49:5 | 56:24 |
| 46:17,22 | **admissions**  26:11 | 49:11,22 50:16 | **appearance**  4:15 |
| | **admitted**  50:3 | 51:10,18 53:20,23 | **appearances**  4:5 |
| **9** | **advice**  19:13,20 | 53:24 54:12 55:23 | **appearing**  63:3 |
| **9**  10:2,8 17:21 | **advise**  18:10,14 | 56:12,19,24 58:1 | **appears**  6:9 31:20 |
| 35:7 | **advised**  17:25 19:1 | 58:25 | 38:18 49:9 |
| **9010-3**  32:7 | **affirming**  26:9 | **alleys**  64:7 | **appellate**  42:11 |
| **919**  46:17 | **afford**  13:4 15:3 | **allow**  38:22 43:5 | **appendix**  27:21 |
| **932**  46:10 | 15:14 17:5 18:18 | **allowance**  40:19 | 41:2 |
| **94**  16:11 | 20:11 22:6 | **allowed**  5:21 | **application**  42:18 |
| **95**  16:11 17:21 | **aff'd**  41:1 | 37:16,23 40:5 | **applies**  7:23 41:13 |
| **960**  41:20 | **afternoon**  65:10 | 58:11 59:2,5 61:3 | 53:18 55:6 |
| **98**  7:18 | 65:12 | 61:8 | **apply**  40:15 43:3 |
| **99**  11:5 18:20 | **agency**  47:15 48:3 | **allowing**  31:8 | **applying**  39:14 |
| **9th**  26:18 41:5 | 48:5,11 | **allows**  20:18 | **appreciate**  5:3 |
| | | **alternatives**  54:2 | 63:4 64:10,12 |

[approach - bifurcated]                                                      Page 4

**approach**  11:13
21:8 30:13 42:8
**approaches**  9:3
**appropriate**  26:5
26:5 42:8 44:21
53:19 64:17,18
**approval**  6:22
**approximately**
22:1 43:13 44:6
45:3,9
**april**  8:24
**argue**  4:24 61:4
62:15
**argued**  5:23 59:20
63:9
**argues**  7:10 8:25
11:21 12:24 13:17
14:10,23 15:19
16:13 17:7 18:23
20:10 21:3 29:21
32:8 34:17 35:18
48:16 49:4,13,17
50:2 51:9,17 52:1
56:11
**argument**  15:23
28:9 37:1 56:8,16
58:22 60:22
**arguments**  7:18
19:21 43:2 54:17
60:24 64:2
**arising**  11:2
**arizona**  3:6
**arms**  64:9
**arrangement**  6:3
10:17,24 31:9
32:24 33:15 36:3
36:19,20 37:4
38:15 43:21 44:1
53:17 61:2
**arrangements**
8:18 9:4,19 34:5

35:23 36:14 39:6
42:15,17 43:18
44:10 57:19
**aside**  63:20
**asked**  23:5
**aspects**  10:16
**asset**  21:8
**assets**  15:25 17:16
20:12 23:15 30:21
44:3
**assigned**  34:2
**assignment**  11:15
33:4,25 34:4
**assist**  18:11
**assistance**  18:15
19:4,6 22:19
47:14 48:6
**assisted**  47:15,20
48:6,7,9,12
**associated**  45:6
**associates**  27:15
32:12 46:9
**assumably**  55:19
58:6,6
**assume**  37:17
**assuming**  29:10
58:9
**assumption**  56:3
**attach**  17:16
**attempt**  18:10
19:24,24
**attention**  36:19
63:2
**attested**  21:25
**attorney**  6:9 7:20
7:23 8:5 9:24
10:10 11:25 12:7
12:14,21 13:8
18:25 23:2,14
24:15,20,24 25:6,8
27:13 28:14,20

39:7,21 40:17
41:22 45:16 49:12
50:4,25 54:7
**attorney's**  10:15
11:2,8 12:10 13:6
37:17 38:5 40:20
43:22 44:9 52:15
63:21
**attorneys**  3:4,11
22:12,22 23:3,6
25:20,23 63:17
64:15
**attributes**  53:11
**automatically**
44:15
**available**  24:5
54:19
**avoid**  4:4 62:8
**award**  26:1 40:22
**aware**  32:22

**b**

**b**  1:21 7:9,12 8:7
13:7 16:4 21:2
24:9,9,19 26:2
27:10 28:11 35:24
36:21,25 39:16
40:12 48:13 55:18
56:17 57:9
**b.a.p.**  25:5 26:15
39:9,13 40:8 41:1
41:16
**b.r.**  8:13,19,21
10:3 11:5 25:4,24
26:9,14,21,25
27:11,16 28:1,18
35:17 39:8,12
40:7,9,25 41:16
42:3,16 43:20
**bachman**  40:24
**back**  63:16

**bank**  44:15
**bankruptcy**  1:1,12
1:23 6:12,19,23
7:9 8:14,17,19,21
8:24 11:18 12:12
12:16 13:12 16:7
17:5,9,15 18:19
20:15 21:5,15,23
22:2,23 23:5,9,11
23:12,13 24:14
25:4,6,19,21,25
26:21 27:1,11,16
28:2 36:21 37:25
39:5 42:10 43:8
47:8,10,11,13,14
48:6 49:12 50:11
50:25 55:18 58:21
**banks**  46:15
**bar**  46:14
**base**  46:24
**based**  9:13 26:10
29:2 42:20 46:7
59:3 60:6
**basically**  5:5
**basis**  45:13
**behalf**  25:7
**belief**  45:15
**believe**  26:14 46:2
51:6 64:6
**believed**  23:21
**believes**  22:5
**benefits**  14:19
16:14 17:19
**best**  7:14 9:14 13:2
14:7,11 20:24
21:10 24:6 32:21
40:11
**better**  37:11 57:23
**beyond**  36:13
**bifurcated**  5:24
8:12 9:2,9 13:3,14

[bifurcated - compensation]                                                    Page 5

13:19 34:21 44:1
54:3
**bifurcation**  13:10
55:2
**binding**  55:10
**blank**  35:10
**blind**  64:7
**block**  64:19
**bono**  18:15 19:4,6
19:8,9 22:13,13,17
22:19,21,22,24
23:14
**borrowing**  30:5
**brief**  5:10 61:11
**bring**  60:19
**broad**  25:25 61:23
**broader**  55:8
**brought**  59:11
**brown**  40:7
**bryant**  46:16
**bulen**  27:10
**burden**  21:20
**burdensome**  16:22
**business**  11:20

**c**

**c**  3:1 4:1 27:19,19
39:4,24 47:13,21
58:2 67:1,1
**calculate**  44:21
**calculated**  30:20
42:5
**calculating**  42:13
**call**  23:16
**cancel**  7:10 8:9 9:4
21:12 28:9 39:18
**cancelled**  14:9
21:1 24:8
**car**  17:11,11 53:15
55:20
**carr**  8:13

**case**  1:3 4:16 5:15
5:18 6:9,10,20,21
7:7,21,22 8:4,17
8:25 10:14 11:21
11:22,23 12:6,11
13:18,23 15:1
18:16,19 21:6,13
21:19,24 22:21,24
23:4,14 25:6 30:9
30:24 31:25 32:3
35:2,5 36:7 37:25
38:13,14 42:7
43:15 44:2,3,5,8,8
44:12,18,23 45:2,4
45:6,10,12,18,22
47:1 50:11 51:19
52:5,19 53:9 54:9
54:11,14,15,18
55:7,21 56:2,10
58:3 59:5,6,13
60:16,18 61:7,7
62:1,5 63:9,10
65:3,4
**cases**  5:14,25 13:9
19:9 22:13,14
23:1 31:25 43:8
53:21 55:6 60:15
62:6
**caught**  36:19
**cause**  23:20 27:24
**causes**  34:21
**causing**  18:6
**certain**  64:4,5
**certainly**  32:4
56:4 62:17 64:3
**certified**  67:3
**cetera**  30:20 59:14
**challenged**  38:9
**chamberlain**
41:15

**chance**  4:23 62:15
**changed**  63:18
**chapter**  5:24 6:19
18:17 21:19 30:23
45:22
**charge**  9:17 15:5
34:22 44:7,11
**charged**  10:7 13:8
43:10 44:5 45:18
**charges**  42:21
43:7 48:13
**charging**  32:3
**chartwell**  26:16
**checking**  16:2
**chief**  12:24
**childress**  46:9
**choices**  55:11
**choose**  22:24
51:14 52:13
**chooses**  52:9
**choosing**  35:5
**chose**  6:16
**cir**  46:18,22
**circuit**  25:4,5 26:3
26:15,18 27:21
39:9,13,25 40:3,8
41:1,2,5,13,16,20
42:1,10 46:10,16
**circumstances**
42:12
**cite**  5:14 47:22
**cites**  8:16 9:6
10:12 28:8 47:24
**citing**  40:1,9 41:18
**claim**  34:20
**clarification**  4:25
**clark**  26:3 40:4
**clear**  24:12 30:3
43:9 45:19 53:10
53:24

**clearly**  15:10,13
24:3 28:6 29:15
34:12,14 35:3,12
44:3 48:10 49:15
53:16 60:11 63:13
63:21
**clerk**  4:2
**client**  9:22 11:4
17:25 23:24 43:25
52:8,13 57:12
**client's**  9:13 31:25
**clients**  10:18 18:12
19:17 33:6
**closely**  11:22
**coach**  64:19
**code**  7:9 13:13
24:14 25:15 39:2
39:5 47:8,10,13
**colin**  3:15
**collateral**  29:14
33:4
**collect**  11:8,16
**collected**  47:4
**collection**  15:25
20:13 23:16,16,18
**combined**  49:1
**come**  64:16
**comerica**  41:25
**committed**  20:3
**communicates**
51:22
**company**  11:7,11
27:20 46:17
**compelling**  21:4
**compensation**
7:15,23,25 8:6,7
9:20 10:16 24:16
24:18,21 25:1,9,17
27:7 29:23 30:2,4
32:11,20 33:21
35:24 36:5,24

**[compensation - debtor]**

39:2,17,22 40:16
40:22 41:24 42:9
43:23
**complained** 62:3,7
**complete** 17:24
23:17 35:16 37:3
52:18
**completely** 24:8
**completing** 23:7
**complex** 31:8 44:8
53:14,14 55:5,19
**complexity** 49:11
51:9
**compliance** 27:22
**complicated** 23:20
55:13,23,24
**complied** 36:22
**comply** 9:24 26:6
47:16
**compound** 51:9
**concedes** 44:13
46:4
**concern** 25:20
38:3 43:25
**concerns** 10:13
12:25
**concluded** 65:15
**concludes** 13:25
17:25 21:11
**conclusion** 23:25
**confer** 23:2
**conflict** 10:24 11:1
19:15 56:18,24
**conflicts** 22:25
31:15 49:19 51:13
51:15
**conform** 25:1 36:5
36:8
**confused** 38:17
57:9

**confusing** 35:16
38:6 48:23 53:14
55:5
**confusion** 57:20
**congress** 25:19
55:16 59:24
**conjunction** 56:13
**connection** 7:22
8:4 30:8
**consent** 55:2,9
**consider** 13:19
41:9 55:15
**consideration** 6:7
21:10
**considered** 11:19
**considering** 6:2,18
8:17 9:8
**consistently** 42:4
**consists** 14:18
**conspicuous** 53:25
**conspicuously**
48:10 49:15
**construction**
27:20
**consumer** 5:25
**consumers** 55:9
**contact** 12:22
**contain** 37:12
**contained** 36:15
51:3
**contemplation** 8:4
**contends** 13:21
14:13 21:7 29:25
32:14 35:14 37:6
49:8 50:8,23
56:23
**contested** 31:12,22
32:2,6 44:4 49:23
**context** 25:21
**contingent** 33:12

**contract** 47:14
48:9,25 49:1
**contracts** 35:6
38:6 49:3
**contrary** 15:17
34:14 38:18
**contrast** 54:23
**convey** 51:18
**convinced** 60:23
**cooperated** 27:14
63:21
**cooperation** 65:2
**copy** 61:18
**corp** 26:18
**corporation** 26:16
42:1
**correctable** 37:13
**corrected** 35:11
57:18
**cost** 11:8
**counsel** 10:1 11:7
14:4 27:3 30:24
38:4 46:4 49:2
50:6 51:14 57:24
60:24 61:20
**counsel's** 33:4
**counsels** 57:9
**country** 67:10
**couple** 4:17 64:7
**course** 53:18 60:4
**court** 1:1,12 4:10
4:14 6:22 7:10,24
8:8 10:4,9 11:18
12:19 14:1,2
21:12 24:16 25:25
28:7,9,13,19 37:15
37:23 38:3 39:18
40:20 41:9,21
46:5,11,19 47:19
48:18,22 54:20
57:11,15 59:5

62:23 63:6
**court's** 12:25
34:19 36:19
**courts** 8:11,17
27:5 41:6 43:1
**court's** 2:1
**creating** 10:25
**credit** 11:14 12:1,3
30:1,14,20,22 31:1
31:7 33:3,10,15,19
**creditor** 25:22
**creditors** 16:24
17:16 18:12 23:19
**criticized** 48:20
**ctr** 41:3
**currently** 14:18
**customary** 42:19
43:22

---

**d**

**d** 4:1 40:1,2 66:1
**daniel** 3:8
**date** 8:2 48:5
67:15
**day** 5:19 12:15
50:16 63:18
**days** 9:21 35:25
48:4 63:16
**deal** 5:2 23:18
**dealing** 16:24
**dealings** 9:12
**dealt** 6:16 13:22
**debt** 10:25 16:5,9
16:12 20:15 21:17
21:21 30:18 33:5
38:8 42:19 47:10
47:15 48:2
**debtor** 1:9 7:21
9:11 12:9,10,17,22
13:4,6 16:21,23
24:15 25:7 28:15
28:16,24 37:24

[debtor - drafting]

38:10,16 39:6,7
42:7 49:2 51:11
52:20 54:19,24
**debtor's** 10:10
11:25 12:7,14,21
13:2,6,8 21:10
28:20 40:16
**debtors** 11:7 17:24
55:5,16
**debts** 18:5 21:14
22:10 44:4 59:9
**deceive** 33:17
**december** 37:20
**deception** 31:20
34:13 35:1,13
37:14
**decide** 58:19,20
61:5,15
**decided** 24:4
40:14
**deciding** 6:6 9:11
61:3,20
**decision** 2:1 4:20
4:22,24 5:12,20
11:6 13:18 24:1
46:24 55:6 59:2
60:8,13,17
**decisions** 9:12
**declined** 8:11
50:11
**deduct** 45:23,24
**deducted** 44:15
**defects** 49:6
**definition** 47:10
**delineated** 25:14
**demonstrate** 24:7
40:12 47:6
**denied** 27:4
**density** 48:19
**deny** 26:1

**department** 3:10
**depending** 59:12
**deposition** 15:10
15:15 16:10,25
17:21 18:20,21
19:9 20:5,7,22
22:8 28:25 33:21
35:6 36:9,16
45:20 49:25 52:10
52:15,22,25 53:4,8
60:6 63:11 64:13
**derived** 25:18
**describe** 36:14
**describing** 42:17
**desire** 11:2
**desperate** 18:24
**despite** 18:17
21:17 22:1
**detail** 63:2
**detailed** 53:24
**determination**
28:3 40:15
**determine** 27:6
36:24 41:6 46:11
**determining** 41:12
42:8 46:5,18
**dewoskin** 40:1
**difference** 63:22
**different** 21:9 53:3
60:17 62:2
**difficult** 16:22,25
45:13 56:12
**directive** 9:7
**directly** 10:6
31:15
**disallowed** 7:1
**discharge** 6:13
15:20 18:2 23:22
**dischargeable**
10:25 18:1 19:22

**discharged** 16:6,9
16:13 20:15 21:18
22:11 58:23 59:10
59:16
**discharging** 19:24
21:20
**disclaimer** 48:24
**disclose** 26:10,12
26:23,23 28:5
29:12 31:6 34:4
34:20
**disclosed** 25:17
29:22 33:14,15,18
35:23 52:8
**disclosure** 10:16
26:7 27:2,23
28:14,16,19,23
29:7 31:11,14,23
32:15 34:7,24
35:9,19,24 36:8
37:2,7,9 53:7 57:9
57:11,14
**disclosures** 7:16
13:7 24:11,13
28:11 30:3 31:5
32:10 35:15 36:2
36:12,18 37:11,12
38:6,12,18 55:15
55:22 56:14,18
57:2 62:4,8
**discretion** 26:1
27:6 46:5
**discussed** 17:22
33:1 35:21 37:10
38:23 40:10 59:19
**discusses** 23:1
**discussing** 11:5
**discussion** 10:13
**disgorged** 6:25
47:4

**disgorgement**
24:11 26:4,10,24
34:16 35:2 39:3
40:5
**dismiss** 32:2,2
**dispute** 5:5
**distinguishable**
38:13 54:17
**distress** 38:9
**district** 1:2 8:15
8:20,22,24 11:19
22:15 26:21 27:1
27:11,17 28:2
47:1 62:12
**docket** 7:17,18,18
9:5 11:16,23
13:20,23 14:2,5,11
14:12,15,15,20
15:1,6,21,21 17:6
17:12,17 18:3,12
19:1,17,25 20:13
21:6 28:12 29:1,4
29:10,23,24 30:5,6
30:11,15 31:12,13
31:16 32:12,17,24
34:10,11,22 35:10
35:16 36:1,10,17
37:4,9 40:17,17
47:25,25 48:17
49:6,12,16,19 50:7
50:12,17 51:3,7,15
51:20,24 56:14,21
57:2,6
**documents** 48:21
53:15 54:24 55:12
55:20 56:5
**doing** 4:19 7:4
64:10
**doubt** 55:1
**drafting** 27:8,13

**draws** 30:25
**drew** 34:19
**due** 33:6
**dunlap** 27:20

**e**

**e** 1:21,21 3:1,1,8
4:1,1 26:2,17,17
26:17,20 27:10
39:10,10,11,24,24
40:1,2,25 41:4,18
66:1 67:1
**earning** 16:16
**earnings** 16:14
**easily** 55:22,24
62:4,7
**eastern** 8:14
**ecro** 1:25
**educational** 16:6
**edward** 3:4
**effect** 6:18,20 7:7
**efforts** 20:13
**egregious** 14:24
**either** 50:15 51:7
54:7 61:22
**elects** 9:22
**eliminate** 22:3
**emerge** 51:2
**emphasize** 60:9
**enable** 17:10
**ended** 10:19
**enforceability** 6:3
6:14 58:16
**enforced** 47:18
**engage** 34:25
**engagement** 50:5
52:4,9,13 53:11
54:3,6 55:14,25
56:9 57:13
**enter** 13:3
**entered** 6:21 12:1
12:7,15 24:3

57:12
**entering** 20:25
**entire** 19:21 27:3
40:13 52:9
**entirely** 14:18
54:16
**entirety** 7:1
**entitled** 43:12
**entity** 11:3 24:22
**enumerates** 52:19
**error** 28:6 29:8
35:11
**errors** 24:12 27:8
27:13 37:7,13
**established** 25:13
**estimated** 45:2,8
**estimation** 45:14
**et** 30:20 59:14
**evaluating** 9:1
**evasion** 25:21
**event** 44:20 59:12
60:8
**eventually** 33:10
**evidence** 15:17
17:3,8,14 19:5
22:18,20 23:8
24:12 33:16 34:13
38:15 44:21 49:14
53:13,19 56:1
57:10 59:4 60:5
64:16
**exact** 53:7,25 59:3
**exactly** 52:19
**examine** 36:20
**example** 8:13 17:7
48:22 49:21 55:15
58:18 59:1
**exceeded** 21:25
**exceeds** 8:7 39:17
**exception** 16:1
25:16

**excess** 47:2
**excessive** 7:2,8,16
8:10 39:20 40:6
43:22 46:25
**exchange** 11:9
**exclude** 49:23
**excuse** 17:9 21:15
25:11 37:25
**execute** 48:8
**exemplifies** 13:18
**exempt** 16:15
20:12 23:15
**exemption** 16:20
17:23
**exhibit** 20:5 28:25
36:9,16 45:20
52:10,15,22,25
53:4,8
**exigency** 21:4
**exist** 23:1
**expect** 57:24
**expected** 55:10
**expended** 41:22
45:15
**expenses** 21:25
**experience** 21:14
45:17 46:8,19,23
46:25
**explain** 49:15
**explained** 17:4,8
17:15 54:5
**explains** 48:10
52:6,17 53:2
**explanation** 53:25
54:9
**explore** 22:22 64:4
**exposed** 27:3
**express** 48:23
**extension** 11:13
30:14

**extensive** 48:20
**extent** 8:10 39:20
40:5 41:9 44:11
**extra** 32:3 35:4
**extremely** 63:16
63:25 64:1,21

**f**

**f** 1:21 26:20 39:10
39:11 40:25 41:1
67:1
**f.2d** 41:20
**f.3d** 26:3,18 39:25
40:3,4 41:4 42:1
46:10,16,17,22
**fact** 5:7,9,13 14:17
14:24 29:3,17,18
31:24 44:2,22
55:4
**factored** 10:19
**factoring** 11:3,7
11:10
**factors** 41:11
**facts** 11:22,23
13:22,23 18:11
29:2 61:6,7,25
**fail** 17:24 30:3
**failed** 18:14 19:13
32:15 37:2 56:9
**fails** 14:8 24:7
40:11 47:5 58:1
**failure** 10:15 26:6
26:10,12,22,23
28:5 34:20 44:13
**fairly** 62:1
**fairness** 63:2
**familiar** 46:13
**favor** 10:10
**favorable** 11:3
**federal** 16:16
27:20 36:20 47:19

**fee** 5:24 6:3 8:12
9:4,19 10:6,17,23
11:1 12:11 13:3
13:19 18:17,19
19:21 20:7,21
22:7 23:21 27:3
29:4 30:18,23
31:15 32:24 33:4
35:22 36:3,7,14,20
38:14 39:6 40:13
42:14,14,17,21
43:5,6,13,21 44:1
44:3,24 45:1,11,18
46:7 52:6,8 54:7,8
55:3 58:8 59:17
59:19,21 61:8
**feel** 64:14
**fees** 5:6,21 6:25
7:8 9:16 10:5,19
10:23 11:8,16
12:11 24:11 26:1
26:5 32:16,17
33:11 37:17,21,23
38:5,22 39:4 40:6
40:20 41:7,13
42:13 43:3 45:6
46:6 48:13 51:24
52:15 58:5 59:2
59:16 63:21 66:6
**felt** 21:13 23:11
**fiegen** 39:10
**figure** 41:25
**file** 5:7,8,14,18
7:24 17:23 21:5
21:19,23 23:12,13
24:15,15 60:11
**filed** 5:19 6:10,23
9:21 12:16 18:19
23:11 25:12,15
35:25 48:8 50:17
54:9,11 57:13

59:20 65:9
**files** 25:6
**filing** 8:2 9:24
12:11,12 18:16,17
18:19 19:7 22:2
22:23 44:24 50:20
52:7 58:8 59:18
**filled** 14:25 16:21
28:14 36:15
**final** 5:11 37:19
**finance** 9:17
**financial** 9:14
21:13,20 26:16
**financially** 38:9
**financing** 30:19
33:14 43:16,18
44:9
**find** 34:25 38:12
45:17 53:22
**finding** 43:20
**findings** 5:7,8,13
**firm** 32:12 39:11
**first** 4:18 48:5
57:14
**fisher** 1:22
**five** 48:4
**flat** 42:14,14,17,21
43:13 45:11
**floating** 7:5 60:14
**fokkena** 39:11
**followed** 59:1
**following** 9:6 13:1
**footnote** 38:11
42:16
**foregoing** 27:12
67:3
**form** 16:20 25:2
32:7 35:23 36:4,6
36:9,10,13,17 38:7
55:18

**formalized** 19:23
**forms** 17:23
**formula** 42:20
**found** 28:19 31:5
48:22 53:13 58:25
**fox** 46:9
**framework** 9:1
**frequency** 53:3
**fresh** 6:22 11:12
11:19 12:1,21
13:5 15:4 19:16
20:2,19 28:21
29:18,25 30:5,10
30:10,13,18,24
31:4 32:16,20,22
33:2,7,12 37:4
43:11,16,18 49:9
51:19,23
**friend** 15:5 20:18
22:4
**front** 10:21
**frye** 26:20
**full** 6:8 22:9 27:2
29:4
**fully** 9:19 35:23
**fundament** 53:10
**fundamental**
53:11
**funding** 6:22 12:2
12:21 13:5 15:4
20:19 28:22 29:18
30:5,10,10,25 31:4
32:16,21,22 33:2,8
33:12 37:4 43:10
43:11,16,19 49:9
51:23
**funding's** 11:13,20
20:2 30:1,13,18
51:19
**further** 6:2,18
10:4 12:22 13:21

14:21 15:2,19
16:5,24 19:19
20:14 21:3,24
22:17 25:14 30:7
30:16 32:4 35:3
35:18 36:4,20,22
37:6 38:15 44:17
49:8 50:8 52:17
54:5 55:8 56:23
57:16
**future** 57:18 62:6
62:9,10

**g**

**g** 4:1 26:2 32:7
39:10 46:21
**gage** 28:1
**games** 64:16
**gaps** 35:19
**garnish** 17:17
**garnished** 16:21
17:20
**garnishment**
16:15
**garrison** 3:8 4:11
4:12 62:24 63:1
65:14
**generally** 43:7
**give** 4:23 29:15
62:11
**given** 23:2
**gives** 29:15
**giving** 37:24
**go** 4:3,17 58:16,21
59:13 62:20,25
64:7
**going** 4:2 5:10
58:21
**gonzales** 27:18
**good** 4:2,8,10,12
38:19 65:7,12

**[gorski - kentucky]**

**gorski** 26:25
**governs** 39:6
40:19
**grace** 20:18
**granted** 10:9
**great** 46:11
**gross** 14:21
**grounds** 26:23
**guidelines** 25:13

**h**

**h** 26:17,17 40:2
46:21
**hand** 11:12 27:5
**hanig** 46:21
**happened** 61:16
**happening** 61:24
**happy** 64:14
**hardship** 59:14
**hazlett** 8:23 9:7
10:1,4,7,9 11:4,6
11:11 13:16 21:9
35:21 43:24
**healthy** 65:6
**hearing** 2:1 4:24
**held** 42:4
**helena** 26:17,17
**higher** 52:8 54:8
55:3
**highlighted** 36:14
**hire** 50:11
**hold** 23:13 53:20
**holding** 13:14
**hon** 1:22
**honor** 4:8,12
62:21 65:14
**hope** 65:6
**hopefully** 61:12
**hoping** 61:21,22
**host** 55:11
**hour** 46:12

**hourly** 41:23 42:6
46:12,18
**hours** 41:22 42:6
54:11
**hyde** 2:25 67:3,8

**i**

**idea** 57:8
**identifies** 52:11
**ii** 47:5
**illinois** 28:2
**illusory** 50:6
**immediate** 11:9
**immediately** 9:24
**impact** 51:18
**impermissible**
5:25 8:12
**implication** 56:20
**important** 34:4
60:18 61:19 64:24
**importantly** 53:12
**imposition** 27:25
**impressed** 63:8,16
63:25 64:1,21
**improper** 10:22
**inaccuracies** 27:6
28:3
**inaccurate** 24:10
31:11 34:7
**inaccurately**
29:22
**inadequate** 7:17
13:7
**inadvertent** 26:11
26:22 27:8,13,23
**inappropriate**
42:13
**include** 24:20,22
**included** 37:21
45:4 48:23 51:10
**including** 8:18
9:12,17 10:14

35:22 42:19 50:24
54:6 61:1
**income** 14:18,22
14:25 15:8,9
17:20 20:12 22:1
37:24
**inconsistencies**
57:16
**incorporated** 5:11
**incorrect** 49:24
**increased** 49:9,10
**incur** 18:1
**incurred** 38:8
**independent** 49:2
51:14
**indicates** 14:4
57:3
**indiscernible** 63:5
**indulged** 64:11
**information** 37:13
**informed** 55:1,9
**initial** 28:14 35:9
37:7
**inquiries** 27:14
36:23
**inquiry** 31:8 60:4
**installment** 9:17
52:14 60:5
**installments** 54:8
59:25
**instance** 25:14
**instances** 55:13
**instructed** 48:17
**insufficient** 38:6
**intelligent** 23:10
38:20
**intent** 33:17
**intentional** 31:20
34:13 35:1,13
37:14

**interest** 7:14 9:14
9:15 10:24 13:3
14:7,11 19:16,17
20:24 21:10 23:6
24:7 40:11,22
44:22 51:13
**interrupt** 4:21
**intimately** 46:13
**involve** 13:10
**involved** 11:6
**involvement** 51:19
**involves** 11:13
30:14
**ire** 34:19
**issue** 6:1,4,14 24:4
28:13 35:8 54:21
55:8 61:11 62:16
64:3
**issues** 6:15,24
19:14 55:11 58:15
60:19,20,23 61:25

**j**

**j** 1:22 41:4 46:15
**jane** 1:7 4:3
**jastrem** 41:4
**jeffrey** 46:17
**jensen** 26:13
**johnston** 41:25
**judge** 1:23 63:3
65:13
**judgement** 18:25
**junction** 19:25
**justice** 3:10

**k**

**k** 39:11,11,24 40:1
40:25 41:15
**karsch** 26:2
**keep** 17:11 50:10
**kentucky** 8:15

**kind** 7:6 22:20
59:13 60:14
**knew** 21:17 32:1
44:18
**know** 5:1,4 46:25
58:6 60:12
**knowledge** 18:17
46:20
**knows** 29:3
**kreuziger** 3:15 4:6
4:8 62:19,21
65:13
**kula** 41:15,15
42:16

**l**

**l** 26:17 27:10
40:25 41:16,18,18
41:19
**labarge** 26:2
**labor** 43:14
**lack** 6:7
**lamie** 39:14
**language** 49:19,22
**large** 25:18 59:9
**largely** 50:6
**larger** 59:5
**latitude** 46:11
**law** 3:3 8:17 16:1
39:10 41:3
**lawsuit** 59:11
**lawyer** 9:23
**lawyers** 9:14
**layman** 61:13
**lead** 24:10 35:20
**lease** 53:15 55:20
**leaves** 27:2
**leaving** 43:12
54:20
**ledanski** 2:25 67:3
67:8

**lee** 46:21,22
**left** 35:9
**legal** 9:16 22:14
23:4,7 28:24 35:5
39:22 48:24 49:2
67:9
**legalese** 48:21,23
**legally** 55:10
**legislative** 61:24
**lender** 29:13,14,16
33:16,18 43:16
**length** 48:18 49:10
**lengthy** 49:10
53:24
**lessen** 21:19
**letter** 33:16
**level** 34:16 60:2
**liable** 31:3
**life** 55:11
**limited** 14:14
**line** 4:6,11,15
11:14 12:1,3
16:11,11 17:1,1
18:22,22 19:10,10
20:8,9 30:1,14,22
30:25 31:6 33:2,9
33:15,18,23,23
39:11 49:25 50:1
66:4
**lines** 17:21 18:20
19:11 20:8,8
33:22 35:7 62:17
**list** 5:14,18 10:15
45:21 52:23
**listed** 15:24
**little** 17:3,4,14
**live** 64:22,23
**living** 15:5
**llc** 27:20 46:9
**load** 53:15

**loan** 16:6 21:18
33:7 53:15 55:20
55:20
**loans** 59:11
**local** 6:7 9:25
24:25 25:2,14
32:6,7 36:4,4,6,8
36:10,13,17 46:13
**lodestar** 40:14
41:14,21 42:4,12
42:19,24 43:2,4
45:12
**look** 54:20 59:24
**luker** 39:24 40:7

**m**

**m** 27:19 40:2 41:4
**mahendra** 40:2
**maintain** 11:2
**maintains** 15:2
17:2 18:8 19:19
20:23 30:7 32:19
33:20 51:22
**majority** 16:5
20:14
**making** 17:11
**manage** 29:14
**management**
30:19 31:7 33:19
**manager** 29:19
**mandate** 56:9
**mandated** 55:16
**manner** 61:13
**markets** 46:20
**mary** 1:7 4:3
**material** 47:16,22
52:2 57:5,18
**matter** 1:5 4:3
64:24
**matters** 31:12,22
32:6 44:4 49:23

**maximum** 53:2
**mccrary** 27:19
**meaningful** 51:2
**means** 14:14
**mechanism** 38:4,5
**meet** 54:12
**meetings** 54:10
**meets** 39:2 47:9
52:5
**members** 32:12
**mendes** 27:18
**mention** 62:15
**mentioned** 63:7
**merely** 19:23 28:5
**met** 62:4,7
**method** 40:15
41:14,21 42:5,12
42:25 43:2,4
**methods** 9:13
**michael** 46:15
**milner** 8:19 10:2
11:21,22,25 12:2,4
12:6,9,12,14,18,19
12:23 13:13,15,17
13:22 14:2,5,14
20:24 21:4 28:8
28:13,18,18 29:8
32:9 34:19 35:15
35:17 37:15,23
38:13,25 43:20
48:17,18,21,22
51:8 54:15,19,21
59:2,4
**milner's** 12:25
**mineola** 67:12
**minimally** 19:13
**minimized** 63:21
65:2
**minimizing** 64:23
**minimum** 16:16
19:14

[minnesota - paid]                                                                   Page 12

**minnesota** 1:2
16:3,17,20 27:12
**minor** 57:16
**minute** 38:23
**minutes** 50:22
**miscite** 5:15
**misleading** 28:19
**mistake** 31:19
34:12,15 35:12
**mistakes** 37:13
**mn** 1:14 3:13
**model** 11:20
**money** 10:18 30:5
44:14
**month** 14:19 20:4
20:21 58:7 59:22
**monthly** 15:9,11
21:25 22:6 34:8
**moral** 44:25
**morning** 4:2,9,10
4:13
**mortgage** 41:25
55:21
**motion** 4:4 32:1,2
40:21,21 62:10
**move** 22:5
**multiplication**
45:13
**multiplies** 41:22
**multiplying** 42:5
**mute** 4:18

**n**

**n** 3:1,12 4:1 26:17
27:10 39:10,11
40:2,2 41:18,19
46:21 66:1 67:1
**name** 5:17
**narrow** 54:13 56:7
**nationally** 22:15
**nature** 41:9 61:24

**nearly** 15:8 54:16
**neben** 26:15
**necessarily** 42:23
**necessary** 9:18
41:24
**necessitate** 27:8
**necessitates** 35:1
**necessitating**
34:16
**need** 5:1 17:23
54:23
**needed** 15:10
20:20 63:23
**negative** 14:25
**negligent** 26:11
**negotiating** 18:12
**neither** 51:22
**never** 45:25
**nevertheless** 16:8
30:12 31:18 33:1
37:16
**new** 20:15 27:1,17
50:6 64:3
**nine** 50:22
**non** 10:25 18:1
27:22
**normal** 42:19
43:13 46:7
**normally** 45:21
**north** 1:13 3:5
**northern** 8:22
28:2
**note** 30:16 38:10
42:10 54:15,22
58:24 59:19 62:2
**noted** 48:18
**notes** 15:24 20:1
31:14
**notice** 29:16 31:16
56:13 57:1,17,22

**notion** 50:3
**novelly** 41:18
**number** 8:23 9:5
11:16,23 13:20,23
14:3,5,12,12,15,15
14:20 15:1,6,21,22
17:6,12,17 18:3,13
19:1,18,25 20:13
21:6 28:12 29:1,4
29:10,23,24 30:6,6
30:11,15 31:13,13
31:16 32:12,17,24
34:9,11,11,23
35:10,16 36:1,10
36:17 37:5,9
40:17,18 42:6
47:25,25 48:17
49:6,12,16,20 50:7
50:12,17 51:3,7,15
51:20,24 56:14,21
57:2,6 59:9,9
60:19,20
**numerous** 22:14
**ny** 67:12

**o**

**o** 1:21 4:1 39:11
40:1,25 41:18
67:1
**object** 63:14 64:17
**objected** 63:14
**obligated** 35:4
**obligation** 6:11
15:12 18:1 23:22
23:24 29:13 44:25
**obtaining** 50:5
**occur** 65:4
**occurred** 44:5
59:7 65:3
**october** 67:15
**offered** 9:12 19:5

**oil** 41:19
**okay** 4:16
**oklahoma** 8:20,22
11:19
**old** 14:17 67:10
**once** 6:8
**operative** 55:12
**opinion** 7:4 63:22
**opportunity** 25:23
**opposed** 11:14
**option** 10:19 23:2
**options** 19:1 52:18
53:3 54:7
**oral** 60:22 64:1
**order** 5:10,12 8:9
18:2 24:2 38:2
39:19 52:13 61:11
**ordered** 12:20
**ordering** 37:19
**orders** 65:8
**original** 37:8
**outcome** 37:25
**overreaching**
25:23

**p**

**p** 3:1,1 4:1 39:24
40:25 41:2,2,19
**p.a.** 41:18
**page** 10:8,11 15:16
16:10 17:1 20:5
33:22 35:22 38:1
38:10 49:3 66:4
**pages** 10:2 16:11
36:9 39:12
**paid** 7:25,25 10:20
12:10 23:9 24:16
24:17 25:9,9
29:16 30:8,11
33:11 37:21 44:17
47:2 51:24 54:3
58:7,10

**[pain - proper]**                                                             Page 13

pain  65:3
palans  41:19
panel  25:5 42:11
paperwork  23:17
  43:15
paragraph  16:3
  20:16 36:13 52:7
  52:11,17,24 53:4,6
paragraphs  36:12
paralegally  55:17
parallels  53:7
park  26:17
parklex  27:15
part  4:20 24:1
  25:18 28:25
particular  9:8
  60:16
particularly  44:14
particulars  24:23
parties  5:4 6:4
  40:14 58:20 60:19
  60:22
party  40:22
passage  52:2
patience  64:10
paul  1:14 3:13
pay  6:12 12:17
  18:2,18 20:3,19,20
  28:17,24 31:3
  33:6 35:4 43:17
  44:13,23,25 54:8
  55:3 58:12 59:18
  59:22,25 60:5
  61:9
paying  10:19
  17:10 29:18,19
payment  6:7 8:1
  8:10 9:13 15:15
  22:6 30:19 31:2
  32:23 34:10 37:19
  39:19 44:14 48:14

53:1,2,3 54:4 57:4
payments  9:18
  13:5 15:4 17:11
  20:3,11 22:9
  25:20 30:17 32:24
  34:8,9,9,15 37:20
  38:4 52:7,14
  56:19,21
pays  30:9 32:16
  43:25
pelofsky  40:24,25
pending  6:20
people  64:14
percent  10:20
  11:10 13:9 15:8
  32:23 51:23 60:1
percentage  30:21
perform  45:25
performed  38:24
  45:3,9,14
performing  6:4
performs  45:22
permits  40:20
permitted  42:18
person  32:11
  47:15,20,20 48:7,9
  48:12 54:10
personal  6:19
person's  48:7
peterson  40:24
  42:3
petition  5:6 6:7
  7:11,11 8:2 9:21
  10:5,7,23 11:1
  12:8,8,12,15,17,20
  12:20 13:11,11
  19:23,24 23:22
  30:23 35:25 37:22
  38:8 44:17,24
  45:1,5,7,23,23
  46:2 48:8,19,19,25

49:1 50:6,12,17,20
  50:21 51:1,10
  52:6,12,14,20,21
  52:24 53:1,6
  58:19 59:22
phones  4:18
play  64:16
please  4:18,21
pleasure  63:3,12
pledged  30:17
pledges  30:24
pllc  3:3 27:19
plus  59:15,18
point  4:19 57:21
  59:10 61:7
points  14:16 31:10
  34:6 50:14 56:17
polite  63:13
positive  59:6
possibility  27:3
possible  53:19
post  5:6 6:7 7:11
  10:5,7,23 11:1
  12:8,15,17,20
  13:11 19:23 23:22
  30:23 38:8 44:17
  45:1,22 48:19,25
  50:6,12,19,25
  51:10 52:14,20,21
  52:24 53:6 59:22
potential  44:4
  49:19 51:13,15
potentially  62:8
poverty  60:1
power  26:1
practical  17:5
practice  34:19
  63:17
pre  6:12 7:11 12:8
  12:19 13:11 19:23
  37:21 44:24 45:5

45:7,22,23 46:2
  48:19,25 52:6,12
  53:1 54:3 58:18
precedent  42:23
predicates  54:16
prepay  52:9 54:7
presented  54:2
presume  55:17
prevailing  46:20
previous  31:25
  32:3
previously  17:22
  33:1 37:10 40:10
prime  9:7
principal  7:3
  60:12
prior  12:11 21:15
  21:24 22:23 48:7
  50:16 58:21
privilege  63:4
pro  9:22 18:15
  19:4,6,8,9 22:12
  22:13,17,19,21,22
  22:24 23:14
problem  62:9
procedural  62:16
procedure  36:21
proceed  9:22
proceedings  65:15
  67:4
process  23:11
produce  44:21
produced  15:17
professional  63:24
pronouncement
  7:6 60:14
pronouncements
  61:23
proof  23:16
proper  31:8

| | | | |
|---|---|---|---|
| properly 18:25 | **r** | received 30:4 33:7 | reiterated 52:23 |
| propriety 8:18 9:8 | r 1:21 3:1 4:1 26:2 | receives 33:10 | rejudgement |
| protections 25:22 | 26:20 27:19,19 | 44:16 | 10:10 |
| protego 3:3 | 40:2 41:4 67:1 | receiving 28:20,21 | related 43:15 |
| prove 59:13 | raise 62:18,20,25 | 28:22 29:3 | relationship 11:3 |
| provide 9:1 25:22 | raised 6:15 | recharacterize | relatively 44:3 |
| 37:2 48:12 52:12 | rarely 63:13 | 34:3 | relevant 29:10 |
| provided 52:20 | rate 41:23 42:6 | recharacterized | 41:11 |
| 53:13 54:1 | 43:22 44:22 45:11 | 33:25 | relied 18:24 |
| provider 19:8 | 45:16 46:12 | recognize 25:5 | relief 17:5 47:10 |
| providers 19:6 | rates 46:19 58:16 | recognized 42:11 | 47:15 48:2 |
| 22:13 | reach 14:1 | recognizes 29:6 | relies 51:8 |
| provides 7:20 33:2 | read 5:8,10 49:18 | 30:13 | relieved 18:7 |
| 39:16 47:14 48:5 | 50:25 61:14 63:11 | recognizing 27:22 | 59:17 |
| 49:11 | 63:12 | 43:25 | reluctant 46:23 |
| provision 25:18 | reading 4:20 | recommendation | rely 44:24 46:19 |
| provisions 51:11 | 60:11 64:13 | 49:1 | 54:23 |
| 53:21 | really 6:12 19:22 | recommended | remain 65:6 |
| purported 49:22 | 58:18,19,20 | 19:4 | remainder 65:7 |
| 49:23 | reason 15:3 51:6 | record 4:3,6 5:11 | remains 15:20 |
| purportedly 18:1 | 60:12 | 17:3 36:23 62:14 | removed 55:1 |
| purposeful 28:4 | reasonable 8:8 | 62:20,25 63:15 | rendered 8:3,3 |
| pursuant 25:12 | 9:18 36:24 39:17 | 67:4 | 24:17,18 25:10,10 |
| purview 28:6 | 39:23 40:16 41:23 | recourse 33:2 | 47:3 |
| pushed 23:8 | 42:5,6,9,13 45:16 | recovery 33:13 | rent 15:6,7,9,11,14 |
| put 4:18 60:10 | 45:18 46:5,12,18 | redding 25:3,24 | 17:10 20:21 22:3 |
| 62:14 | 56:8 59:17 | 26:9 39:8 40:9 | 22:6 |
| putting 19:16 | reasonableness | reduce 15:10 | renting 15:14 |
| 63:20 | 9:2 41:7,12 50:4 | reduced 5:22 7:1 | repay 33:9 |
| | reasonably 37:3 | 58:5 66:6 | repayment 33:3,5 |
| **q** | 46:12 | reevaluated 22:16 | repeat 34:18 |
| qualifications 19:5 | reasoning 38:2 | refer 22:13 | reporting 30:20 |
| qualify 22:19 | reasons 5:22 7:4 | referenced 43:2 | represent 9:11 |
| question 56:19 | 14:2 | reflects 25:19 | 31:12,21 32:5 |
| questionable | receipt 11:9 | refund 40:13 | 42:7 |
| 15:21 18:3 32:21 | receivable 29:15 | regarding 6:14 | representation 6:8 |
| quickly 5:16,16 | 29:20 30:23 31:7 | 9:25 29:8 43:3 | 29:9 30:9 48:24 |
| quite 38:20 60:17 | 33:19 34:1,2 | 49:19 | 49:24 |
| 62:2 | receivables 33:5 | regardless 15:11 | representations |
| quote 9:10 26:11 | receive 55:16 | 33:10 | 43:8 56:25 |
| quoting 26:15 | 58:11 | | |
| 27:18 46:15,21 | | | |

**represented** 32:1
32:9 57:23
**representing** 7:21
11:4 39:7 50:10
**represents** 57:5
**requested** 23:7
40:23
**require** 6:8 22:22
42:24 61:17
**required** 12:16
21:5 22:12 23:17
31:22 32:5 34:3
34:24 40:13 42:7
43:14,17 44:19
51:11 56:20 58:12
58:13 61:9
**requirement** 39:2
52:3
**requirements** 26:7
27:23 47:17,22
52:5 54:13 56:6,6
57:6
**requires** 21:9
24:14,19 25:7,15
39:21
**respect** 48:25
**response** 27:14
**responsibilities**
31:16 57:1,17,22
**responsibility**
56:13
**rest** 44:25
**result** 14:1 25:21
35:20 38:24 43:10
58:4 59:6,18 62:1
**resulted** 38:7
**results** 21:9
**retain** 9:23 51:23
**retainer** 10:20
14:8 24:8 37:16
38:17 50:16 54:12

56:11,18,24 58:1
**retaining** 32:23
**retired** 14:17
**return** 8:9 39:19
**revealed** 9:20 36:3
**review** 36:18 49:3
50:22
**reviewed** 37:8
**reviewing** 50:4
**right** 11:8,15
51:13,15
**rights** 57:17,22
**rise** 34:16
**risk** 44:12
**risky** 44:14
**road** 3:5 67:10
**robert** 1:13 3:12
**roughly** 16:8 34:9
**rouse** 25:3 39:8
**rubric** 35:21
**rule** 9:25 13:7
24:19,25 25:13,14
26:7 28:4,11 32:6
36:4,21 56:17
59:23
**ruled** 58:24
**rules** 4:17 6:8
25:15 39:3
**rulings** 66:3
**run** 56:12
**russell** 3:4 4:11
5:21 6:9,12 7:12
11:14 14:4,25
15:12 16:25 17:4
17:8,14,19,25 18:9
18:14,21 19:7,9,13
19:15,20 20:1,4,7
20:25 22:20 23:3
23:8,19,21 24:2
28:25 29:3,7,9,12
29:22 30:4,8,11,15

30:18 31:3,6,21,24
32:5,9,17,20 33:6
33:7,9,14,17,20,21
34:2,22,25 35:12
36:9,16,22 37:8
40:12 42:21 43:5
43:7,10,12,15,18
44:11,20,22 45:2,8
45:20 46:4 47:4,9
49:18,21,25 50:3,9
50:17 52:10,12,15
52:21,25 53:4,8,12
53:23 54:5 55:3
57:13 58:11 61:17
**russell's** 5:5 6:19
6:25 7:8,15 9:4
11:15 14:10 18:24
20:6 24:10 28:10
28:23 29:15,20
30:3 31:11 33:13
34:18 35:9,15
36:2,7 37:2,12
39:1,4 43:3 45:5,8
45:11 47:6 49:5
49:14 52:4,6
55:14 56:5,8,14,17
57:4 58:5 64:25
**ryan** 1:7 4:3 6:11
6:15 7:12 10:13
11:16 14:10,17
15:3,15,24 16:8,10
17:4,9,18,20,22
18:5,10,15,18,20
18:23 19:13,20
20:3,10,18,20,22
21:5,13,19,22,24
22:2,19 23:1,8,10
23:13 24:2 28:10
29:16,23 30:8
31:2,3,12,22 32:5
32:15,22 33:11,13

34:7,14,18 35:3,6
38:14 40:13 43:17
44:23 47:3,7 49:5
50:5,9,15,19 51:6
51:24 52:18 53:13
53:19,23 54:2,6,25
55:9,19 57:5,8,12
58:7,12 61:9,14,18
**ryan's** 7:13 11:23
13:23 14:11,14,21
14:24 15:20 16:2
16:5,14 17:16
20:14,24 29:13
30:16 31:25 44:2
44:13 45:4,10
50:15 53:9 56:20
64:23

**s**

**s** 3:1 4:1 40:1,25
41:4,19
**safe** 65:6
**sanction** 26:6
27:25
**sanctions** 27:9,12
**sand** 46:17
**satisfactory** 37:24
38:24
**satisfy** 13:15 56:5
56:9
**schedule** 14:24
57:5
**schroeder** 25:3
39:8
**scope** 49:16,24
56:25 57:4,21
**scottsdale** 3:5,6
**scrivener's** 28:6
**se** 5:25 8:12 9:22
61:2
**seasoned** 50:24

**second** 60:4
**section** 7:9,12,20
  13:12 16:7,17,20
  21:2 24:9,13,20
  25:7 26:7 36:24
  39:5,16,21 40:19
  41:5,7,8 42:9 46:6
  47:11,13,17,17,18
  47:21,23,24 48:2
  48:15 52:3 54:13
  55:18 56:6,9 58:2
  58:25
**sections** 47:7,12
**secured** 33:3
**securing** 30:21
**security** 14:19
  16:14 17:19 30:17
  44:16
**see** 5:17 8:13 10:2
  13:13 16:3,7,16,25
  20:15 26:20 27:10
  27:15 32:6 35:17
  36:9,15,20 37:18
  37:18 39:10 40:4
  41:3 42:3 43:20
  43:24 46:9 47:11
  50:15,19 52:24
  64:14,15
**seeing** 65:9
**seek** 18:15,16 49:2
**selected** 38:4
**semi** 64:22
**sense** 44:7
**separate** 50:3
  52:21
**september** 1:16
**serious** 18:10
  19:14
**service** 28:24
**services** 8:3,8 9:16
  9:23 10:5,7 12:17

22:17 24:17 25:10
  30:19 35:5 39:18
  39:23 41:10 42:22
  45:3,5,10,25 47:3
  48:6,11,14 49:16
  50:12 52:11,19,23
  54:1 56:25 57:4
  57:21
**servs** 39:12
**set** 13:15
**sets** 41:5
**settled** 26:4
**share** 24:21,24
  32:10
**shared** 24:21
**shares** 32:17
**sharing** 24:23
  32:20 33:21
**shifting** 10:22
**show** 14:8 23:23
  24:2 31:18 39:22
  58:1
**shows** 49:14
**signature** 67:7
**signed** 55:19
**significant** 16:12
  19:15,21 38:7
**signing** 11:7
**signs** 52:20
**similar** 12:5 13:22
  29:7
**simple** 44:3,8 47:1
  56:7
**simply** 35:9 60:25
  64:18
**single** 34:10
**sir** 63:6
**slay** 46:15
**slipped** 10:6
**smitty's** 26:14

**snyder** 40:1
**social** 14:19 16:14
  17:19 44:16
**sole** 38:3
**solely** 20:18 44:9
**solutions** 67:9
**sonya** 2:25 67:3,8
**sorry** 64:8
**source** 8:5 24:18
  25:16 29:22 30:1
  31:2
**southern** 27:1,16
**spanned** 54:9
**specific** 11:20 25:8
**specifically** 47:24
**speculate** 54:24
**split** 35:6 52:13
**splitting** 10:17
**st** 1:14 3:13
**standard** 20:7
  22:14 40:15 41:6
**standards** 13:15
**stanley** 41:3
**starrett** 26:16
**start** 4:16 5:4 6:22
  11:12,20 12:1,21
  13:5 15:4 20:2,19
  28:22 29:18 30:1
  30:5,10,10,13,18
  30:24 31:4 32:16
  32:21,22 33:2,8,12
  37:4 43:11,16,19
  49:9 51:19,23
**start's** 19:17
**started** 15:14
  37:20
**state** 16:1 47:19
**stated** 5:22 10:4
  15:13 18:11 28:15
  28:16 38:3

**statement** 7:24
  9:20 24:16,19,22
  24:25 25:8,12
  27:7 28:4 33:18
  36:5
**states** 1:1,12 3:10
  3:11 24:4,25
  26:13 28:23 36:4
  39:14 48:2 51:5
**stating** 26:22 56:2
**statute** 16:3,17,20
**statutory** 47:9
  54:13
**staying** 22:3
**stipulation** 16:2
  20:16
**stop** 23:18 26:14
**street** 1:13 3:12
**stress** 18:6,6 21:14
  21:20,22 22:11
  23:12,20 59:16
**stressful** 16:22
**strict** 11:15
**structures** 13:19
**student** 21:18
  53:15 55:20 59:11
**subd** 16:3
**subject** 6:13 47:12
**submit** 25:8 64:22
**substantially** 12:4
  25:1 36:6,8
**substitution** 9:25
**suffer** 49:5
**sufficient** 37:12
  62:5
**sufficiently** 36:3
**suggest** 37:7
**suite** 67:11
**summary** 61:12
**supplement** 36:23

supplemented
  62:8
support   14:16
  15:23 28:9 56:16
supported   57:10
suppose   4:17
sure   57:23
surreptitiously
  10:6

**t**

t   41:4 67:1,1
take   19:8 22:12,21
  22:24 23:14 29:13
  44:23 46:1,6,23
taken   19:9
takes   35:8
talk   4:23
talking   4:19 5:15
tangents   64:3
tasks   45:21
technical   27:24
telephonically   3:8
  3:15
tell   23:24 64:12
term   53:2
terms   12:3,5 48:14
  50:5 51:3 53:1
  54:3,6
testified   17:18
  19:7 20:20 21:22
  23:19 38:14 53:17
testify   18:5 54:20
testimony   53:9
  64:22,23
thank   62:21,23
  63:1,6 65:5,11,13
  65:14
thanks   65:1
that's   50:23
there's   57:20

thing   34:4 60:21
  64:9
things   59:24 60:24
  62:3,6 63:17,18
  64:4,5,19
think   63:16,18
  65:2
thought   62:12
three   54:10
time   6:5,17 15:9
  19:8 22:1,8,10
  45:14 51:1 55:3
  62:23 64:23,25
title   7:21,24 48:8
today   5:9,18,20,22
  24:3 61:3,12,15,21
  62:14 64:5 65:9
told   17:19 64:5
total   11:10 14:21
  30:22 32:23 58:9
  58:10
track   11:22
transcribed   2:25
transcript   15:16
  16:10,10 17:1
  18:20,21 19:10
  20:7,22 33:22
  35:7 49:25 67:4
transcripts   63:11
  64:13
treasury   26:13
trickling   65:10
truck   26:14
true   15:7 19:3
  56:4 59:9 67:4
trustee   3:11 4:7
  5:23 7:10 8:16,25
  9:6 10:12 11:21
  12:24 13:17,21,25
  14:9,13,16,23 15:2
  15:18,19,24 16:13

17:2,7,13,24 18:8
  18:23 19:4,12,19
  20:1,10,17,23 21:3
  21:7,11 22:25
  23:23 28:8 29:2,6
  29:21,25 30:2,7,12
  31:10,14 32:8,14
  32:19 34:6,17
  35:8,14,18 37:6
  40:21 47:5,22,24
  48:16 49:4,8,13,17
  50:2,8,14,23 51:5
  51:8,17,21 52:1
  53:12 54:16 56:11
  56:17,23 57:3,25
  58:16 59:20 61:4
  62:3,7
trustee's   14:7 24:6
  37:1 40:11
two   10:12 20:4
  35:6 54:10 63:8
  63:12,20 64:10,15
type   61:2 62:9,10
typical   45:12

**u**

u   27:10 41:15
u.s.   1:23 4:7 5:23
  7:10 8:16,25 9:6
  10:12 11:21 12:24
  13:17,21,25 14:7,9
  14:13,16,23 15:2
  15:17,19,23 16:13
  17:2,7,13,24 18:8
  18:23 19:4,12,19
  20:1,10,17,23 21:3
  21:7,11 22:25
  23:23 24:6 28:8
  29:2,21,25 30:2,7
  30:12 31:10,14
  32:8,14,19 34:6,17
  35:8,14,18 37:1,6

39:15 40:10 47:5
  47:22,23 48:16
  49:4,8,13,17 50:2
  50:8,14,23 51:5,8
  51:17,21 52:1
  53:12 54:16 56:11
  56:16,23 57:3,25
  61:4 62:3,6
u.s.c.   41:8
ultimately   60:23
understand   49:18
  50:9 55:10,17
  56:12 61:13,14,20
understanding
  38:19 51:2
understands   57:23
  61:15
understood   23:10
  31:21 34:14 35:3
  38:14 51:6,12
  53:10,17 54:25
  63:22,23
undue   59:14
unfit   38:9
unintentional
  24:13
unique   60:15 62:1
unit   39:15
united   1:1,12 3:10
  3:11 26:13 39:14
unknown   1:25
unlimited   22:18
unobtrusive   63:15
unpaid   31:4
unreasonable   39:5
unsophisticated
  38:10,16
upcharge   38:7
  43:21 44:1
usc   16:7,17 47:11
  47:21 48:14 55:17

**use**  10:18,25 48:20
**uses**  45:11
**usually**  42:21
**utah**  8:24
**utilizing**  21:8
  42:24

### v

**v**  25:3 26:2,13,16
  27:18 39:8,11,14
  39:24 40:1,7,24
  41:3,15,18,19,25
  46:9,15,16,21,21
**vacuum**  54:21
**value**  8:8 15:20
  18:3 30:21 39:17
  41:10
**various**  42:17
  51:12 60:21
**vast**  20:14
**vergos**  27:18
**veritext**  67:9
**vermont**  26:21
**violate**  47:7 53:20
**violated**  13:12
  58:25
**violations**  27:24
**virtual**  54:21
**virtually**  20:11
**vitiate**  26:12
**void**  47:18 58:2
**voided**  12:19
  37:15 38:21 58:24

### w

**w**  40:1
**wage**  16:16
**wages**  17:17
**waive**  51:14
**waived**  45:6,7
**waiver**  18:16
  59:21

**want**  7:5 60:9,13
  62:20,24 63:7
**wanted**  23:12 64:4
  64:8
**warrant**  24:11
  39:3
**waved**  45:24
**way**  54:18 60:12
  61:5 63:19 64:2
  64:16
**week**  65:7
**weeks**  54:10
**went**  21:19 64:2
**western**  8:19
  11:18
**westlaw**  8:23 10:1
  35:21 43:24
**whatsoever**  27:25
**william**  1:22
**willing**  44:22
**wishes**  4:15
**withdraw**  9:25
**witnesses**  64:19
**wjf**  1:3
**wondering**  60:10
**words**  51:21
**work**  38:24 45:7
  45:14
**worth**  45:9
**wright**  8:21 11:5
**write**  5:16
**writing**  60:10
**written**  7:4 34:1
  48:9
**wrong**  23:24

### x

**x**  1:4,10 41:2 66:1

### y

**y**  26:20 27:19
  40:25 41:18

**year**  8:1
**years**  14:17 20:4
**yield**  21:8
**york**  27:1,17

### z

**z**  39:24
**zepecki**  39:24,25
  40:7
**zero**  10:18