**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| In re: | ) | Case No. 20-03131-dd |
| | ) | Chapter 7 |
| Charles Pernell Prophet and | ) | |
| Shirley Ann Prophet, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 20-03171-dd |
| | ) | Chapter 7 |
| Steven Rosenchein, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 20-03293-dd |
| | ) | Chapter 7 |
| Christine Marie Naughton, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**JOINT STATEMENT**

The Acting United States Trustee for Region Four ("UST") and Benjamin R. Matthews and Benjamin R. Matthews & Assoc. (collective "Attorney") submit this joint statement regarding the UST's motion for review of attorney conduct filed on September 25, 2020 (the "Motion for Review").

**FACTS NOT IN DISPUTE**

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This Motion is filed pursuant to 11 U.S.C. §§ 105, 329, and 526, Rules 2016 and 2017, and Local Civil Rule 83.IX.01 DSC and the Court's inherent authority.

3. This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

1

5. The UST has standing to bring this Motion pursuant to 11 U.S.C. § 307.[1] and 28 U.S.C. § 586(a).

6. Attorney is a "debt relief agency" as defined in § 101(12A) that provided bankruptcy assistance to the debtors.

7. Beginning around April 2020, Attorney began to offer his clients the option to bifurcate his engagement in order to offer post-petition payment terms for some or all of his fees. In general terms, the bifurcated system offers the client the option to engage the Attorney in a traditional fashion and to prepay his fees (as well as the filing fee and other out-of-pocket costs), or to bifurcate, or split, the engagement into pre-petition and post-petition services using pre-filing and post-filing agreements, as more particularly described below.

**Pre-Filing Agreement and Pre-Filing Services**

8. The pre-filing agreement used by Attorney for offering a bifurcated chapter 7 engagement defines "The Work Involved in a Chapter 7 Case" in three sections: "Pre-Filing Services," "Post-Filing Services," and "Supplemental Post-Filing Services."

9. The pre-filing agreement also offers prospective clients two options for structuring the engagement: "Option #1—Pay Before You File," and "Option #2—File Now Pay Later."

10. If the client chooses the Pay Before You File option, both the Pre-Filing Services and the Post-Filing Services are provided for a flat fee, and the Supplemental Post-Filing Services are offered, if needed, for an additional hourly fee of $250 for Attorney's time, and $120 per hour for paralegal time.

---

[1] All further references to 11 U.S.C. § 101 *et seq.* will be by section number only.

11. If the client chooses the File Now Pay Later Option, the client only receives the Pre-Filing Services under the pre-filing agreement, but is informed that if they enter into a post-filing agreement after the case is filed, both the Post-Filing Services and the Supplemental Post-Filing Services will be included for a higher flat fee that will be paid over time. Attorney primarily offered two versions[2] of the File Now Pay Later Option: one where the client paid $500 before filing, which Attorney stated covered the filing fee and other out-of-pocket costs, leaving no money paid for attorney fees; and a second option involving $0 down, pursuant to which Attorney not only waived any fee for pre-petition work but also advanced the filing fee and other out-of-pocket costs.

12. Pre-Filing Services are identified in the pre-filing agreement as: meeting and consulting with the client as needed prior to the case; analyzing the information from the intake questionnaire and other documents providing due diligence, legal analysis and legal advice; and preparing and filing the petition, statement about social security numbers, filing pre-petition counseling certificates, and a list of creditors.

13. Post-Filing Services are identified in the pre-filing agreement as: preparing and filing the client's Statement of Financial Affairs and Schedules; preparing and filing the Means Test calculations and disclosures; conducting a second signing appointment to review and sign the Statements and Schedules; preparing for and attending the Section 341 Meeting of Creditors; administrating and monitoring the case and communicating with the client throughout the process; forwarding the Trustee Questionnaire and debtor documents to the Trustee; noticing the client's employer to stop any garnishments; reviewing and responding to Trustee requests;

---

[2] In the Prophet case, Attorney used the pre-filing and post-filing agreements, but allowed the Prophets to pay $1,200 prior to the bankruptcy filing and an additional $1,200 over 12 months after the case was filed.

reviewing and advising the client regarding any motions for stay relief; reviewing and advising the client regarding any reaffirmation agreements or redemptions; reviewing and advising the client regarding any creditor violations; and any legal service required by the local rules.

14. Supplemental Post-Filing Services are identified in the pre-filing agreement as: reviewing and revising on any turnover demands from the chapter 7 trustee; attending continued meeting of creditors; reviewing and advising regarding any 2004 exams and attending such exams; reviewing and advising regarding any audit by the UST; preparing and filing claims or objections to claims when appropriate; reviewing and advising on avoidance of liens impairing a debtor's exemption; drafting and/or negotiating a reaffirmation agreement and attending an related hearing; preparing and filing amendments to the debtor's schedule sand statements; and preparing and filing a motion to reinstate the case. If the Pay Before You File option is chosen, the Supplemental Post-Filing Services are charged at $250 per hour for attorney time and $120 per hour for paralegal time. If the client chooses the File Now Pay Later option, the Supplemental Post-Petition Services are included at no additional charge.

15. Under the pre-filing agreement, if a client chooses the Pay Before You File Option, the client is paying $2,350 upfront, which includes the filing fee. Part (4) under Option #1 states that if you cannot pay the $335 filing fee, you may request the court to allow you to pay it over time.

16. Under the pre-filing agreement, if the client chooses the File Now and Pay Later, they are told that it is more expensive and that the pre-filing services are not all of the tasks that must be completed to successfully complete the chapter 7 case. After the case is filed, the client may choose to proceed *pro se*, hire another attorney, or within 10 days after the case is filed enter into a post-filing agreement with Attorney. The client is told that if she does not choose to enter into

4

the post-filing agreement, then Attorney will seek to be relieved as counsel but will continue to provide services until the court allows Attorney to withdraw.

17. Part 3 of the pre-filing agreement provides information on Attorney's borrowing funds from Fresh Start Funding ("FSF") and FSF's collection and management of payments from the client. It also provides that the client understands that Attorney will share personal information regarding the client with FSF, and that FSF may pursue collection activities against the client if she does not make the required payments.

18. Part 3, paragraph E, of the pre-filing agreement, also provides that the client represents that although the schedules may reflect that the client cannot afford to make the post-petition payments, the client believes that she can make the payments. None of the Schedule Js filed in the bifurcated cases reflect the post-petition payments to be made to FSF.

19. Part 3, paragraph F, provides that FSF has underwriting guidelines regarding which of Attorney's clients qualify "for the FSF Program". If the clients do not meet the guidelines, Attorney reserves the right to not offer the file now pay later option. Thus, clients responding to the advertisement of chapter 7 cases for no money down may find themselves being ineligible for this arrangement. The advertising used on Attorney's website states that "most people should qualify for this program".

20. Part 4 of the pre-filing agreement discusses conflicts of interest. It provides that Attorney cannot represent the client in deciding whether to enter into the agreement, that there is a conflict in Attorney trying to help the client obtain a fresh start while having the client incur a non-dischargeable debt for Attorney's services, that Attorney is borrowing funds for the debt being incurred by the client, that Attorney expects the client to pay FSF to pay off the debt, that Attorney is sharing information about the client with FSF, that if the client opposes Attorney

5

withdrawing due to the clients' failure to sign the post-filing agreement, it creates a conflict, and that if collection actions are initiated due to the client's failure to make the required payments, it would create a non-waivable conflict.

21. Part 6 of the pre-filing agreement states that the bifurcated system is not intended to unbundle services, but instead "to facilitate you making payments over time for your attorney fee."

22. Part 6 also provides that "after further analysis and review of your financial situation, the Law Firm may determine that you do not qualify for a Chapter 7 or that a Chapter 13 bankruptcy will be more appropriate."

**Post-Filing Agreement**

23. The post-filing agreement has much of the same language as the pre-filing agreement. In Part 6, paragraph H, it includes a three-day right of recission. In paragraph J, the clients, in part, authorize FSF to collect payments and re-attempt to process a payment multiple times and on different dates until a payment clears, and can charge the clients $25 for each returned payment, which can be separately debited from the clients' account.

24. The post-filing agreement includes the client's bank account/debit card number, address, email, cell phone, date of birth, and social security number, all of which the client agrees to be provided to FSF.

**Agreement Between Attorney and FSF**

25. Attorney and FSF have a Line of Credit and Accounts Receivable Management Agreement between them dated March 30, 2020 (the "FSF Agreement").

26. The FSF Agreement provides in part that FSF will collect payments on behalf of Attorney and will apply them to the amount owed by Attorney under the line of credit. FSF advances 75% of the post-petition fees associated with the approved accounts. Of which, 60% is advanced to Attorney and the remaining 15% is deposited into a holdback account from which FSF can offset for any delinquent payments or breach of obligations. Beginning in March 2020, the initial advance was increased to 65% and the holdback reduced to 10%. The holdback amount is pooled between and among Attorney's contracts upon which advances are taken and serves as a hedge against delinquencies and defaults by debtors making payments. FSF sets a cap on the total holdback balance based on Attorney's volume of business, and on a monthly basis, FSF distributes any excess balance to Attorney.

27. The FSF Agreement provides that the client has consented in writing to the Firm's disclosure of information about the client to FSF, such information may include the client's name, social security number, address, email and phone number, together with a copy of the post-petition contract, bank statements, pay stubs, and payment authorization agreement.

**Naughton Case**

28. Christine Naughton ("Naughton") chose $0 down and to file now and pay later.

29. Naughton took her credit counseling course on June 26, 2020.

30. Naughton's pre-filing agreement is dated July 29, 2020 beside her signature. The DocuSign log shows she signed it on July 30, 2020, 9 minutes and 37 seconds after she viewed the document.

31. Naughton also signed a post-filing agreement with the heading "Disclaimer: You must read, understand, and agree to the Post-Filing Agreement stated below before your Pre-Filing Agreement will be considered legally binding." (the "First Post-Filing Document").

32. The First Post-Filing Document signed by Naughton shows the date beside her signature as July 27, 2020, and the DocuSign log shows that she signed it on July 27, 2020, one minute and 8 seconds after viewing it.

33. Naughton's post-filing agreement is dated August 20, 2020. The DocuSign log shows that she signed it on August 20, 2020 at 3:57 pm.

34. A log of receipt dates of documents provided by Naughton to Attorney show all documents were received prior to Naughton's bankruptcy case being filed.

35. Naughton filed for relief pursuant to chapter 7 of the United States Bankruptcy Code on August 20, 2020 at 10:02 am. Counsel of record for Naughton is Attorney. Attorney, on behalf of the Naughton, filed her petition, statement of social security number, certificates of credit counseling, and list of creditors. The filing fee was paid at the time the petition was filed.

36. Naughton is an "assisted person" as defined by § 101(3) because she has primarily consumer debts and the value of her non-exempt property is less than $204,425.

37. On August 20, 2020, copies of Naughton's pay advices were filed.

38. On September 2, 2020, Attorney filed on behalf of Naughton her bankruptcy schedules, statement of financial affairs, statement of intent, and chapter 7 statement of current monthly income. Attorney also filed his disclosure of compensation (the "Naughton Fee Disclosure").

39. T he Naughton Fee Disclosure reflected that the debtors agreed to pay $2,800 for legal services, of which $0 had been received prior to filing and $2,800 remained due. The source of the compensation paid to Attorney was shown as "?" before debtor and a "?" before Other. The Fee Disclosure also has a "?" in the box before "other" in response to the source of

8

compensation to be paid to me. The Fee Disclosure also has a "?" before: "I have agreed to share the above-disclosed compensation with [an]other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached." No agreement was attached to the Naughton Fee Disclosure.

40. In section 7 of the Fee Disclosure, it states that the filing fee is included in the fee described above.

41. In section 8 of the Fee Disclosure, it describes that the debtor was offered two options for payment of the fees: (1) pre-pay the full amount prior to the chapter 7 bankruptcy petition being filed; or (2) bifurcate the attorney services into pre- and post-petition work to allow the debtor to file "right away" and making post-petition fees for the post-petition work. The Fee Disclosures provides that "Counsel charges a higher fee for the second option."

42. The reasons given in the Fee Disclosure for the higher fee are:

    a. Counsel performs additional work to split the engagement;

    b. Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front;

    c. The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;

    d. The option gives the debtor an opportunity to begin rebuilding their credit score by making timely payments toward the attorney fee;

    e. Counsel will not charge the debtor additional fees for certain services that if required would otherwise cost the debtor(s) more if debtor(s) had paid the entire fee before the case was filed; and

    f. FSF (described below) charges a fee to Counsel for its financing, payment management, credit reporting and other services provided to Counsel, for which FSF charges a fee equal to 25% of the attorney fee that the Law Firm charges debtor(s) for the post-petition services.

9

43. In Part 9a of the Naughton Fee Disclosure, it states that "any fees earned but not paid for the pre-petition work were waived by counsel."

44. In regards to the debtor benefitting from the rebuilding of her credit score by making timely payments toward the attorney fees, the post-petition filing agreement (discussed above) provides in paragraph 3D, that FSF can report negatively on the debtor's credit if the debtor fails to make the agreed payments.

45. On October 2, 2020, Attorney filed an amended fee disclosure showing that the source of compensation paid was not applicable, the source of compensation to be paid is Naughton, and that he has not agreed to share the compensation with anyone.

**Prophet Case**

46. Charles and Shirley Prophet (the "Prophets") chose to pay $1,200 down and to pay an additional $1,200 after their case was filed.

47. The Prophets took their credit counseling course on July 26, 2020.

48. The Prophet's pre-filing agreement is dated July 7, 2020 underneath their signatures.

49. The Prophet's post-filing agreement is dated August 3, 2020.

50. Some e-mails from Attorney's staff to debtors show some documents were not received until after the bankruptcy case was filed. It is not clear from the documents provided what, if any, documents were received pre-petition.

51. The Prophets filed for relief pursuant to chapter 7 of the United States Bankruptcy Code on August 3, 2020. Counsel of record for the Prophets is Attorney. Attorney, on behalf of the Prophets, filed their petition, statement of social security number, certificates of credit counseling, and list of creditors. The filing fee was paid at the time the petition was filed.

52. The Prophets are "assisted persons" as defined by § 101(3) because they have primarily consumer debts and the value of their non-exempt property is less than $204,425.

53. On August 7, 2020, copies of the debtors' pay advices were filed.

54. On August 14, 2020, Attorney filed on behalf of the debtors their bankruptcy schedules, statement of financial affairs, statement of intent, and chapter 7 statement of current monthly income. Attorney also filed his disclosure of compensation (the "Prophets Fee Disclosure").

55. The Prophets Fee Disclosure reflected that the debtors agreed to pay $2,400 for legal services, of which $1,200 had been received prior to filing and $1,200 remained due. The source of the compensation paid to Attorney was shown as "X" before debtor and a "?" before Other. The Fee Disclosure also has a "?" in the box before "other" in response to the source of compensation to be paid to me. The Fee Disclosure also has a "?" before: "I have agreed to share the above-disclosed compensation with [an]other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached." No agreement was attached.

56. Paragraphs 40 -44 are also applicable to the Prophets' case and are incorporated herein by reference.

57. On October 2, 2020, Attorney filed an amended fee disclosure showing that the source of compensation paid was from the Prophets, the source of compensation to be paid is the Prophets, and that he has not agreed to share the compensation with anyone.

**Rosenchein Case**

58. Steven Rosenchein ("Rosenchein") chose to pay $500 down and to pay the remaining amount due after the bankruptcy case was filed. Rosenchein paid the $500 on July 10, 2020.

59. Rosenchein took his credit counseling course on August 3, 2020.

60. Rosenchein's pre-filing agreement is dated July 8, 2020 beside his signature. The docu sign log shows he signed it on July 8, 2020, 1 hour and 9 minutes after he viewed the document. The pre-filing agreement showed that Rosenchein would pay $500 for the pre-filing services and the overall fees would be $2,560.

61. Rosenchein's post-filing agreement is dated August 7, 2020. The docu sign log shows he signed it on August 7, 2020, one minute and 21 seconds after he viewed the document. The post-filing agreement has the debtor paying $2,060 over 12 months, making his total fee for the bifurcated system to be $2,560, including the filing fee and other costs.

62. A log of receipt dates of documents provided by Rosenchein to Attorney show almost all documents were received prior to Rosenchein's bankruptcy case being filed with the exception of some pay advices, Wells Fargo documents, and a lease.

63. Rosenchein filed for relief pursuant to chapter 7 of the United States Bankruptcy Code on August 7, 2020. Counsel of record for Rosenchein is Attorney. Attorney, on behalf of Rosenchein, filed his petition, statement of social security number, certificates of credit counseling, and list of creditors. The filing fee was paid at the time the petition was filed.

64. Rosenchein is an "assisted person" as defined by § 101(3) because he has primarily consumer debts and the value of his non-exempt property is less than $204,425.

65. On August 11, 2020, copies of Rosenchein's pay advices were filed.

66. On August 19, 2020, Attorney filed on behalf of Rosenchein his bankruptcy schedules, statement of financial affairs, statement of intent, and chapter 7 statement of current monthly income. Attorney also filed his disclosure of compensation (the "Rosenchein Fee Disclosure").

67. The Rosenchein Fee Disclosure reflected that the debtor agreed to pay $2,800 for legal services, of which $500 had been received prior to filing and $2,300 remained due. The source of the compensation paid to Attorney was shown as "X" before debtor and a "?" before Other. The Fee Disclosure also has a "?" in the box before "other" in response to the source of compensation to be paid to me. The Fee Disclosure also has a "?" before: "I have agreed to share the above-disclosed compensation with [an]other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached." No agreement was attached.

68. Item 16 of SOFA shows that the debtor paid $165 for attorneys' fees and $14.95 for credit counseling.

69. Rosenchein's pre- and post-filing agreements show Rosenchein agreed to pay $2,560 rather than $2,800.

70. Paragraphs 40 -44 are also applicable to Rosenchein's case and are incorporated herein by reference.

71. On October 2, 2020, Attorney filed an amended fee disclosure showing that the source of compensation paid was from Rosenchein, the source of compensation to be paid is Rosenchein, and that he has not agreed to share the compensation with anyone.

72. On November 12, 2020, Attorney filed an amended statement of financial affairs to show in item 16 that the funds paid to Attorney were $165 for attorney services and $335 for the filing fee.

## **WITNESSES**

UST Witnesses:

The UST may cross examine any witnesses called by Attorney to include Attorney.

Attorney Witnesses:

Attorney intends to testify on his own behalf.

## **WITNESS TESTIMONY BY TRANSCRIPT**

UST Witnesses:

Christine Naughton: transcript excerpts—page 9, lines 7 – 25, page 10, lines 1 – 10, page 12, lines 18 - 25, page 13, lines 1 – 7, page 14, lines 21 – 24, page 15, lines 8 – 25, page 18, lines 11 – 25, page 19, lines 1-3, page 20, lines 12 – 25, page 21, lines 1 – 13, page 22, lines 24 -25, page 23, lines 1 – 25, page 25, lines 5 – 17, page 26, lines 19 – 25, page 29, lines 11 – 15, page 30, lines 1 – 10, page 31, lines 3 - 25, page 32, lines 1 – 11.

Charles and Shirley Prophet: transcript excerpts –page 9, lines 6 – 20, page 10, lines 7 – 16, page 14, lines 7 – 21, page 15, lines 17 – 25, page 16, lines 1 – 25, page 17, lines 1 – 3, page 19, lines 4 – 25, page 20, lines 1 – 8, page 21, lines 11 – 21, page 25, lines 4 – 6, page 26, lines 19 – 25, page 27, lines 1- 25, page 28, lines 1 – 15, page 31, lines 18 – 24, page 32, lines 20 – 25, page 33, lines 1 – 23, page 35, lines 19 – 25, page 36, lines 1 – 25, page 37, lines 1 – 13, page 42, lines 4 – 19, page 45, lines 17 – 25, page 49, lines 1 – 8.

Steven Rosenchein: transcript excerpts –page 10, lines 7 – 14, page 12, lines 3 – 6, page 13, lines 13 – 21, page 15, lines 6 – 18, page 20, lines 6 – 13, page 21, lines 8 – 24, page 26, lines 5 – 11, page 37, lines 1 – 4, page 37, lines 18 – 25, page 38, lines 1 – 11, page 43, lines 15 – 25, page 44, lines 1 -3, page 45, lines 19 -25, page 46, lines 1 – 17, page 53, lines 5 – 8.

Attorney Witnesses:

Attorney designates all of the transcripts for Christina Naughton, Charles and Shirley Prophet, and Steven Rosenchein.

# EXHIBITS

UST Exhibits:

1. FSF Agreement with Attorney;

2. Intentionally Left Blank

3. Naughton, Prophet, and Rosenchein Pre-Filing Agreements (3A, 3B, and 3C);

4. Naughton First Post-Filing Agreement;

5. Naughton, Prophet, and Rosenchein Post-Filing Agreements (5A, 5B, and 5C);

6. Naughton, Prophet, and Rosenchein Fee Disclosures and any amendments thereto (6A, 6B, and 6C);

7. Naughton, Prophet, and Rosenchein Dockets (7A, 7B, and 7C);

8. Naughton, Prophet, and Rosenchein Schedules and Statements and any amendments thereto (8A, 8B, and 8C);

9. Naughton, Prophet, and Rosenchein Logs of Receipt of Documents (9A, 9B, and 9C);

10. Naughton, Prophet, and Rosenchein Questionnaires (10A, 10B, and 10C);

11. Naughton and Rosenchein Scripts (11A and 11B);

12. Attorney advertising on web site;

13. Chart of Non-Bifurcated Cases of Attorney for the period of April through September 2020;

14. Fee Disclosure in Non-Bifurcated Case;

15. Transcript of Christine Naughton Deposition;

16. Transcript of Shirley and Charles Prophet Deposition;

17. Transcript of Steven Rosenchein Deposition.

Attorney Exhibits:

      A. Attorney's Lodestar Analysis of Fees

Except as specially stated herein, the parties have no objections to the submission of the exhibits listed above being submitted into evidence. Attorney reserves the right to object to the introduction of UST exhibits 12, 13, and 14 on grounds of relevance. The UST reserves his right to object to the introduction of Attorney exhibit A based on authentication.

Respectfully submitted:

JOHN P. FITZGERALD, III
Acting United States Trustee, Region 4

By: /s/ Linda K.. Barr
Linda K. Barr, Id. 6284
Trial Attorney
Office of the United States Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina 29201
(803) 765-5219
(803) 765-5260 (facsimile)
linda.k.barr@usdoj.gov

-------------------------------------------------------

By: /s/ Daniel E, Garrison
Daniel E. Garrison
Admitted *Pro Hac Vice*
Protego Law, PLLC
1805 N. Scottsdale Road, Suite 100
Tempe, Arizona 85281
(480) 504-6840

COUNSEL TO ATTORNEY

By: Benjamin R. Matthews
Benjamin R. Matthews, Id. 3332
Benjamin R. Matthews & Assoc.
2010 Gadsen Street
Columbia, SC 29201
(803) 799-1700

ATTORNEY AND LOCAL COUNSEL

December 8, 2020