## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Charles Pernell Prophet and<br>Shirley Ann Prophet,<br><br><br><br>Debtors. | Case No. 20-03131-dd<br><br>Chapter 7 |
| In re,<br><br>Steven Rosenschein,<br><br><br><br><br>Debtor. | Case No. 20-03171-dd<br><br>Chapter 7 |
| In re,<br><br>Christine Marie Naughton,<br><br><br><br><br>Debtor. | Case No. 20-03293-dd<br><br>Chapter 7 |

### ORDER ON MOTIONS FOR REVIEW OF ATTORNEY CONDUCT

These cases present an issue that chapter 7 debtors' attorneys and courts around the country are grappling with. It is sometimes difficult for debtors seeking to file chapter 7 cases to come up with sufficient funds to pay an attorney upfront to file their bankruptcy cases. As a result, some debtors may delay a bankruptcy filing until they can accumulate funds to pay an attorney. Other debtors simply seek to save money by filing a bankruptcy case pro se, which may or may not successfully end in a discharge and may result in the debtors not realizing all available relief under the bankruptcy code. Recognizing this issue, debtors' attorneys have attempted to come up with ways for debtors to be able to file more quickly. One such method, at issue here, is a bifurcated fee arrangement.

In or about April 2020, Benjamin R. Matthews, an attorney who regularly appears in this Court representing debtors, began offering potential chapter 7 debtors the option to enter into bifurcated fee agreements, pursuant to which the debtors had the option of paying a portion of or all of his attorney's fees post-petition.  According to Mr. Matthews, this arrangement is advantageous for debtors because it allows them to file more quickly, without having to wait until they have saved sufficient funds to prepay Mr. Matthews' entire fee.  Further, this option is advantageous for Mr. Matthews because it results in his firm obtaining additional clients.  In each of these three chapter 7 cases, Mr. Matthews used some version of the bifurcated fee arrangement.

The United States trustee ("UST") is challenging Mr. Matthews' use of the bifurcated fee arrangements for a number of reasons.  The UST asserts that this fee arrangement and Mr. Matthews' use of it in these cases violates this Court's Local Rule 9011-1 and 11 U.S.C. §§ 329(a), 526, and 528.  The UST requests that the Court cancel Mr. Matthews' fee agreements and require him to return all funds received under the agreements.  The question can be distilled as whether an attorney's representation of a debtor in a chapter 7 case in the District of South Carolina can be viewed from petition filing to case closing, as covering a broader timeframe, or as a series of matters.  As the Court explains below, under our Local Rule and precedent, the representation is expansive and, with limited exception, cannot be unbundled or bifurcated.

The Court held a hearing on the UST's motions for review of Mr. Matthews' conduct. Mr. Matthews testified, portions of debtor depositions were offered, and the Court received numerous documents into evidence.  After review of the bankruptcy code provisions and rules at issue and consideration of the parties' arguments, the Court agrees with the UST and, for the reasons set forth below, finds Mr. Matthews' bifurcated fee agreements impermissible in this

District and requires the return of all fees paid post-petition, less any filing fees or out of pocket

costs.

## BACKGROUND

Mr. Matthews testified he became aware of bifurcated fee arrangements in chapter 7

cases across the country in spring or summer of 2019, when he was exploring different

marketing options for his law firm.  He decided not to use them at that point in time.  In March

2020, Mr. Matthews determined that due to the decrease in case filings resulting from the

COVID-19 pandemic, in order to keep his law firm afloat and to avoid laying off staff, he needed

to do something and decided to begin offering clients the option of bifurcated fee arrangements.

He then entered into a contract with Fresh Start Funding ("Fresh Start"), pursuant to which Fresh

Start provided Mr. Matthews with financing to cover expenses associated with the bifurcation of

fees.  Fresh Start also assists Mr. Matthews with collection of his accounts receivable, collecting

fees due over time from debtors opting to use the bifurcated fee system while retaining a portion

of collections.[1]  Fresh Start extends a line of credit to Mr. Matthews, and he has indemnification

liability for shortfalls in collections.

Upon choosing Mr. Matthews to represent them, Mr. Matthews' clients may choose to

prepay all fees for a chapter 7 case or may split the engagement into pre- and post-petition

services, using pre- and post-filing agreements. If the client chooses the first option to prepay all

fees, the client enters into one agreement with Mr. Matthews, covering both pre-filing and post-

filing services for a fixed fee of $2,350 (including the filing fee) and providing for certain

---

[1] The Court notes that there are dangers inherent in a factoring or financing agreement of this nature.  The attorney's
agreement with the company providing financing may not be adequately disclosed to the debtor, or the debtor may
not understand the nature of the agreement.  *See In re Wright*, 591 B.R. 68 (Bankr. N.D. Okla. 2018).  Further, these
agreements may result in debtors in extremely difficult financial situations or with negative disposable income, as in
Ms. Naughton's case, being forced into an unwise or burdensome credit arrangement.  In many instances this may
not be in the debtor's best interest.

supplemental post-filing services charged at $300 per hour for attorney time and $150 per hour for paralegal time.  Mr. Matthews testified that he lowered the fee for this option from the $2,500 he charged before beginning to offer the bifurcation option.  Alternatively, a bifurcated fee option is offered and the client can either pay $500 pre-filing, to cover the filing fee and other out-of-pocket costs, or can pay $0 down.  As noted below, other partial payment alternatives apparently are accepted.  If the client chooses one of these bifurcated options, the client is responsible for making monthly payments to Fresh Start beginning shortly after the bankruptcy petition is filed.

If a client chooses a bifurcated fee arrangement, Mr. Matthews testified that he sends electronic copies of both the pre- and post-petition filing agreements to the debtor at the time he asks them to sign the pre-petition agreement, so that the client understands the terms of the entire representation before entering into the pre-petition agreement.  The copy of the post-petition agreement cannot actually be electronically signed by the client until after the bankruptcy petition is filed.  Mr. Matthews testified that since he started offering bifurcation agreements, the vast majority of his clients sign the post-petition agreement.  Whether the post-petition agreement is signed or not, Mr. Matthews agrees that representation will continue unless the Court authorizes a termination of the attorney-client relationship.

Mr. Matthews testified that Fresh Start provided him with forms for the pre- and post-filing agreements and he uses those forms, with minor modifications.  The pre-filing agreement states that the work necessary for a chapter 7 case is divided into three categories:

Pre-Filing Services

- Meeting and consulting with you as needed prior to filing your case;

- Analyzing the information from your intake questionnaire and other documents;

- Providing due diligence, legal analysis and legal advice in order to help you make important legal choices and to comply with the bankruptcy code and rules; and

- Preparing and filing your Chapter 7 Voluntary Petition, Statement about Social Security Numbers, Pre-Filing Credit Counseling Certificate and List of Creditors to start your Chapter 7 case.

Post-Filing Services

- Preparing and filing your Statement of Financial Affairs and Schedules;

- Preparing and filing your Means Test calculations and disclosures;

- Conducting a second signing appointment for you to review and sign your statements and schedules;

- Preparing for and attending your Section 341 Meeting of Creditors;

- Administrating and monitoring your case and communicating with you throughout the process;

- Forwarding the Trustee Questionnaire and debtor documents to the Trustee;

- Noticing your employer to stop any garnishments;

- Reviewing and responding to Trustee requests;

- Reviewing and advising you regarding any motions for stay relief;

- Reviewing and advising you regarding any reaffirmation agreements or redemptions;

- Reviewing and advising you regarding any creditor violations; and

- Any legal service required by the local rules.

Supplemental Post-Filing Services

- Reviewing and advising regarding any turnover demands from the Trustee;

- Attending any continued Section 341 Meeting of Creditors;

- Reviewing and advising regarding any 2004 exams and attending related exam;

- Reviewing and advising you regarding any audit by the US Trustee;

- Preparing and filing claims or objections to claims when appropriate;

- Reviewing and advising you regarding any lien avoidance matters;

- Drafting and/or negotiating a reaffirmation agreement and attending any related hearing;

- Preparing and filing any amendments to your statements and schedules; and

- Preparing and filing a motion to reinstate the case.

The pre-filing agreement also explains the debtor's options for "Pay Before You File" or "File Now Pay Later."  The pre-filing agreement states that if the debtor chooses the pre-pay option, both Pre-Filing and Post-Filing Services will be included, but any Supplemental Post-Filing Services will be charged at Mr. Matthews' hourly rates.  If the debtor chooses the "File Now Pay Later" option, the pre-filing agreement states that only the Pre-Filing Services will be provided unless an additional agreement is signed.  The pre-filing agreement states that if the debtor chooses to enter into the post-filing agreement, Mr. Matthews will provide the debtor with both the Post-Filing Services and the Supplemental Post-Filing Services.

The pre-filing agreement explains the debtor's options after her case is filed.  It states:

After your case is filed, you will have three choices:

- You can represent yourself in your bankruptcy case (called "proceeding *pro se*");
- You can hire another attorney to represent you in your bankruptcy case; or
- *Within ten (10) days after your case is filed*, you can enter into a Post-Filing Agreement with us.

6

> If you choose to represent yourself or to hire another attorney to represent you (either of which are completely up to you) you will not owe us anything additional. We will ask the bankruptcy court to allow us to withdraw as your lawyer in accordance with the bankruptcy rules, but we will continue to represent you in the case and perform all necessary services until and unless the bankruptcy court allows us to withdraw.

In the "Additional Important Terms" section of the pre-filing agreement, near the end of the document, is a paragraph that provides:

> Unbundling or Limited-Scope Representation.    By signing below, you acknowledge that the Law Firm has expressed that it is ready, willing and able to represent you for your entire chapter 7 case, even if you choose the *File Now Pay Later* option, which will require you to sign a Post-Filing Agreement.  If you choose the *File Now Pay Later* option, you further represent that you are not doing this with the intention of having the Law Firm simply file your case and then withdraw, but instead to facilitate you making payments over time for your attorney fee so that you can have an attorney represent you through the entire chapter 7 process.

The post-filing agreement contains a disclaimer at the very top of the agreement, which states, "You must read, understand, and agree to the Post-Filing Agreement stated below before your Pre-Filing Agreement will be considered legally binding."  Prior to a debtor's bankruptcy case being filed, he is required to sign a statement at the bottom of the post-filing agreement that states, "I, [Debtor], certify that I have read, understand, and agreed to review the Post-Filing Agreement, prior to signing the Pre-Filing Agreement for a File Now Pay Later Chapter 7."

Mr. Matthews testified that during the pre-petition consultation with a potential bankruptcy client, he utilizes a comprehensive questionnaire to find out about the debtor's income and expenses, assets, debts, liens, and other details of the debtor's financial situation. This consultation helps Mr. Matthews determine whether the client is an appropriate candidate for bankruptcy and if so, under what chapter.  Mr. Matthews also testified this consultation helps him determine whether the client is an appropriate candidate for bifurcation.  Mr. Matthews stated that he believes he has a legal duty to perform this due diligence; if he does not complete

7

this due diligence, he cannot adequately represent the debtor.  However, on cross-examination, the extent of Mr. Matthews' pre-petition due diligence was less clear. Mr. Matthews testified that even if a client provides all required documents prior to the filing of the bankruptcy petition, as Ms. Naughton did, he would not typically review all of the documents until post-petition, when the schedules were being prepared.

All three of the present chapter 7 cases were filed in August 2020.  Charles and Shirley Prophet signed their pre-filing agreement on July 7, 2020, filed their case on August 3, 2020, and signed their post-filing agreement the same day.  The Prophets paid a total of $2,400 for their case, with $1,200 paid prior to the bankruptcy filing and $1,200 to be paid post-petition. Christine Naughton signed her pre-filing agreement in late July 2020, filed her chapter 7 case on August 20, 2020, and signed her post-filing agreement the same day.  Mrs. Naughton paid $0 pre-petition and agreed to pay a total of $2,800 post-petition.  Steven Rosenchein signed his pre-filing agreement on July 8, 2020, filed his chapter 7 case on August 7, 2020 and signed his post-filing agreement the same day.  He paid $500 for pre-petition services and an additional $2,060 in fees post-petition.

## **ARGUMENTS OF THE PARTIES**

The UST argues that the pre-filing and post-filing agreements do not comply with SC LBR 9011-1(b) because Mr. Matthews is only agreeing to provide limited services and is not actually agreeing to represent the debtor for the duration of the case, unless the post-filing agreement is signed.  The UST asserts that the bifurcated representation is really a "sham" and that despite the fact that the debtors are signing two separate agreements, the representation is actually for both pre- and post-filing services and also for the supplemental services, though subject to an additional charge.  The UST also argues that the fees being charged are not

reasonable under § 329 and are excessive, in that the cases in which the debtors choose the file now, pay later option are charged more than other debtors Mr. Matthews represents.  The UST argues that the fee disclosure is incomplete and misleading because it does not adequately disclose the mark-up.  Finally, the UST argues that as a debt relief agency Mr. Matthews is in violation of the bankruptcy code's debt relief agency provisions (11 U.S.C. §§ 526 and 528).

Mr. Matthews argues that his bifurcated agreements do not violate SC LBR 9011-1 because the purpose of that rule is still fulfilled by the agreements.  Under the agreements, Mr. Matthews promises to continue to represent the debtors unless the Court approves withdrawal. Mr. Matthews relies on several cases in support of his argument that the bifurcated engagement should be allowed in this District.  He argues that the purpose of the Local Rule is to ensure that debtors have representation for their entire chapter 7 case and that by allowing debtors to pay as they go, he is fulfilling that purpose.  He also argues that the fees are reasonable based on the lodestar standard, which should be the focus rather than the difference in fees charged to different debtors.  He argues that his fees satisfy § 329.  He argues that his disclosures to the debtors are robust and sufficient to satisfy § 329 and the requirements of §§ 526 and 528.  The Court acknowledges that, consistent with Mr. Matthews' arguments, some bankruptcy courts in other jurisdictions permit bifurcated fee arrangements and unbundling of services.

## <u>ANALYSIS</u>

SC LBR 9011-1(b) provides:

Except as may be provided in a written agreement with the debtor concerning appeals and adversary proceedings, the law firm/attorney which files the bankruptcy petition for the debtor shall be deemed the responsible attorney of record for all purposes including the representation of the debtor at all hearings and in all matters arising in conjunction with the case, including service, notice and communication via CM/ECF and the Federal Rules of Bankruptcy Procedure. In the instance that the agreement is between the law firm and the debtor, the filing attorney shall be deemed the designated attorney for the law firm. Any attorney

> who files a document on behalf of a creditor or other party in interest shall likewise be deemed the responsible attorney for all purposes including the representation of the party at any applicable hearing and in all matters related to the document, including service, notice and communication via CM/ECF and the Federal Rules of Bankruptcy Procedure.[2]

Mr. Matthews argues that this Rule is not violated because the bifurcated fee arrangements are consistent with the policy reason for the Local Rule, ensuring that debtor are represented throughout the chapter 7 case.  Mr. Matthews states that he intends to represent debtors throughout the entire case and that the bifurcated fee arrangement is simply a mechanism to allow debtors to be able to afford to file the bankruptcy case quickly and pay for the representation over time.  Mr. Matthews also argues that the bifurcated fee arrangement does not violate the Local Rule because the Local Rule states that an attorney who "files the bankruptcy petition for the debtor" is deemed the responsible attorney for purposes of the case. Accordingly, Mr. Matthews argues, any pre-petition work completed for a debtor under the pre-petition agreement is not covered by the Local Rule.  Therefore, he argues, the duty that arises under the Local Rule is strictly a post-petition duty.

First, Mr. Matthews' argument that the Local Rule only imposes a post-petition duty is unavailing.  The agreements signed by the debtors in these cases indicate that the preparation and filing of the petition is included in pre-petition services.  Accordingly, even if a debtor only signed the pre-petition agreement, Mr. Matthews would be required to file the petition on behalf of the debtor, triggering the application of the Local Rule.

---

[2] This Rule was amended in 2020.  Prior to the amendment, the Rule stated, "Except as may be provided in an attorney's written agreement with a party concerning appeals and adversary proceedings, any attorney who files documents for or on behalf of a party in interest shall remain the responsible attorney of record for all purposes including the representation of the party at all hearings and in all matters that arise in conjunction with the case." This Rule change does not affect the analysis here.

Additionally, in order to file a bankruptcy petition for a debtor, an attorney has certain pre-petition duties.  11 U.S.C. § 707(b)(4) provides, in relevant part:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>> (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
>> (ii) determined that the petition, pleading, or written motion—
> (I)      is well grounded in fact; and
> (II)     is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

Thus, § 707(b) requires an attorney to, pre-petition, review and make an inquiry into the debtor's financial affairs to ensure that the petition and schedules are accurate and correct.  If an attorney fails to undertake this investigation, § 707(b)(4)(A) provides that the court may order the attorney to reimburse the trustee for all reasonable costs of filing any motion for dismissal under this subsection, including reasonable attorneys' fees, if the motion is granted and a violation of Federal Rule of Bankruptcy Procedure 9011 is found.[3]  One bankruptcy court has stated:

> A reasonable investigation by counsel and the accompanying certification are essential to the administration of the bankruptcy case because the court, the trustee, and creditors are dependent upon debtors and their counsel providing accurate and complete information in the petition and schedules . . . The need for accurate and complete information is so critical that the failure to conduct a reasonable investigation or inquiry as to the information contained in the petition and schedules

---

[3] FRBP 9011 provides, in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, 1]--

(**1**) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(**2**) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(**3**) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(**4**) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

may subject the certifying attorney to not only attorneys' fees and costs, but also sanctions.

The duty of reasonable inquiry imposed upon an attorney by Rule 9011 requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) to check debtor's responses in the petition and schedules to assure they are internally and externally consistent; (4) to demand of debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor.

*In re Beinhauer*, 570 B.R. 128, 137 (Bankr. E.D.N.Y. 2017) (internal citations omitted).

Other actions must be taken prior to the filing of a bankruptcy petition as well. Pre-petition requirements are imposed on the clerk of court by § 342(b), which states:

Before the commencement of a case under this title by an individual whose debts are primarily consumer debts, the clerk shall give to such individual written notice containing--

(**1**) a brief description of--
(**A**) chapters 7, 11, 12, and 13 and the general purpose, benefits, and costs of proceeding under each of those chapters; and
(**B**) the types of services available from credit counseling agencies; and
(**2**) statements specifying that--
(**A**) a person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury in connection with a case under this title shall be subject to fine, imprisonment, or both; and
(**B**) all information supplied by a debtor in connection with a case under this title is subject to examination by the Attorney General.

A chapter 7 debtor's attorney is required under § 527 to provide the § 342(b) notice, as well as additional notices regarding seeking bankruptcy assistance services, to a debtor. Section 527

requires that a debt relief agency[4] providing bankruptcy assistance[5] to an assisted person[6] must

provide, "not later than 3 business days after the first date on which a debt relief agency first

offers to provide any bankruptcy assistance services to an assisted person, a clear and

conspicuous written notice" containing various disclosures.  Section 528 imposes additional

requirements on a debt relief agency, requiring that the debt relief agency, "not later than 5

business days after the first date on which such agency provides any bankruptcy assistance

services to an assisted person, but prior to such assisted person's [bankruptcy] petition . . . being

filed" enter into a written contract with the debtor that clearly explains the services being

provided, the fees being charged, and provide the debtor with a copy of the fully executed

contract.

These provisions make clear that an attorney filing a bankruptcy petition on behalf of a

debtor is required to provide a variety of services before a debtor's bankruptcy petition can be

filed.  The duty of representation arising under SC LBR 9011-1(b), therefore, necessarily arises

before the petition is filed.  The Local Rule designates the firm or attorney filing the petition as

responsible but does not limit representation to matters arising with and after filing the petition.

The Local Rule requires the attorney to perform all duties in connection with the representation

of the debtor, beginning with the pre-petition disclosures and investigations and the preparation

of the petition, through the filing of the petition and the conclusion of the case, with the

---

[4] "Debt relief agency" is defined in § 101(12A) as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110."  Section 101(12A) contains exclusions from its definition, none of which are applicable here.

[5] "Bankruptcy assistance" is defined in § 101(4A) as "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title."

[6] "Assisted person" is defined in § 101(3) as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425."

exception of adversary proceedings and appeals when excluded in writing.  Because the Local

Rule requires this continued representation, it simply does not allow bifurcated representation.  It

allows for one representation agreement only.  In other words, the representation and the

agreement are coextensive.  This is the case even acknowledging that other courts, with different

procedures and practices, permit similar arrangements to the ones at issue here.

 Courts traditionally hold that pre-petition debts for legal services are dischargeable in a

debtor's chapter 7 case.  *Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir. 2005); *Fickling v.

Flower, Medalie & Markowitz (In re Fickling)*, 361 F.3d 172, 175 (2d Cir. 2004).  The United

States Supreme Court has stated that an attorney representing a debtor in a chapter 7 case may

not receive compensation from estate funds under 11 U.S.C. § 330.  *Lamie v. U.S. Trustee*, 540

U.S. 526, 538-39 (2004).  Any post-petition attempt to collect attorney's fees for work performed

pre-petition violates the automatic stay.  *See Walton v. Clark & Washington, P.C.*, 454 B.R. 537,

545 (Bankr. M.D. Fla. 2011); *In re Burton*, 442 B.R. 421, 454 (Bankr. W.D.N.C. 2009).  Under

this District's Local Rule prohibiting unbundling of services, the fees Mr. Matthews charges

under the bifurcated fee arrangement allowing debtors to "file now, pay later" are dischargeable

in the debtors' chapter 7 cases.  The fee arrangement results in Mr. Matthews and Fresh Start

collecting a pre-petition debt post-petition, and any such collection violates the stay.  The

bifurcated fee arrangement is unavailable under this District's Local Rule.

 It is also a concern that the pre-filing agreement permits debtors to choose to proceed

without counsel or by hiring other counsel after the case is filed.  These options are inconsistent

with the Local Rule.  It is far from clear that debtors understand the implication of these options,

and expressly providing that Mr. Matthews will continue to represent the debtors until released

does not alleviate concerns with these options.  In any event, Mr. Matthews' inclusion of the

14

provision in the agreement stating that he will continue to represent the debtor in all aspects of the case until withdrawal is granted by the Court undermines any argument Mr. Matthews might attempt to present to the Court that he should be released as counsel for the debtor.  If he has already agreed to represent the debtor regardless of whether he gets paid or whether the debtor fulfills their duties, there is little argument left that he should be released should either of these conditions exist.  Thus, including this provision in the pre-filing agreement simply strengthens the Court's reasons for requiring Mr. Matthews to represent the debtor for the duration of the case.

Mr. Matthews relies on several cases that have allowed bifurcated fee arrangements. The Court has considered these cases, respects the reasoning set forth therein, and acknowledges that reasonable and rational minds may differ as to whether this type of agreement should be permissible.  However, the Court finds that the cases relied on by Mr. Matthews, discussed below, are distinguishable from the present case and, due to the presence of the Local Rule in this District, are inapplicable here.

In *In re Hazlett*, 2019 WL 1567751 (Bankr. D. Utah Apr. 10, 2019), the attorney for the debtor gave the debtor three options for payment: (1) an upfront retainer, (2) payment of $500 down with the debtor either signing a post-petition agreement, hiring another attorney, or proceeding pro se, or (3) no pre-petition payment, with the debtor either signing a post-petition agreement, hiring another attorney, or proceeding pro se.  The debtor chose this third option because he did not have the funds to pay a retainer, and chose to pay the fee over ten monthly installments. The debtor signed a pre-petition agreement along with additional documents that provided detailed disclosures and explanations, as well as information regarding the possible use of a third party to collect payments.  After the debtor's case was filed, the debtor signed the post-

petition agreement, which also contained detailed disclosures.  After the case was closed, the

United States trustee filed a motion to reopen the case to review the fee agreements and after

investigation, filed a motion for sanctions.

The Utah court found that the payment arrangement was permissible.  The court drew a

distinction between bifurcated fee agreements and limited services agreements, or unbundling.

The court stated that unbundling is problematic, but stated that "[w]ith bifurcated fee

agreements, the attorney is contracting to represent the debtor during the entire case, contingent

on the debtor signing the post-petition agreement."  The court stated that the purpose of the

bifurcated agreement in this case is clearly not to abandon the debtor but "to enable the attorney

to be paid for the post-petition services."  The court acknowledged that it was possible the

debtors could proceed pro se post-petition, but stated, "But that decision is solely up to the

debtor, as the attorney is ready and willing to complete the representation upon the signing of the

post-petition fee agreement."  The court stated that in using a bifurcated fee agreement, the

attorney must use special care to ensure full disclosure and informed consent and found that it

did exist in the present case.  It is not clear that full disclosure and informed consent are present

regarding the three debtors discussed in the present cases.

In *In re Slabbinck*, 482 B.R. 576 (Bankr. E.D. Mich. 2012) the chapter 7 debtors signed

both a pre-petition and a post-petition agreement with the attorney.  The pre-petition agreement

indicated that the debtors paid the attorney $1,000.00 for pre-petition services and stated that

once the bankruptcy case is filed, the attorney will not represent the debtors unless a new

agreement is signed.  The debtors then signed a post-petition agreement, pursuant to which the

attorney agreed to provide post-petition services for $2,000.00, paid in monthly installments.

The United States trustee filed a motion for disgorgement under section 329.  The United States

trustee argued that together the agreements were one agreement which was dischargeable as a pre-petition debt.  The UST also argued that if the court treated the agreements as separate, the breaking up of services was an impermissible unbundling.

The court first rejected the UST's argument that the pre-petition and post-petition agreements constituted a single agreement.  The court stated that the two agreements clearly spelled out which services would be provided pre-petition and which services would be provided post-petition and clearly delineated the amount of fees for each.  The court stated that there was nothing in the agreement that indicated the debtors were obligated or coerced into signing the post-petition agreement.  Accordingly, the court found no evidence that the two agreements should be treated as one single agreement.  Here, in the cases before this Court, the unbundling of services through the use of two agreements runs contrary to the Local Rule.

Next, the Michigan court considered the UST's argument that it was improper to unbundle the pre- and post-petition services.  The court reviewed case law relied on by both the debtor and the UST, as well as the Michigan Rules of Professional Conduct, their official comments, and Michigan Ethics Opinions, and stated:

> [T]he Court is persuaded that an agreement to limit an attorney's legal services in connection with an individual Chapter 7 bankruptcy case by unbundling the pre-petition legal services from the post-petition legal services, is not per se prohibited by the MRPC and does not necessarily warrant any relief under § 329 of the Bankruptcy Code. That does not mean that all agreements to unbundle legal services are permissible, but only that such agreements are not always barred. Although § 329 of the Bankruptcy Code does not set forth specific criteria governing the unbundling of legal services in a Chapter 7 case, it is clear that, minimally, the MRPC require that (1) the attorney competently represents the individual debtor despite any limitation on the scope of services; (2) the attorney provides adequate consultation to the individual debtor concerning any limitation on the scope of the attorney's representation and the legal matter in question; and (3) the individual debtor makes a fully informed and voluntary decision to consent to such limitation.

*Slabbinck*, 482 B.R. at 589.  South Carolina ethics rules permit limited service agreements as

well.  *See* South Carolina Rule of Professional Conduct 1.2(c).  However, this Court's Local

Rule does not.

*Walton v. Clark & Washington, P.C.*, 469 B.R. 383 (Bankr. M.D. Fla. 2012) is also

relied on by Mr. Matthews.  In *Walton*, the UST originally challenged the law firm's practice of

accepting small fees for pre-petition work and post-dated checks for post-petition work.  The

court found that this arrangement was impermissible and violated the automatic stay and

discharge injunction and also created a conflict of interest.  The law firm then modified its

practice to a bifurcated arrangement, where the client first retained the law firm to prepare and

file the chapter 7 petition.  After the petition was filed, the client had to immediately execute a

post-petition retainer agreement and make arrangements to pay the post-petition fees, after which

the remainder of the required paperwork is filed (schedules, SOFA, etc.).  The court expressed

concerns about this method, so the law firm again modified its procedure to give the client three

post-petition options under the pre-petition fee agreement: (1) the client can proceed pro se; (2)

the client can retain the law firm; or (3) the client can retain another firm.  The client had two

weeks to determine which option to choose.

The court found no issues with the modified two-contract procedure.  The UST

expressed concern that the two-contract procedure would leave the debtors with a two week gap

period in which they were unrepresented, while they considered whether to retain the law firm to

represent them post-petition.  However, the law firm had agreed to represent the debtor during

the period, and therefore this was not a concern for the Florida court.

Finally, Mr. Matthews relies on *In re Carr*, 613 B.R. 427 (Bankr. E.D. Ky. 2020).  In

*Carr*, the attorney gave debtors two different payment options: (1) payment of a flat fee pre-

petition or (2) payments made both pre- and post-petition pursuant to separate contracts.  Under

the two-contract option, the debtors generally paid the attorney $300 pre-petition for limited pre-

petition services, including preparation and filing of the petition and list of creditors,

compensation disclosure and application to pay filing fee in installments.  The disclosure

reviewed and signed by the debtors also expressly excluded post-petition services, including

providing documents to the trustee and attending the meeting of creditors.  However, the

disclosure included a statement that the attorney was willing to provide post-petition services if

retained.  If the debtor retained the attorney for post-petition services, the debtor would pay the

remainder of the fee in monthly installments over 12 months.

The court found that the attorney's compensation arrangement was permissible. The

court looked to the Kentucky Rules of Professional Conduct and found that the compensation

arrangement did not violate those rules.  The court also looked at the three other cases relied on

by Mr. Matthews in this case and stated, "Here, the Attorneys assiduously followed the best

practices drawn from these cases.  They made full disclosures to Debtor so that Debtor could

make an informed decision.  Their efforts, reasonable fee arrangement, and willingness to

provide access to the courts in this manner allowed Debtor to retain and pay for legal counsel

and receive a chapter 7 discharge."  Although the court found the compensation arrangement to

be reasonable, the court did note that it was not considering the propriety of factoring attorneys'

fees, because such an arrangement was not present in this case.  The court also noted that it did

not consider whether its local rule prohibiting attorneys from withdrawing from representation

absent the court's approval was violated by the pre-petition agreement which stated that it would

terminate upon the completion of the services thereunder, because the attorneys did not move to

withdraw and the debtor then retained the attorneys post-petition.

19

The Court acknowledges that the courts in these cases, and perhaps other courts, allow bifurcated fee arrangements similar to those offered by Mr. Matthews.  However, these cases are all from other districts, where SC LBR 9011-1(b) does not control.[7]  In this District, SC LBR 9011-1(b) has been in place for a lengthy period of time.  Judges in this District have discussed and interpreted it in numerous cases and have repeatedly recognized that it imposes a continuing duty on a debtor's attorney to represent a debtor throughout a bankruptcy case (with the exception of adversary proceedings and appeals).  *See In re Mungo*, 305 B.R. 762 (Bankr. D.S.C. 2003) (finding that local counsel violated SC LBR 9010-1(d), predecessor to SC LBR 9011-1, by drafting pleadings for the debtor but failing to sign and file the pleadings and failing to represent the debtor at the hearing on the pleadings); *In re Burgess*, C/A No. 16-03815-JW, slip op. (Bankr. D.S.C. Apr. 19, 2017) (finding that SC LBR 9011-1(b) was violated by attorney's failure to represent the debtor in connection with a motion for relief from stay and motion for reconsideration and sanctioning counsel for his failure); *In re Stamper*, C/A No. 02-09812-W, slip op. (Bankr. D.S.C. Dec. 19, 2005) (concluding that attorney's refusal to represent the debtor in connection with a motion to incur debt without advance payment violated SC LBR 9010-1 and sanctioning counsel); *Johnson v. Bank of Travelers Rest (In re Johnson)*, C/A No. 02-12454-W, Adv. Pro. No. 03-80212-W (Bankr. D.S.C. May 8, 2003) (finding under SC LBR 9010-1 that attorney representing the debtor in his chapter 13 case was responsible for representing the debtor in the adversary proceeding because he did not have a written fee agreement excluding adversary proceedings; also stating, "The bar of this District should be aware of the requirements of Local Rule 9010-1(d) [now SC LBR 9011-1(b)] and be cautioned that failure to comply with

---

[7] The Court notes that *Hazlett* did involve the existence of a local rule somewhat similar to this District's local rule. However, SC LBR 9011-1(b) is unambiguous and is a long-standing rule in this District, for good reason. Additionally, for the reasons set forth in this order, the Court disagrees with the reasoning in *Hazlett*.

or any manipulation of the Rule is considered sanctionable conduct."). In *Stamper*, the Court

noted in a footnote:

> From October 1999 through October 2001, at the request of debtor's counsel sitting
> on the local rules committee, this Court modified this local rule to allow the
> agreements between counsel and a debtor to govern the extent of duties between
> these parties. The result can be fairly described as chaos for the bankruptcy system,
> the Court, and trustees. Frequently, debtors appeared in response to such critical
> matters as a petition to dismiss or motion for relief from stay and indicated that
> their counsel would not represent them without an advance payment of additional
> fees. The result was prejudicial to debtors and almost debilitating for the Court's
> consumer docket, delaying cases and causing a waste of resources. As a result of
> these problems, and the policy considerations expressed herein, this Court
> reestablished its long-standing rule on October 1, 2001.

*Stamper*, pg. 11, n.16.

The Court also acknowledges that the United States District Court for the District of

South Carolina provides that South Carolina Rules of Professional Conduct apply in cases in this

District.[8]  One such rule, South Carolina Rule of Professional Conduct 1.2(c), allows attorneys to

restrict their representation, stating, "A lawyer may limit the scope of the representation if the

limitation is reasonable under the circumstances and the client gives informed consent." It is

unclear here whether the required disclosures were reasonably and adequately disclosed to the

client. In any event, as explained above, the bankruptcy judges in this District have determined

that the Local Rule is necessary in order to adequately protect debtors. Bankruptcy is different

than a traditional two-party dispute. The goal in a bankruptcy case is to deal with all of the

debtor's financial issues—the case involves all of the debtor's property, all creditors, and is

intended to provide the debtor with all of the relief available under the bankruptcy code. The

---

[8] Local Civ. Rule 83.I.08 IV(B) (D.S.C.) provides, "Acts or omissions by an attorney admitted to practice before this
court, individually or in concert with any other person or persons, that violate the Code of Professional
Responsibility adopted by this court shall constitute misconduct and shall be grounds for discipline, whether or not
the act or omission occurred in the course of any attorney-client relationship. The Code of Professional
Responsibility adopted by this court is the South Carolina Rules of Professional Conduct (Rule 407 of the South
Carolina Appellate Court Rules) adopted by the South Carolina Supreme Court, as amended from time to time by
that state court, except as otherwise provided by specific rule of this court."

Court relies on counsel to assist the debtor, and the Court, throughout the process, and it is necessary for counsel to be available at all stages in the case.  Accordingly, in a bankruptcy case, the representation is broader than in a typical two-party dispute and the South Carolina Rule of Professional Conduct is not applicable to allow a limited scope of representation.

The Court is sympathetic to the difficulties that debtors face in accumulating funds sufficient to prepay an attorney to file a chapter 7 case.  However, this concern must be balanced with the need for debtors to have representation throughout the duration of their case in order to ensure they are receiving all relief available under the bankruptcy code.  Further, asking debtors, who are typically under tremendous financial pressure and who often have a history of making questionable financial decisions, to sign an agreement to be held liable for attorney fees post-petition simply places the often desperate debtors in a position to make yet another unwise financial decision.  Considering the existence of the Local Rule expressly prohibiting this type of agreement, as well as these concerns, the Court finds that this type of fee arrangement can simply not be used in this District.

Once counsel is engaged to provide bankruptcy assistance to a debtor and a petition is filed, the scope and extent of representation under our District's Local Rule is of one unbundled package of services.  Separate representations and bifurcation are not permitted.  Counsel cannot walk the debtor client to the courthouse door, file only a few of the required documents, and insist that the representation has been completed even if maintaining that additional (but in counsel's mind uncontracted) services will be provided until the Court acts on a motion to withdraw.  This strains too much the bankruptcy attorney-client relationship, especially given the disparity between the contracting parties over issues that otherwise are the inherent subject of the attorney-client relationship—claims, debts, personal liability and the right to payment.

Because the Court finds the bifurcated fee arrangement impermissible under SC LBR 9011-1(b), the Court need not reach the additional issues of the reasonableness of Mr. Matthews' fees under § 329 or the adequacy of the disclosures under § 526 or § 528. Although the Court is not considering the reasonableness of the fees, the Court does note that the UST's argument that the bifurcated fee arrangement results in the debtors paying additional fees may have some merit. Mr. Matthews charges a lesser amount to those debtors who prepay the entire amount of the fees; however, these clients must pay additional fees at an hourly rate for any services designated as supplemental post-filing services, while those that choose the bifurcated fee arrangement do not. Further, at least in the three cases before the Court, the total amount paid by the debtors differed. The Court notes if in fact those debtors choosing bifurcated fee arrangements were charged more than debtors choosing to prepay, that factor could weigh against reasonableness of fees. However, no lodestar analysis has been done. The individual circumstances of each debtor's financial situation could justify a higher fee. Because it is not clear whether the debtors here actually paid more and because the Court is not assessing the reasonableness of Mr. Matthews' fees, the Court need not address this further. In any event, Mr. Matthews must return all fees paid post-petition under the fee agreements in these three cases, less any filing fees or out of pocket costs.

## <u>CONCLUSION</u>

For the reasons set forth above, the relief requested in the UST's motions is granted. The bifurcated fee agreements are impermissible under SC LBR 9011-1(b). Mr. Matthews is ordered to return to the debtors all fees paid post-petition under these agreements, less any filing fees or out of pocket costs, within thirty (30) days of the date of entry of this order.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**03/29/2021**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 03/29/2021