⚠ Caution

As of: May 16, 2022 3:23 PM Z

# *In re Brown*

United States Bankruptcy Court for the Southern District of Florida

June 16, 2021, Decided; June 16, 2021, Filed

CASE NO. 20-23632-BKC-LMI, Chapter 7, CASE NO. 20-23354-BKC-LMI, Chapter 7, CASE NO. 20-18268-BKC-LMI, Chapter 7

**Reporter**

631 B.R. 77 *; 2021 Bankr. LEXIS 1598 **; 29 Fla. L. Weekly Fed. B 7; 2021 WL 2460973

IN RE: Cheryl Brown, aka Cheryl Marie Brown, aka Cheryl Marie Brown-Grant, Debtor.IN RE: Charmeen L Mcfarland, Debtor.IN RE: Lavonia Valerie McCoy, aka Lavonia Leggett McCoy, aka Lavonia McCoy, aka Lavonia Valerie Jackson McCoy, aka Lavonia V. Leggett McCoy, aka Lavonia V. McCoy, Debtor.

## Core Terms

postpetition, prepetition, law firm, disclosure, filing fee, bifurcated, flat fee, bankruptcy case, preparation, cases, attendance, argues, legal services, consumer, fee agreement, fee arrangement, schedules, withdraw, documents, front, signs, bar rules, repayment, contingent, rescission, includes, monthly, motions, provide a service, advising

## Case Summary

### Overview

HOLDINGS: [1]-In chapter 7 proceedings, bifurcated prepetition and postpetition fee arrangements between debtors and legal counsel were permissible if they were reasonable, *11 U.S.C.S. § 329*; [2]-Reasonableness was assessed, inter alia, by taking into account not only the work that was done but also the services that might have been required, as well as the standards of competency required by *R. Regulating Fla. Bar 4-1.1 Fed. R. Bankr. P. 9011(b)* and *11 U.S.C.S. § 707(b)(4)*; [3]-Further, in bifurcated fee arrangements, counsel was required to provide adequate disclosure of any limitation on the scope of representation, R. Regulating Fla. Bar 4-1.2; [4]-Attorneys could not finance the filing fee because that was a violation of, inter alia, *11 U.S.C.S. § 526* and R. Regulating Fla. Bar 4-1.8.

### Outcome

Injunction granted, but limited to ordering all attorneys to stop current practices relating to bifurcated fee arrangements unless those arrangements comply with the requirements outlined by the court.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Professional Services > Retention of Professionals > Court Approval

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Bankruptcy Law > ... > Retention of Professionals > Compensation > Limitations on Compensation

**HN1**[⬇] **Retention of Professionals, Court Approval**

*11 U.S.C.S. § 330(a)(1)* does not authorize compensation awards to debtors' attorneys from estate funds. Several circuits, both before and after *Lamie*, have held that the unpaid balance of prepetition fees are dischargeable in bankruptcy. Thus, a chapter 7 lawyer must be paid by the debtor, but the chapter 7 lawyer cannot look to the estate or to the debtor postpetition for payment of fees for services rendered or to be rendered if the obligation to pay the fee arises prepetition.

Governments > Legislation > Interpretation

**HN2**[⬇] **Legislation, Interpretation**

Courts cannot rule based on what is good public policy. The judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior.

Case 20-03131-hb    Doc 85-6    Filed 05/19/22    Entered 05/19/22 15:45:10    Desc  Case 6   Page 2 of 22

631 B.R. 77, *77; 2021 Bankr. LEXIS 1598, **1598

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

Bankruptcy Law > ... > Bankruptcy > Case Administration > Filing Fees

### *HN3*[⬇] Compensation, Debtor's Attorney

The phrase bifurcation of fees in bankruptcy refers to the practice of separating services provided to a client into services provided prepetition and postpetition. Some services are provided prepetition for one fee (whether a flat fee or based on an hourly charge), which is paid before the bankruptcy petition is filed, and then any additional services that are provided postpetition are charged for, and paid for, postpetition.

Bankruptcy Law > Individuals With Regular Income > Treatment of Postpetition Claims

### *HN4*[⬇] Individuals With Regular Income, Treatment of Postpetition Claims

There is no question that using the postpetition agreements to pay for prepetition services is not acceptable, since that is merely seeking to do indirectly what is prohibited directly. Fees for pre-petition services should not be directly or surreptitiously slipped into the fee charged for postpetition services. If this happens, it could be cause for disgorgement under *11 U.S.C.S. § 329* or other sanctions.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

### *HN5*[⬇] Compensation, Debtor's Attorney

The reasonableness of the prepetition attorney fees and the postpetition fees must be analyzed on the basis of the services provided with respect to each flat fee, not compared to each other.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

### *HN6*[⬇] Attorney Fees & Expenses, Reasonable Fees

Reasonableness of a flat fee arrangement is assessed differently than reasonableness evaluated through an hourly rate. E.g., Because a flat fee encompasses all required services and the extent of required services is not fully predictable at the outset of a case, the reasonableness of a flat fee cannot necessarily be determined based on the amount of services required in the case. Nevertheless, the amount of a proposed flat fee must bear some relationship to the work that will likely be required, which inevitably depends on the unique facts and circumstances of the case.

Bankruptcy Law > Discharge & Dischargeability > Exceptions to Discharge > Student Loans

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

### *HN7*[⬇] Exceptions to Discharge, Student Loans

The will review the reasonableness of the postpetition flat fee charged by Law Firms by taking into account not only the work that was done but also the services that might have been required in the case for which there would have been no additional charge. The Court agrees that in determining the reasonableness of the flat fees charged by the Law Firms the Court should not consider services that would not possibly arise in the case, such as dealing with student loan issues when the debtor does not have student loans.

Bankruptcy Law > ... > Professional Services > Retention of Professionals > Court Approval

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

Bankruptcy Law > ... > Retention of
Professionals > Compensation > Limitations on
Compensation

Bankruptcy Law > ... > Retention of
Professionals > Compensation > Debtor's Attorney

## HN8[⬇] Retention of Professionals, Court Approval

If there are certain services that must be provided prepetition, then any of those services promised postpetition cannot be considered in determining the reasonableness of the postpetition flat fee charge. That in turn leads to the question of whether the services provided prepetition meet the standards of competency required by the State Bar Rules and the requirements of *Fed. R. Bankr. P. 9011(b)* and *11 U.S.C.S. § 707(b)(4)*. In determining the answer to these questions, courts must consider what services are required in any representation, whether required by applicable state professional bar rules, the Bankruptcy Code and Bankruptcy Rules, and that court's local rules.

Legal Ethics > Client Relations > Representation

## HN9[⬇] Client Relations, Representation

"Informed consent" and "reasonable" are both defined in the Florida Bar Rules. Reasonable is defined as conduct of a reasonably prudent and competent lawyer. Informed consent" is defined as denoting the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

Bankruptcy Law > ... > Bankruptcy > Debtor Benefits & Duties > Debtor Duties

## HN10[⬇] Debtor Benefits & Duties, Debtor Duties

What a reasonably prudent and competent chapter 7 consumer practitioner should do is framed by the Bankruptcy Code and the Court's Local Rules. Bankr. S.D. Fla. R. 2090-1(E) states that an attorney who makes an appearance in a case on behalf of a debtor is required, at a minimum, to assist the debtor with respect to all of his or her obligations under *11 U.S.C.S. § 521*. *Section 521* contains many requirements, some of which are prepetition requirements such as filing the list of creditors, some of which are postpetition requirements such as

providing documents to the trustee, and some of which should take place prepetition but often do not, such as filing the bankruptcy schedules, the statement of financial affairs, and payment advices. Local Rule 2090-1(E) requires counsel of record to perform all *section 521* responsibilities unless and until the Court permits the attorney to withdraw.

Bankruptcy Law > ... > Retention of
Professionals > Compensation > Debtor's Attorney

## HN11[⬇] Compensation, Debtor's Attorney

Competence of a Chapter 7 debtor's attorney is most appropriately evaluated by looking at the actual work that was agreed to be performed and then was performed by the attorney, not by looking at the remaining work that will have to be done to complete the case when the individual has not hired the attorney to perform those services and the attorney has not performed those services.

Bankruptcy Law > Individuals With Regular
Income > Eligibility > Credit Counseling

Civil Procedure > ... > Pleadings > Complaints > Filing
Fees

Bankruptcy Law > Case
Administration > Meetings > Meeting of Creditors

Bankruptcy Law > ... > Bankruptcy > Case
Administration > Filing Fees

Bankruptcy Law > ... > Bankruptcy > Debtor Benefits &
Duties > Eligibility

## HN12[⬇] Eligibility, Credit Counseling

To address the issues of competency and unbundling, United States Bankruptcy Court for the Southern District of Florida holds that any lawyer choosing to represent a debtor must comply with the Bankruptcy Code, the Bankruptcy Rules, the Florida Bar Rules, and this Court's Local Rules. These statutes and rules collectively require sufficient inquiry by the attorney, not staff, when initially meeting with a client to ascertain whether filing bankruptcy is the appropriate relief, determining under what chapter a bankruptcy case could or should be filed, and additionally compel the attorney to adequately inform a potential debtor of the consequences of that choice. Further, the attorney must assist the debtor with

all of the debtor's obligations under *11 U.S.C.S. § 521* unless he or she is permitted to withdraw. The attorney must prepare and file all documents necessary to commence the bankruptcy case, which includes, at a minimum, the petition, the creditor's matrix, any motion to waive or pay the filing fee in installments, the statement of attorney compensation, and the Debtor Credit Counseling Certificate, or, if applicable, a motion to waive the need to file or file late, the certificate (collectively the Minimum Required Documents). And finally, the attorney must attend the *11 U.S.C.S. § 341* meeting of creditors unless he or she is permitted to withdraw prior to the meeting.

Bankruptcy Law > ... > Commencement of Case > Joint Cases > Commencement

Bankruptcy Law > Procedural Matters > Professional Responsibility

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

### *HN13*[⬇]  Joint Cases, Commencement

There are circumstances in which a debtor comes to the attorney on an emergency basis and the attorney must file a bare bones petition. But even in that circumstance, the attorney and the debtor must be sufficiently informed prior to filing the petition to comply with *Fed. R. Bankr. P. 9011*, and certain documents must be prepared and filed.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Legal Ethics > Client Relations > Attorney Fees > Contingency Fees

Bankruptcy Law > ... > Business & Corporate Compliance > Bankruptcy > Reorganizations

### *HN14*[⬇]  Compensation, Debtor's Attorney

A fundamental premise of all the fee bifurcation cases is disclosure. The propriety of using bifurcated fee agreements in consumer chapter 7 cases is directly proportional to the level of disclosure and information the attorney provides to the client and the existence of documentary evidence that the client made an informed and voluntary election to enter into a postpetition fee agreement.

Legal Ethics > Client Relations > Conflicts of Interest

### *HN15*[⬇]  Client Relations, Conflicts of Interest

R. Regulating Fla. Bar 4-1.2 requires that the limitation on scope of representation must be reasonable and the client give informed consent in writing.

Bankruptcy Law > ... > Bankruptcy > Debtor Benefits & Duties > Debtor Duties

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

### *HN16*[⬇]  Debtor Benefits & Duties, Debtor Duties

The Court recognizes that there are times when what would normally be a prepetition service, such as preparation of the bankruptcy schedules and statement of financial affairs, may occur postpetition, especially when the filing is an emergency filing. But in such a case, the disclosure must make clear that the particular service will be performed postpetition only if not completed prepetition. The agreement should also make clear whether amendments to documents are included in the fee, and if the amendment of certain documents is not included, what those documents are.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

### *HN17*[⬇]  Compensation, Debtor's Attorney

In the context of postpetition attorney fees, with respect to the adequacy of disclosure to the debtor, the Court holds that the disclosures may include services that may or may not be performed, and services that at the time of retention are clearly not required, so long as the agreement makes clear that some of the listed services will not arise in a particular case. The issue of whether possible services were actually performed or could have ever been necessary is something the Court may consider in determining the reasonableness of the postpetition flat fee. The postpetition agreement, if it is signed immediately following the petition, must include a 14-day rescission period and describe the consequences if the debtor

rescinds the agreement. Alternatively, the debtor should be given a 14-day window after the petition is filed in which to sign a postpetition agreement. The prepetition agreement must disclose that regardless of whether the postpetition agreement is signed, the attorney must continue to represent the debtor unless allowed to withdraw. If the postpetition agreement has a rescission clause, it must contain the same disclosure. And the postpetition agreement must clearly state that the obligation to pay fees under the postpetition fee agreement is not an obligation that will be discharged when the debtor receives his or her bankruptcy discharge.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

**HN18**[⬇] **Compensation, Debtor's Attorney**

In the context of postpetition attorney fees, the debtor must be given a separate disclosure form that discloses he or she is being provided the option to choose the bifurcated fee arrangement, and whether the bifurcated fee arrangement will have a different cost than a flat fee arrangement paid in advance of the filing. The disclosure should also clearly describe the debtor's options, including the consequences of choosing a particular option: (a) sign the postpetition agreement and get the services described in that agreement at the stated cost (flat fee or hourly rate); (b) do not sign the agreement, and once the attorney is permitted to withdraw, proceed with the case without a lawyer; or (c) retain a new lawyer postpetition.

Bankruptcy Law > Individuals With Regular Income > Treatment of Postpetition Claims

**HN19**[⬇] **Individuals With Regular Income, Treatment of Postpetition Claims**

In the context of postpetition attorney fees, in order for a debtor to make a fully informed decision regarding his or her choices, the debtor must be presented with the separate disclosure, the prepetition agreement and the postpetition agreement when asked to sign the prepetition agreement. A debtor cannot make an informed decision regarding a bifurcated arrangement without knowing what the other side agreement includes and requires. If the debtor signs the prepetition agreement the debtor must also sign the separate

disclosure.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Legal Ethics > Client Relations > Attorney Fees > Flat Fees

**HN20**[⬇] **Compensation, Debtor's Attorney**

In the context of postpetition attorney fees, the Court holds that disclosure to a potential client is adequate so long as a) The potential debtor receives the separate disclosure form; b) The prepetition agreement and postpetition agreement are provided at the same time for the potential debtor's review; c) The prepetition agreement clearly describes the services that must be performed prepetition as well as other services that may be provided; and d) The postpetition agreement clearly describes the included services; and specifically describes the excluded services, and any additional flat fee or hourly charge associated with those excluded services.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN21**[⬇] **Compensation, Debtor's Attorney**

In the context of postpetition attorney fees, in addition to the critical importance of disclosure to the client, attorneys also must make sure that any bifurcated fee arrangement is properly disclosed to the Court and to parties in interest.

Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

**HN22**[⬇] **Compensation, Debtor's Attorney**

*Fed. R. Bankr. P. 2016* requires that every attorney for a debtor (regardless of whether the attorney is applying for compensation) shall file the statement required by *section 329*. *Section 329* requires a disclosure of the compensation paid or to be paid if the agreement was made within one year before the date of filing the petition for services rendered or to be rendered in contemplation of or in connection with the case, and the source of the compensation.

Case 20-03131-hb   Doc 85-6   Filed 05/19/22   Entered 05/19/22 15:45:10   Desc  Case
6   Page 6 of 22

631 B.R. 77, *77; 2021 Bankr. LEXIS 1598, **1598

Bankruptcy Law > ... > Retention of
Professionals > Compensation > Debtor's Attorney

Bankruptcy Law > ... > Bankruptcy > Case
Administration > Filing Fees

*HN23*[⬇] **Compensation, Debtor's Attorney**

Schedule J requires that a debtor list all monthly expenses. Schedules I and J reflect information as of the petition date. As of the petition date, a chapter 7 debtor does not have an obligation to pay an attorney a fee postpetition. Once the debtor signs the postpetition fee agreement, the debtor's counsel must file the Form 2030 Fee Disclosure. There is no need to amend Schedule J.

Legal Ethics > Client Relations > Attorney
Fees > Contingency Fees

*HN24*[⬇] **Attorney Fees, Contingency Fees**

A postpetition fee agreement cannot be signed prepetition; otherwise it is a contract subject to rescission. However, a postpetition agreement signed immediately after the petition is filed does not provide the debtor with any meaningful opportunity to consider his or her options.

Bankruptcy Law > ... > Bankruptcy > Case
Administration > Filing Fees

Civil Procedure > ... > Pleadings > Complaints > Filing
Fees

Bankruptcy Law > ... > Retention of
Professionals > Compensation > Interim Compensation

*HN25*[⬇] **Case Administration, Filing Fees**

*Fed. R. Bankr. P. 1006* requires that the filing fee accompany the petition.

Bankruptcy Law > ... > Bankruptcy > Case
Administration > Filing Fees

Civil Procedure > ... > Pleadings > Complaints > Filing
Fees

*HN26*[⬇] **Case Administration, Filing Fees**

A law firm's payment of the filing fee with postpetition repayment by the debtor violates the Bankruptcy Code as well as the Florida Bar Rules. The filing fee is due upon the filing of the bankruptcy petition. Therefore, the debtor's obligation to repay the filing fee to the firm is a prepetition obligation that is dischargeable. A law firm that advances the fee with the expectation of repayment postpetition is violating *11 U.S.C.S. § 526* by advising the debtor to incur a debt to pay for bankruptcy related legal services, violating *11 U.S.C.S. § 362* and, assuming the debtor gets his or her discharge, violating *11 U.S.C.S. § 524*. Moreover, the payment of the filing fee is a violation of R. Regulating Fla. Bar 4-1.8(e). The Court finds that the word "may" means that the attorney may advance costs the repayment of which is contingent on the outcome of the case, not that the attorney may always advance costs for a client regardless of whether the repayment is contingent on the outcome of the case.

Bankruptcy Law > ... > Bankruptcy > Case
Administration > Filing Fees

Legal Ethics > Client Relations > Attorney
Fees > Contingency Fees

Civil Procedure > ... > Pleadings > Complaints > Filing
Fees

*HN27*[⬇] **Case Administration, Filing Fees**

R. Regulating Fla. Bar 4-1.8(e) addresses an access to justice issue by authorizing cost advances in contingency fee cases and allowing an attorney to advance costs on behalf of an indigent client. A bifurcation agreement, like any other fee arrangement, should give the debtor the three choices allowed by federal law: pay the fee up front, complete the paperwork to pay the filing fee in installments, or, if applicable, seek waiver of the filing fee.

**Counsel:** [**1] For Cheryl Brown, Debtor (20-23632-LMI): Yevgeniy Feldman, Semrad Law Firm, LLC, Coral Gables, FL; Haidan Huang, Fort Lauderdale, FL.

For Office of the US Trustee, U.S. Trustee (20-23632-LMI, 20-23354-LMI, 20-18268-LMI): Ariel Rodriguez, Office of the US Trustee, Miami, FL.

For Charmeen L Mcfarland, Debtor (20-23354-LMI): Yevgeniy Feldman, Semrad Law Firm, LLC, Coral Gables, FL.

Case 20-03131-hb    Doc 85-6    Filed 05/19/22    Entered 05/19/22 15:45:10    Desc  Case 6    Page 7 of 22

631 B.R. 77, *77; 2021 Bankr. LEXIS 1598, **1

For Lavonia Valerie McCoy, aka Lavonia Leggett McCoy, aka Lavonia McCoy, aka Lavonia Valerie Jackson McCoy, aka Lavonia V. Leggett McCoy, aka Lavonia V. McCoyDebtor (20-18268-LMI): Chad T Van Horn, Ft Lauderdale, FL.

**Judges:** Laurel M. Isicoff, Chief United States Bankruptcy Judge.

**Opinion by:** Laurel M. Isicoff

# Opinion

[*84]  **MEMORANDUM OPINION AND ORDER SETTING FORTH STANDARDS ON CHAPTER 7 BIFURCATED FEES AND DENYING REQUEST FOR INJUNCTIVE RELIEF**

More and more the public is bombarded with advertising for "low money down" or "no money down" bankruptcies. The "legal" framework of these offers is the bifurcation of fees in chapter 7 bankruptcy cases. Are these arrangements a partial answer to the systemic challenge to access to justice? Are these arrangements a violation of the Bankruptcy Code? Are these arrangements a violation of the Rules Regulating [**2] the Florida Bar?

[*85]  *HN1*[↑] In *Lamie v. U.S. Trustee, 540 U.S. 526, 538, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004)*, the United States Supreme Court ruled that *11 U.S.C. § 330(a)(1)* "does not authorize compensation awards to debtors' attorneys from estate funds." Several circuits, both before and after *Lamie*, have held that the unpaid balance of prepetition fees are dischargeable in bankruptcy. *See Rittenhouse v. Eisen, 404 F.3d 395 (6th Cir. 2005)*; *In re Fickling, 361 F.3d 172 (2d Cir. 2004)*; *Bethea v. Robert J. Adams & Assocs., 352 F.3d 1125 (7th Cir. 2003)*; *In re Biggar, 110 F.3d 685 (9th Cir. 1997)*. Thus, a chapter 7 lawyer must be paid by the debtor, but the chapter 7 lawyer cannot look to the estate or to the debtor postpetition for payment of fees for services rendered or to be rendered if the obligation to pay the fee arises prepetition.

In the Final Report of the ABI Commission on Consumer Bankruptcy (the "ABI Commission Report"), the American Bankruptcy Institute's Commission on Consumer Bankruptcy (the "ABI Commission") wrote "the dischargeability of pre-petition attorney's fees in chapter 7 hinders access to the bankruptcy system and access to justice." *Final Report of the ABI Commission on Consumer Bankruptcy*, § 3.01 Chapter 7 Attorney's Fees at 89 (American Bankruptcy Institute, 2017-2019).

As the ABI Commission noted in the comments to section 3.01, currently there are four payment options available to potential chapter 7 debtors who wish to retain counsel, each with its own set of [**3] problems and challenges: (1) delay filing the case until all the fees are paid up front; (2) the lawyer can file the chapter 7 case without getting paid in full up front and hope that the debtor will voluntarily pay additional fees postpetition; (3) the attorney will bifurcate the legal services; or (4) the debtor can file a chapter 13 case instead so that the fees may be paid postpetition.

As the court wrote in *In re Hazlett, 2019 Bankr. LEXIS 1166, 2019 WL 1567751 (Bankr. D. Utah 2019)*, without access to counsel, a consumer chapter 7 debtor must either file a case with no help or, perhaps even worse, file with the assistance of a bankruptcy petition preparer, many of whom charge more than lawyers, and who are prohibited from providing any legal assistance.

The access to justice issues are troubling and compelling. However, the Court must rule within the framework of the law. As Judge Easterbrook observed in *Bethea, 352 F.3d at 1127-28*, *HN2*[↑] the courts cannot rule based on what is good public policy. "[T]he judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior." *Id.*[1]

Practitioners have tried to develop ways, consistent with the legal restrictions just described, to provide a debtor who cannot pay all or part of the attorney fees up front, [**4] an option that would allow a small, or no, payment up front, with the opportunity to pay additional fees over time after the case is filed. Whether and to what extent these arrangements are allowable has been the subject of cases around the country.

These three cases present this Court with the opportunity to provide a framework for when and under what circumstances bifurcation of chapter 7 fees is allowable. As the Court made clear at the initial hearing on these matters, although these cases are assigned to the Chief Judge, the legal conclusions in this opinion [*86] represent the legal conclusions of all of the judges of the Bankruptcy Court of the Southern District of Florida.

## FACTUAL BACKGROUND

---

[1] The Court joins many others in the bankruptcy community, urging Congress to address this issue through legislation.

This matter came before the Court upon three motions filed by the United States Trustee (the "UST") objecting to the business practices of the Semrad Law Firm, LLC (the "Semrad Law Firm") and Van Horn Law Group, P.A. (the "Van Horn Law Firm") (collectively the "Law Firms") with respect to the bifurcation of attorney fees in consumer chapter 7 cases. *United States Trustee's Motion for Examination of Fees of Chad T. Van Horn and Van Horn Law Group Under 11 U.S.C. Section 329(b); Federal Rules of Bankruptcy Procedure Rule 2016 and 2017; and for an Injunction Against Prohibited [\*5] Conduct* (ECF #37, Case No. 20-18268-BKC-LMI (the "McCoy Case")) (the "McCoy Motion") addresses concerns raised by the practices of the Van Horn Law Firm. *United States Trustee's Amended Motion for Examination of Fees of Haidan Huang and the Semrad Law Firm a/k/a Debtstoppers Under 11 U.S.C. Section 329(b); Federal Rules of Bankruptcy Procedure Rule 2016 and 2017; and for an Injunction Against Prohibited Conduct* (ECF #20, Case No. 20-23632-BKC-LMI (the "Brown Case")) (the "Brown Motion") and *United States Trustee's Amended Motion for Examination of Fees of Yevgeniy Feldman and The Semrad Law Firm a/k/a Debtstoppers Under 11 U.S.C. Section 329(b); Federal Rules of Bankruptcy Procedure Rule 2016 and 2017; and For An Injunction Against Prohibited Conduct* (ECF #17, Case No. 20-23354-BKC-LMI (the "Mcfarland Case")) (the "Mcfarland Motion") address concerns raised by the practices of the Semrad Law Firm. The McCoy Motion, the Brown Motion and the Mcfarland Motion shall be referred to collectively as the "Motions". The Court held a hearing on the McCoy Motion and Mcfarland Motion on February 22, 2021 at 1:30 p.m. and on the Brown Motion on March 3, 2021 at 9:30 a.m. (collectively the "Hearings"), where the Court considered the Motions, the responses.[2] and arguments of counsel.

**The McCoy Case**

Lavonia Valerie McCoy ("Ms. McCoy") filed her chapter 7 bankruptcy case on July 30, 2020 (the "McCoy Petition Date"). On June 30, 2020, Ms. McCoy executed a Contract

---

[2] *See Response to United States Trustee's Amended Motion for Examination [\*\*6] of Fees* (ECF #22, Case No. 20-23354); *Response to United States Trustee's Amended Motion for Examination of Fees* (ECF #26, Case No. 20-23632); *Response to The United States Trustee's Motion for Examination of Fees of Chad T. Van Horn and Van Horn Law Group Under 11 U.S.C. Section 329(b); Federal Rules of Bankruptcy Procedure Rule 2016 and 2017; and for an Injunction Against Prohibited Conduct (DE 37)* (ECF #43, Case No. 20-18268).

for Prepetition Legal Services in a Chapter 7 Bankruptcy Case (the "McCoy Prepetition Agreement")[3] and on July 30, 2020, Ms. McCoy executed a Contract for Postpetition Legal Services in a Chapter 7 Bankruptcy Case (the "McCoy Postpetition Agreement").[4] The Disclosure of Compensation of Attorney for Debtor (ECF #5) (the "Form 2030 Fee Disclosure"), required to be filed by all attorneys representing debtors, states that the Van Horn Law Firm agreed to accept $2,235.00 for the described legal services, and that Ms. McCoy made a payment $335.00 prior to the McCoy Petition Date, leaving a "balance due" in the amount of $1,900.00. In the Form 2030 Fee Disclosure, in addition [\*87] to the pre-printed legal services described in the form, the Van Horn Law Firm [\*\*7] added the following:

> Includes, $335 filing fee, $15 for Pre-Consumer Credit Counseling fees, $10 Post Credit Counseling Fee Courses, $75 Credit Report retrieval fee, and other estimated expenses of $150 as prescribed by the guidelines for compensation for professional services or reimbursement of expenses by Attorneys. Representation of the Debtor in Negotiation with the Trustee; Motions to Reopen Case; Review & Attendance, if necessary, to Motions for Relief from Stay; Review of Redemption Agreements; Post-Discharge review of Debtor's credit report. Preparation and prosecution of Motions to Reschedule 341 Meeting of Creditors; Attendance at Continued 341 Meeting of Creditors; Amendments to Statements or Schedules; Preparation of demand letters to garnishing creditors; Preparation and defense of an Objection to a Motion for Relief from Stay. Review of Student Loans.

The McCoy Prepetition Agreement provides:

> **Before the bankruptcy case is filed** I understand that the fee of **$335.00** is to be paid pursuant to the terms of this Contract as a flat fee . . . in exchange for a commitment by VHLG to provide the legal services described above . . . . **After the bankruptcy case is filed,** I understand [\*\*8] that I will be presented with a second retainer agreement to pay VHLG $1,900 for attorney's fees, which include any pre and post-petition costs to represent my interests, including: preparation and amendment, of schedules; preparation and attendance of the Section 341 Meeting of Creditors; review and attendance, to motions for stay relief; review of any redemption agreements; review of any

---

[3] The McCoy Prepetition Agreement is attached as Exhibit A to the McCoy Motion.

[4] The McCoy Postpetition Agreement is attached as Exhibit B to the McCoy Motion.

reaffirmation agreements; case administration and monitoring; if necessary; as well as a post-discharge review of my credit report to ensure accurate reporting.

The McCoy Prepetition Agreement also provides:

For the fee established in this agreement and the post-petition retainer, we agree to provide to you basic legal services in connection with your case. Basic services include, but are not limited to, advice to You before and during the case concerning the nature and effect of Chapter 7 bankruptcy; preparation and filing of statements and schedules; We will attend Your meeting of creditors; prepare any valid, supportable defense in the event of a motion to dismiss or motion for relief from stay; and We will prepare any request by You to add creditors, incur credit or suspend payments. Other basic services [**9] such as negotiating with creditors during the life of the plan, submitting requests for payment reports from the Trustee, and other regular and routine services not specifically stated are included without additional charge to you.

The McCoy Postpetition Agreement provides:

As to the dischargeability of pre-filing fees, VHLG acknowledges that if any fees were owed prior to filing the bankruptcy, they are hereby uncollectable and will be discharged.

In consideration of VHLG's post filing services, I agree to pay and VHLG agrees to accept $1,900 in attorney's fees'. The scopes [sic] of the services are outlined below. I further understand and agree that additional professional legal services will result in additional fees that are due. I understand that the fee is to be paid pursuant to the terms of this Contract as a flat fee, and this fee shall [*88] immediately become property of VHLG in exchange for a commitment by VHLG to provide the legal services described above. Said funds will be deposited into the main bank account owned by VHLG and will be used for general expenses.

In the event you fail to timely pay the Post-Filing Fixed Fee, VHLG may file a motion with the Bankruptcy Court requesting [**10] permission to withdraw as your counsel. You have the right to terminate this Fee Agreement at any time, and in such event, VHLG is not obligated to return any portion of the fee paid.

I further understand that I have a fourteen (14) day right of rescission of this agreement. In the case of rescission, I will notify VHLG within fourteen (14) days of executing this agreement and VHLG will no longer have any liability for representing me and I will not be liable for any fees herein.

The McCoy Postpetition Agreement identifies a detailed list of services to be provided postpetition.[5]

_____

[5] **POST-FILING SERVICES/POST-FILING FEES**

Preparation and filing the remainder of your required post filing bankruptcy documents, including (if necessary):

1. Statement of Financial Affairs (Official Form 7);

2. Schedules A through J and Perjury Statement of Schedules signed by debtors (Official Forms 6A-6J);

3. Summary of Schedules (Official Form 6 Summary);

4. Statistical Summary of Certain Liabilities (Official Form 6 Summary);

5. Disclosure of Compensation of Attorney for Debtor (Official Form B203);

6. Statement of Current Monthly Income and Means Test Calculation (Official Form 22 A);

7. Chapter 7 Individual Statement [**11] of Intention (Official Form 8);

8. Certification of Completion of Instructional course concerning personal financial management (Official Form 23) and certificate of course provider;

9. Providing the necessary documentation including tax returns and pay advices to the Trustee in advance of Your Meeting of Creditors;

10. Review and attendance, if necessary, to motions for stay relief; review of any redemption agreements;

11. Preparation and attendance of the *Section 341* Meeting of Creditors;

12. Telephone conferences with You, the Trustee, Trustee's counsel, creditors and any other interested parties relating to the case; legal research and preparation of correspondence necessary to represent You in post filing matters;

13. Providing You the necessary information to enable You to complete the required post filing financial management class;

14. Preparation and amendment, if necessary, of schedules;

15. Review of any reaffirmation agreements;

16. Case administration and monitoring;

17. Motion to reopen, if necessary;

18. Attendance of 2004 Examination with Trustee;

19. Compliance with random US Trustee Audit;

20. A post discharge review of my credit report to endure accurate reporting;

Case 20-03131-hb    Doc 85-6    Filed 05/19/22    Entered 05/19/22 15:45:10    Desc  Case 6    Page 10 of 22

631 B.R. 77, *88; 2021 Bankr. LEXIS 1598, **11

Ms. McCoy received her discharge on November 18, 2020 (ECF #35, Case No. 20-18268-BKC-LMI).

### The Mcfarland Case

Charmeen Mcfarland ("Ms. Mcfarland") filed a chapter 7 bankruptcy case on December 7, 2020 (the "Mcfarland Petition Date"). Ms. Mcfarland signed an engagement agreement with the Semrad Law Firm on December 4, 2020 (the "Mcfarland **[*89]** Prepetition Agreement")[6], but did not pay the Semrad Law Firm any money prepetition. On January 13, 2021, after the 341 Meeting of Creditors.[7] Ms. Mcfarland signed a second agreement for the postpetition services (the "Mcfarland Postpetition Agreement").[8]

The Mcfarland Prepetition Agreement identifies certain services that will be provided prepetition and the fee associated with those services.[9] The Mcfarland Prepetition

---

21. Review of student **[**12]** loans;

22. Preparation and prosecution of a Motion Appear Telephonically at the 341 Meeting;

23. Preparation and prosecution of a Motion to Reschedule 341 Meeting;

24. Attendance at a continued 341 Meeting;

25. Preparation of amendments to Statement or Schedules;

26. Preparation of demand letter to a garnishing creditor;

27. Preparation and defense of an Objection to a Motion for Relief from Stay....

[6] A copy of the Mcfarland Prepetition Agreement is attached as Exhibit A to the Mcfarland Motion.

[7] At oral argument, the Semrad Law Firm stated this delay was a mistake; normally the debtor signs a postpetition agreement as soon as the petition has been filed.

[8] A copy of the Mcfarland Postpetition Agreement is attached as Exhibit B to the Mcfarland Motion.

[9] a. **Before** the case is filed, the Firm agrees to:

i. Personally counsel you regarding the advisability of filing either a Chapter 13 or a Chapter 7 case, discuss both procedures as well as nonbankruptcy options, and answer your questions;

ii. Personally explain to you that the Firm is being engaged to represent you on all matters arising in the case, as required by Local Bankruptcy Rule, and explain how and when the attorney's fees are determined and paid;

iii. Personally review with you and sign the completed petition,

---

Agreement also identifies certain services that **[**13]** will be provided postpetition and the fee associated with those services..[10]

---

statements, and schedules;

iv. Timely prepare and file your petition, statements, and schedules;

v. Advise you on which creditors you will need to continue to pay, such as housing or vehicle payments that you intend to retain.

b. The fee for services provide [sic] before the case is filed is $0

c. The Firm may also incur costs for such items as credit reports and tax transcripts for which it will not seek reimbursement.

[10] a. **After** the case is filed, the Firm agrees to:

i. Advise you of the requirement to attend the meeting of creditors and notify you of the date, time, and place of the meeting;

ii. Advise you of the requirement to attend a debtor education course and provide a certificate of completion to the Firm;

iii. Send notice of your case filing to creditors;

iv. Correspond with creditors regarding any matters necessary for the administration of your case, including to cease **[**14]** payroll garnishments, unfreeze bank accounts, or recover property that was improperly seized by a creditor;

v. Timely submit to the Chapter 7 trustee properly documented proof of income, tax records as well as any other necessary documentation;

vi. Provide you with knowledgeable legal representation at the meeting of creditors as well as any continued or rescheduled meetings in time for check-in and examination;

vii. Timely prepare and file the notice of completion of the debtor education course;

viii. If the Firm will be employing another attorney to attend the meeting of creditors, personally explain to you, in advance, the role and identity of the other attorneys and provide that attorney with your file in sufficient time to review it and properly represent you at the meeting;

ix. Timely negotiate with the Trustee regarding any property or actions that the Trustee may pursue that could be adverse to your interests;

x. Timely prepare, file, and serve any necessary statements, amended statements, amended schedules and any change of address, in accordance with information provided by you;

xi. Monitor all incoming case information, including but not limited to, Reaffirmation agreements, notice **[**15]** of audits by the US Trustee, correspondence from you or any interested

Case 20-03131-hb   Doc 85-6   Filed 05/19/22   Entered 05/19/22 15:45:10   Desc  Case 6   Page 11 of 22

631 B.R. 77, *90; 2021 Bankr. LEXIS 1598, **15

**[*90]** The Mcfarland Postpetition Agreement includes the same nineteen services for "postpetition fees" previously listed in the Mcfarland Prepetition Agreement and adds the following:

> xx. Provide post discharge services such as a review of **[**16]** Client(s)' credit report and advising Client(s) regarding possible discharge violations that may have occurred.
> b. The fee for services provided after the case is filed is $1,600.

The Mcfarland Postpetition Agreement provides that the fees owed postpetition are to be paid by the Debtor in monthly installments.

The Form 2030 Fee Disclosure (ECF #4) disclosed that the

---

> parties;
>
> xii. Review and negotiate, if necessary, any reaffirmation agreements and personally explain the terms of said agreements to you;
>
> xiii. Be available to respond to your questions throughout the term of the case;
>
> xiv. Review and timely respond, if necessary, to Trustee motions to dismiss the case;
>
> xv. Review and timely respond, if necessary, to motions for relief from stay;
>
> xvi. Prepare, file, and serve all appropriate motions to avoid liens;
>
> xvii. Prepare, file, and serve all appropriate motion [sic] to redeem;
>
> xviii. Send *In Re Mendiola* letters to previously undisclosed creditors; and
>
> xix. Provide any other legal services necessary for the administration of the case.

b. The fee for services provide [sic] after the case is filed is $1,262

c. The firm will have no right to payment of the fee listed in section 4(b) unless you sign an agreement after the filing of your bankruptcy case to pay the Firm for services rendered after the filing of your case.

d. After the case is filed, the Bankruptcy Court will require payment of filing fees in the amount of $335.00. In order to pay this, you have two (2) options (please circle one):

> i. Pay the costs directly to the bankruptcy court either all at once, or apply to pay these costs in installments; or
>
> ii. Request that the Firm pay the costs on your behalf for which it will seek reimbursement from you....

Semrad Law Firm had agreed to accept $1,262.00.[11] for legal services and that Ms. Mcfarland had made a payment of $0 prior to the Mcfarland Petition Date, leaving a balance due in the full amount of $1,262.00. Nowhere on the Form 2030 Fee Disclosure is there any indication that the fee will be paid monthly. Nor does the Form 2030 Fee Disclosure modify the undertakings identified in the pre-printed form.[12]

### The Brown Case

The Brown Case is substantially similar to the Mcfarland Case. Cheryl Brown ("Ms. Brown") filed her chapter 7 bankruptcy case on December 15, 2020 (the "Brown Petition Date"). The Form 2030 Fee Disclosure (ECF #4) stated that the Semrad Law Firm agreed to accept $1,362.00 for legal services, and that Ms. Brown made a payment of $0 prior to the Brown Petition Date, leaving a "balance due" in the full amount **[**17]** of $1,362.00. On December 14, 2020, Ms. Brown executed an engagement agreement.[13] with the Semrad Law Firm virtually identical to the one that had been signed by Ms. Mcfarland (the "Brown Prepetition Agreement").[14] On December 15, 2020, immediately after her bankruptcy petition was filed, Ms. Brown signed a second agreement for the postpetition services (the "Brown Postpetition Agreement"), which was virtually identical to the Mcfarland Postpetition Agreement.[15] **[*91]** Ms. Brown agreed to pay $1,700.00.[16] in monthly installments.

### ANALYSIS

---

[11] The increase from $1,262.00 to $1,600.00 represents Ms. Mcfarland's obligation to repay the Semrad Law Firm the filing fee.

[12] *See infra* note 18.

[13] A copy of the engagement agreement is attached as Exhibit A to the Brown Motion.

[14] Ms. Brown never "circled" her selection in paragraph "d" of the Brown Prepetition Agreement, which addresses the filing fee options. However, according to the UST, Ms. Brown "testif[ied] at the continued Meeting of Creditors that the decision to borrow funds from [Semrad] was made prior to the [Brown Petition Date] and it was always included in the fee arrangement." (*See* Brown Motion at ¶15).

[15] A copy of the Brown Postpetition Agreement is attached as Exhibit B to the Brown Motion.

[16] This amount includes the $338.00 filing fee. The filing fee increased from $335 to $338 on December 1, 2020.

The UST has objected to the following business practices: "(1) the marketing of no or little money down Chapter 7 bankruptcy cases; (2) the bifurcation of bankruptcy services into pre-petition and post-petition components; (3) the performance of 'limited' pre-petition services for, purportedly, little or no charge; and (4) the post-petition collection of fees for purported postpetition services in an amount disproportionate to the services provided" in an "attempt to increase [their] client base and collect attorney fees for bankruptcy services through post-petition payments." (*See* McCoy Motion at 1; Mcfarland Motion at 1-2; Brown Motion at 1-2). In the Brown Motion, **[\*\*18]** the UST also objects to the Semrad Law Firm paying the filing fee for the Debtor, which filing fee was later repaid post-petition by the Debtor through monthly payments. (*See* Brown Motion at 2).

The UST argues that the Law Firms' fees are not compensable under *11 U.S.C. § 329(b)* or *Local Rule 2090-1(E)*, and that the advancing of filing fees violates *11 U.S.C. § 526* and Rule 4-1.8(e) of the Rules Regulating the Florida Bar. The UST also argues that the Law Firms failed to comply with the filing and disclosure requirements of *Fed. R. Bankr. P. 2016* and that the Debtors' Schedule Js were inaccurate because the postpetition fees were not listed as expenses. Most importantly however, the UST asks, as do the practitioners, for guidance from this Court on how to view bifurcation agreements in chapter 7 cases.

The issues before the Court may be summarized as follows:
  ☐ Should bifurcation of fees be allowed at all?
  ☐ What is a reasonable prepetition fee versus a postpetition fee?
  ☐ What happens if the Debtor doesn't sign a postpetition fee agreement?
  ☐ What disclosures should be made to the debtor about a bifurcated fee arrangement?
  ☐ What disclosures must be made to the court about the bifurcated fee arrangement?
  ☐ Can the law firm advance filing fees on behalf of the debtor?

### The Concept [\*\*19]  of Bifurcation

*HN3*[⬆] ] The phrase "bifurcation of fees" in bankruptcy refers to the practice of separating services provided to a client into services provided prepetition and postpetition. Some services are provided prepetition for one fee (whether a flat fee or based on an hourly charge), which is paid before the bankruptcy petition is filed, and then any additional services that are provided postpetition are charged for, and paid for, postpetition.

The UST specifically stated it is NOT, at this time, arguing that fee bifurcation in chapter 7 cases should be prohibited. And that makes sense because fee bifurcation occurs regularly in chapter 7 cases, as well as in other bankruptcy cases. Many law firms charge a flat fee that is paid in advance for filing a debtor's chapter 7 petition, preparing the schedules and statement of financial affairs, and attending the 341 meeting. These agreements typically exclude any postpetition representation such as attendance at 2004 examinations, **[\*92]** reviewing or defending motions for stay relief, or representation with respect to adversary proceedings, absent the debtor paying an additional fee for the separate retention.[17] While individual retainer agreements **[\*\*20]** vary, for the most part the services to be provided in general chapter 7 consumer retainer agreements are the same as those listed in paragraph 5 of the Form 2030 Fee Disclosure.[18] After the bankruptcy case is filed, if the debtor requires additional services, counsel will seek additional fees. If the debtor cannot pay those fees, the attorney will usually move to withdraw.

What should be the allowable framework for the bifurcation of fees for basic chapter 7 consumer bankruptcy legal services? Can the "no money down" or "low money down" models ever satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Rules Regulating the Florida Bar (the "Florida Bar Rules"), or this Court's Local Rules? In arguing against and in favor of these models, the UST and the Law Firms have referred to the guidelines set forth **[\*\*21]** by Judge Williamson of the Middle District of Florida in *Walton v. Clark & Washington, P.C., 469 B.R. 383 (Bankr. M.D. Fla. 2012)* ("*Walton*").

In *Walton*, Judge Williamson approved a bifurcated fee arrangement that met the following conditions:
  a. The "two-contract procedure" disclosure currently on

---

[17] Under this Court's Local Rules, however, any attorney of record for the debtor must assist the debtor with reaffirmation, redemption or surrender decisions regardless of whether the debtor pays an additional fee. See *L.R. 2090-1*.

[18] In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

  a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

  b. Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

  c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.

pages 4-5 of the prepetition agreement and page 5 of the postpetition agreement must be set forth on a separate cover page.

b. Firm clients must acknowledge that they have received and read the "two contract procedure" disclosure.

c. The client must execute the prepetition agreement before the bankruptcy case is filed and the postpetition agreement after the bankruptcy case is filed.

d. The postpetition agreement shall contain a provision notifying the client that (i) the client has the right to cancel the postpetition agreement—and all financial obligations arising under that agreement—at any time within 14 days after signing it; and (ii) the client may exercise his or her right to cancel the postpetition agreement by notifying [the law firm] in writing (at the address designated by the firm) within 14 days after signing the agreement of his or her intent to cancel the agreement.

e. [The law firm] shall include language in its initial *Rule 2016* disclosure stating that the **[**22]** firm will continue to represent the debtor in the case even where the debtor chooses not to retain the firm for postpetition services until the Court enters an order allowing the firm to withdraw from representation.

*469 B.R. at 387-88*.

**The Reasonableness of Fees**

Typically, in the bifurcated fee arrangements that have developed to address the chapter 7 fee challenge, only a small **[*93]** amount or nothing is charged to the client prepetition.[19] In the cases before the Court, meaningful services were provided prepetition for little or no charge. Postpetition additional services were provided, but at a cost that the UST has argued is excessive and unreasonable, especially compared to the low or non-existent prepetition charge. Thus, the UST questions whether the postpetition fees are reasonable under *section 329*.

The UST argues that if a lawyer does what a lawyer is supposed to do prepetition - meet with the client to determine which chapter of bankruptcy, or bankruptcy at all, is in the

---

[19] When used in this portion of the opinion, the phrase "bifurcated fee arrangement" is intended to refer to the bifurcated fee arrangement for basic consumer chapter 7 legal services, where no money is paid in advance, or only a small amount of money is paid in advance.

client's best interest and complete the debtor's schedules and statement of financial affairs, as well as all other documents required to be filed with the petition - there won't be much to do postpetition that is not ministerial. Thus, the UST **[**23]** argues, bifurcation is just a disguised way to pay for prepetition services postpetition. Looking at the postpetition fees through the lens of *section 329*, the UST argues that the postpetition fees are clearly unreasonable. If, in fact, most of the services *were* provided postpetition, then, the UST argues, the Law Firms failed to competently represent their clients prepetition. Additionally, if the Law Firms failed to perform the appropriate diligence prepetition, the Law Firms may have violated *Fed. R. Bankr. P. 9011* when filing the petitions.

In each of the cases before the Court, the Law Firms pointed out that all appropriate prepetition counseling and interviewing took place and all documents were completed prior to filing.[20] Debtors' counsel stated that there is nothing requiring them to charge a minimum amount for prepetition services. The Law Firms both argue that there are many services included in the description of postpetition services for which other law firms, using the traditional fee structure, charge, such as representing the client at a 2004 examination, amendments to the bankruptcy schedules, or defending motions for stay relief.

*HN4*[⬆] There is no question that using the postpetition agreements to pay for **[**24]** prepetition services is not acceptable, since that is merely seeking to do indirectly what is prohibited directly. See *Hazlett, 2019 Bankr. LEXIS 1166, 2019 WL 1567751, at *9* ("[F]ees for pre-petition services should not be directly or surreptitiously slipped into the fee charged for postpetition services. If this happens, it could be cause for disgorgement under *§ 329* or other sanctions.")

The UST's argument falls short because it measures the reasonableness of the postpetition fee solely by comparing the charge to the fee for the services and charges prepetition. However, that is not the appropriate test. *HN5*[⬆] In *In re Carr, 613 B.R. 427 (Bankr. E.D. Ky. 2020)*, Judge Wise held that the reasonableness of the prepetition fees and the postpetition fees must be analyzed on the basis of the services provided with respect to each flat fee, not compared to each other. "[The Chapter 7 Trustee] assumes, in effect, that the Attorneys must charge Debtor a comparable hourly rate for prepetition and postpetition work. This is incorrect. The **[*94]** Attorneys essentially agreed to perform prepetition services for one flat rate and postpetition services for a second flat rate. No party has argued that either flat rate was

---

[20] The cases were unremarkable and each of Ms. Mcfarland, Ms. Brown and Ms. McCoy received their bankruptcy discharges.

Case 20-03131-hb   Doc 85-6   Filed 05/19/22   Entered 05/19/22 15:45:10   Desc  Case 6   Page 14 of 22

631 B.R. 77, *94; 2021 Bankr. LEXIS 1598, **24

unreasonable." *In re Carr, 613 B.R. at 439*. The Court agrees; reasonableness is not gauged by a comparison between the **[\*\*25]** prepetition charges and the postpetition charges.

The UST focuses on the services described in the Fee Agreements.[21] that the Law Firms are to provide prepetition and postpetition. The UST argues that the description of services in the prepetition agreements and the postpetition agreements seem to be the same in some instances, creating confusion.[22] The UST also argues that the postpetition agreements should not include services that will *never* be provided to a particular debtor (e.g., defending a motion for stay relief if the debtor does not have any secured creditors). The UST also argues that, for purposes of determining the reasonableness of the postpetition fees, the services that *might* have been needed (2004 exam, schedule amendments, etc.) but were not, in fact, provided, should not be included. In sum, according to the UST, reasonableness can only be assessed by looking at the actual work performed, and the value of the actual services performed.

*HN6*[↑] However, "reasonableness" of a flat fee arrangement is assessed differently than reasonableness evaluated through an hourly rate. *See, e.g., In re Dabney, 417 B.R. 826, 831 (Bankr. N.D. Ga. 2009)*.

> Because a flat fee encompasses all required services and the extent of required services is not **[\*\*26]** fully predictable at the outset of a case, the reasonableness of a flat fee cannot necessarily be determined based on the amount of services required in the case. Nevertheless, the amount of a proposed flat fee must bear some relationship to the work that will likely be required, which inevitably depends on the unique facts and circumstances of the case.

*Id.*

*HN7*[↑] The Court holds that it will review the reasonableness of the postpetition flat fee charged by each of the Law Firms by taking into account not only the work that was done but also the services that might have been required in the case for which there would have been no additional

charge.[23] The Court agrees that in determining the reasonableness of the flat fees charged by the Law Firms the Court should not consider services that would not possibly arise in the case, such as dealing with student loan issues when the debtor does not have student loans.[24]

## The Obligation of Competency and the Issue of Unbundling

In addition to the need for clarity regarding what services are being provided for the prepetition flat fee and the postpetition flat fee, there is the issue of what **[\*95]** services must be included as part of the prepetition **[\*\*27]** services - the services an attorney *must* provide when retained by a consumer debtor, regardless of whether the debtor signs a postpetition retainer agreement.

If there are certain services that must be provided prepetition, then any of those services promised postpetition cannot be considered in determining the reasonableness of the postpetition flat fee charge. That in turn leads to the question of whether the services provided prepetition meet the standards of competency required by the Florida Bar Rules and the requirements of *Fed. R. Bankr. P. 9011(b)* and *11 U.S.C. § 707(b)(4)*.[25]

---

[23] The reasonableness of any postpetition fees charged at an hourly rate for postpetition services will continue to be assessed under the traditional standards for determining the reasonableness of hourly fees not subject of *11 U.S.C. § 330*. *See Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974)*.

[24] This does not mean these types of services must be excluded from the list of services to be provided "if necessary." *See, e.g.*, the McCoy Postpetition Agreement.

[25] *Section 707(b)(4)* provides:

> **(C)** The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has--
>
> > (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> >
> > (ii) determined that the petition, pleading, or written motion--
> >
> > (I) is well grounded in fact; and
> >
> > (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

---

[21] "Fee Agreements" refers collectively to all of the fee agreements that are the subject of this opinion.

[22] In each of the three cases, there is some blurring of, and therefore ambiguity in, the description of what services are provided regardless of whether the Debtors agree to sign the postpetition agreement. The need for more clarity will be discussed below.

Case 20-03131-hb   Doc 85-6   Filed 05/19/22   Entered 05/19/22 15:45:10   Desc  Case 6   Page 15 of 22

631 B.R. 77, *95; 2021 Bankr. LEXIS 1598, **27

_HN8_[⬆] In determining the answer to these questions, courts must consider what services are required in any representation, whether required by applicable state professional bar rules, the Bankruptcy Code and Bankruptcy Rules, and that court's local rules.

**Competency**

Rule 4-1.1 of the Florida Bar Rules states that:

> A lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

The comment to Rule 4-1.1 notes that:

> Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners.

Thus, there is no question that an attorney must meet with a potential bankruptcy client and review sufficient information to competently advise the potential client whether to file bankruptcy and, if so, under what chapter.

**Unbundling**

Rule 4-1.2 of the Florida Bar Rules states that:

> **(c) Limitation of Objectives and Scope of Representation**. If not prohibited by law or rule, a lawyer and client may agree to limit the objectives or scope of the representation if the [**29] limitation is reasonable under the circumstances and the client gives informed consent in writing.

"Informed consent" and "reasonable" are both defined in the Florida Bar Rules. _HN9_[⬆] "Reasonable" is defined as "conduct of a reasonably prudent and competent lawyer." "Informed consent" is defined as follows:

> "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

---

**(D)** The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the [**28] information in the schedules filed with such petition is incorrect.

[*96]   _HN10_[⬆] What a "reasonably prudent and competent" chapter 7 consumer practitioner should do is framed by the Bankruptcy Code and this Court's Local Rules. This Court's _Local Rule 2090-1(E)_ states that an attorney who makes an appearance in a case on behalf of a debtor is required, at a minimum, to assist the debtor with respect to all of his or her obligations under _11 U.S.C. § 521_. _Section 521_ contains many requirements, some of which are prepetition requirements such as filing the list of creditors, some of which are postpetition requirements such as providing documents to the trustee, and some of which should take place prepetition but often do not, such as filing the bankruptcy schedules, [**30] the statement of financial affairs, and payment advices. _Local Rule 2090-1(E)_ requires counsel of record to perform all _section 521_ responsibilities unless and until the Court permits the attorney to withdraw.

Both Law Firms acknowledge that, regardless of whether the debtor signs a postpetition agreement, the firm is attorney of record for the debtor until the firm is allowed to withdraw, meaning that the firm is responsible for representing the debtor.[26] if withdrawal has not been approved by that date.

Several of the other bankruptcy courts that have looked at the issue of what core services must be provided if a lawyer accepts a consumer bankruptcy case have looked to both the courts' local rules and the state's bar rules. In _In re Slabbinck, 482 B.R. 576 (Bankr. E.D. Mich. 2012)_, the court framed the analysis as what are the "services . . . necessary to achieve the basic, fundamental objectives of the representation." _482 B.R. at 584_ (quoting _In re Egwim, 291 B.R. 559 (Bankr. N.D. Ga. 2003)_). The _Slabbinck_ court agreed with the _Egwim_ court that the fundamental objectives for a chapter 7 consumer debtor are to obtain his or her discharge and retain his or her exempt assets.[27] _HN11_[⬆] But, the _Slabbinck_ court held, neither the Bankruptcy Code nor the applicable Michigan Rules of Professional Conduct "requires that the attorney represent [**31] the individual debtor in _all_ matters necessary to pursue the client's ultimate objective." _Slabbinck, 482 B.R. at 592_. The court concluded:

---

[26] Attending the 341 meeting is not listed in _section 521_. The Law Firms include attendance at the 341 meeting as a postpetition service, one that they do not need to provide if the debtor does not sign an agreement to provide postpetition services. However, both Law Firms acknowledge they must represent the debtors at the 341 meeting if they have not been permitted to withdraw.

[27] The _Slabbinck_ court disagreed with the _Egwim_ court's ultimate holding that, except under very limited circumstances, a consumer chapter 7 lawyer is "all in" including representation of debtors for all adversary proceedings.

[C]ompetence of a Chapter 7 debtor's attorney is most appropriately evaluated by looking at the actual work that was agreed to be performed and then was performed by the attorney, not by looking at the remaining work that will have to be done to complete the case when the individual has not hired the attorney to perform those services and the attorney has not performed those services.

*Id. at 593*.[28]

In *Hazlett*, the court was required to consider this issue in the context of its court's *Local Rule 2091-1*, which rule requires that an attorney represent a debtor **[*97]** in all aspects of the case, including adversary proceedings.[29] The court held that the rule is not violated if the *debtor* chooses not to continue with the attorney postpetition.[30] The court did not provide concrete guidance on how those services must be bifurcated other than to note that the debtor and counsel both must be fully informed regarding the appropriateness of bankruptcy as an option, and, if so, under which chapter of the Bankruptcy Code the case should be filed.

In *Carr*, the court held the following prepetition services were adequate: preparing and filing the petition and the creditor

matrix, the application to pay the filing fee in installments, and the statement of attorney compensation.[31] *613 B.R. 427 at 431-32*.

But in *In re Prophet, 628 B.R. 788, 2021 Bankr. LEXIS 820, 2021 WL 1186187 (Bankr. D.S.C. 2021)*, the court rejected the holdings of all of the above cases, determining that under *section 707(b)(4)* and that court's own local rule.[32], an attorney who filed a bankruptcy case on behalf of a debtor was required to represent the debtor in all matters relating to the representation except for adversary proceedings and appeals. The *Prophet* court required the attorney to return to the debtors all fees that he had received postpetition in accordance with signed postpetition agreements. *Id. at *11*.

**HN12**[⬆] To address the issues of competency and unbundling, this Court holds that any lawyer choosing to represent a debtor must comply with the Bankruptcy Code, the Bankruptcy Rules, the Florida Bar Rules, and this Court's Local Rules. These statutes and rules collectively require sufficient inquiry by the attorney, not staff, when initially meeting with a **[*98]** client to ascertain whether filing bankruptcy is the appropriate relief, determining under **[**33]** what chapter a bankruptcy case could or should be filed, and additionally compel the attorney to adequately inform a potential debtor of the consequences of that choice. Further, the attorney must assist the debtor with all of the debtor's obligations under *section 521* unless he or she is permitted to withdraw. The attorney must prepare and file all documents necessary to commence the bankruptcy case, which includes, at a minimum, the petition, the creditor's

---

[28] The court noted that chapter 13 practitioners frequently file "bare bones" petitions, filing the balance of the schedules and other documents postpetition. The court observed there is no "principled basis to hold that an attorney who files a bare bones Chapter 7 petition for a pre-petition fee . . . is automatically acting less competently." *Id.*

[29] *U.S. Bankruptcy Court, District of Utah Local Rule 2091-1* provides: "Scope of Representation. A debtor's attorney must represent and advise the debtor in all aspects of the case, including the *§ 341* Meeting, motions filed against the debtor, reaffirmation agreements, agreed orders, and other stipulations with creditors or third parties, and post-confirmation matters. The debtor's attorney must also represent the debtor in adversary proceedings filed against the debtor unless, pursuant to this rule, the Court has excused the attorney from this requirement. *The scope of representation cannot be modified by agreement*." (emphasis added).

[30] The Utah State Bar issued an ethics opinion on the use of "zero down" bankruptcy filings, bifurcated fee agreements, and the factoring of attorney's fees, including whether and when such arrangements involved impermissible unbundling. The court made clear that unbundling, while permitted by the Utah bar rules, was not **[**32]** permitted under *Local Rule 2091-1*, but that a bifurcated fee arrangement, where only the timing of services and the associated payment are separate, is not unbundling. *Hazlett, 2019 Bankr. LEXIS 1166, 2019 WL 1567751, at *7-8*.

[31] Postpetition services in *Carr* were listed as: "Scope of Post-Filing Routine Services: Attorney shall: (1) meet with client; (2) review available documentation and information; (3) transmit required documents to the UST and to the chapter 7 trustee: (4) file any documents, lists, statements, applications required to complete the petition after reviewing such with client; (5) appear at the meeting of creditors; (6) draft and file not more than one responsive pleading to a motion for relief from stay; (7) take reasonable measures to retrieve any and all monies garnished within 90 days of the bankruptcy filing; (8) review and execute any reaffirmation or assumption of lease agreements; (9) arrange for the required financial management course; and (10) pay filing fee of $335.00. (the 'post-filing routine services')." *613 B.R. 427 at 432*. Certain other matters, such as adversary proceedings, would be provided at an hourly rate. *Id. at 432-33*.

[32] The *Prophet* court acknowledged a South Carolina ethics rule allowing limited representation, similar to Rule 4-1.2 of the Florida Bar Rules, but rejected its applicability in light of the bankruptcy court's local rule regarding the required scope of representation.

matrix, any motion to waive or pay the filing fee in installments, the statement of attorney compensation, and the Debtor Credit Counseling Certificate, or, if applicable, a motion to waive the need to file or file late, the certificate (collectively the "Minimum Required Documents"). And finally, the attorney must attend the *section 341* meeting of creditors unless he or she is permitted to withdraw prior to the meeting.

*HN13*[⬆] The Court recognizes that there are circumstances in which a debtor comes to the attorney on an emergency basis and the attorney must file a bare bones petition. But even in that circumstance the attorney and the debtor must be sufficiently informed prior to filing the petition to comply with *Rule 9011*, and certain documents must be prepared **[**34]** and filed.

## Disclosure Issues - the Debtor

*HN14*[⬆] A fundamental premise of all the fee bifurcation cases is disclosure. "The propriety of using bifurcated fee agreements in consumer chapter 7 cases is directly proportional to the level of disclosure and information the attorney provides to the client and the existence of documentary evidence that the client made an informed and voluntary election to enter into a postpetition fee agreement." *Hazlett, 2019 Bankr. LEXIS 1166, 2019 WL 1567751 at *8*.

The issues of disclosure to the debtor include timing and clarity. When should the disclosures be given and how clear should the disclosures be? Is the disclosure misleading if it includes services that could not possibly ever be needed in a particular case, such as listing motions to value or objecting to a student loan claim? What about services that may or may not be required, such as attending a 2004 examination, or opposing a motion for relief from stay?

*HN15*[⬆] Rule 4-1.2 of the Florida Bar Rules requires that the limitation on scope of representation must be reasonable and the client give "informed consent in writing."

In *Carr*, the court found that the separate fee agreements it reviewed complied with the disclosure requirements by specifically describing what services were being provided prepetition **[**35]** and what services were being provided postpetition. The approved prepetition agreement also clearly described to the debtor what the debtor's options were if the debtor chose not to enter into a postpetition agreement with the attorney.[33] The agreement also disclosed that if the debtor

---

[33] Similar to the local rules discussed in all of the above cases as well

did not pay the postpetition agreed-upon fees, the debtor could be sued for non-payment and the debt would not be discharged. The court in *Carr* also approved the postpetition description of excluded services, including adversary proceedings and motions for relief from stay, which, the agreement stated, would be charged at an hourly rate of $200.00.

**[*99]** In *Walton*, Judge Williamson held that the "two contract" disclosure must be set forth on a separate cover page and must clearly explain the debtor's three options: continue with current counsel, proceed pro se, or retain new counsel.

In *Hazlett*, the court found adequate a prepetition disclosure that clearly described the debtor's options before filing: (a) pay up front; (b) pay a small fee up front and, after the petition was filed, (i) sign a postpetition agreement with a certain fee, (ii) proceed pro se, or (iii) retain another firm; or (c) pay no money **[**36]** up front and (i) sign a postpetition agreement with a certain fee after the petition was filed, (ii) proceed pro se, or (iii) retain another law firm. In addition, the attorney provided the debtor with other extensive disclosures regarding bankruptcy filings, possible factoring of fees,[34] and the importance of providing true, complete, and accurate information in advance of filing the bankruptcy case.

In the instant cases, the UST argues that the description of prepetition services and postpetition services in the Fee Agreements overlap and were, to some extent, duplications, or include services that were never performed or would never have arisen in the case due to the nature of the Debtor's assets and liabilities. *HN16*[⬆] The Court recognizes that there are times when what would normally be a prepetition service, such as preparation of the bankruptcy schedules and statement of financial affairs, may occur postpetition, especially when the filing is an emergency filing. But in such a case, the disclosure must make clear that the particular service will be performed postpetition only if not completed prepetition. The agreement should also make clear whether amendments to documents are included **[**37]** in the fee, and if the amendment of certain documents is not included, what those

---

as this Court's Local Rules, an attorney is counsel of record until allowed to withdraw. In *Carr*, the court stated it did not need to address that rule since the attorney did not seek to withdraw from any of the cases.

[34] None of the Law Firms factored their fees so this opinion does not address the adequacy of any disclosures relating to factoring. However, the Court has determined that it will not allow any attorney to factor its legal fees. This creates an inherent conflict of interest between the attorney and the debtor, and violates R. Regulating Fla. Bar 4-5.4, 4-1.8, and 4-1.7.

documents are.

*HN17*[↑] With respect to the adequacy of disclosure to the debtor, the Court holds that the disclosures may include services that may or may not be performed, and services that at the time of retention are clearly not required, so long as the agreement makes clear that some of the listed services will not arise in a particular case. The issue of whether possible services were actually performed or could have ever been necessary is something the Court may consider in determining the reasonableness of the postpetition flat fee.

The postpetition agreement, if it is signed immediately following the petition, must include a 14-day rescission period and describe the consequences if the debtor rescinds the agreement. Alternatively, the debtor should be given a 14-day window after the petition is filed in which to sign a postpetition agreement. The prepetition agreement must disclose that regardless of whether the postpetition agreement is signed, the attorney must continue to represent the debtor unless allowed to withdraw.[35] If the postpetition agreement has a rescission clause, it must contain the same disclosure. **[**38]** And the postpetition **[*100]** agreement must clearly state that the obligation to pay fees under the postpetition fee agreement is not an obligation that will be discharged when the debtor receives his or her bankruptcy discharge.

*HN18*[↑] The debtor must be given a separate disclosure form that discloses he or she is being provided the option to choose the bifurcated fee arrangement, and whether the bifurcated fee arrangement will have a different cost than a flat fee arrangement paid in advance of the filing. The disclosure should also clearly describe the debtor's options, including the consequences of choosing a particular option: (a) sign the postpetition agreement and get the services described in that agreement at the stated cost (flat fee or hourly rate); (b) do not sign the agreement, and once the attorney is permitted to withdraw, proceed with the case without a lawyer; or (c) retain a new lawyer postpetition.

A final issue regarding disclosures is when the proposed agreements and disclosures should be presented to the debtor. *HN19*[↑] In order for a debtor to make a fully informed decision regarding his or her choices, the debtor must be presented with the separate disclosure, the prepetition agreement **[**39]** and the postpetition agreement when asked to sign the prepetition agreement. A debtor cannot make an

informed decision regarding a bifurcated arrangement without knowing what the "other side" agreement includes and requires. If the debtor signs the prepetition agreement the debtor must also sign the separate disclosure.

*HN20*[↑] Thus, the Court holds that disclosure to a potential client is adequate so long as

    a) The potential debtor receives the separate disclosure form;

    b) The prepetition agreement and postpetition agreement are provided at the same time for the potential debtor's review;

    c) The prepetition agreement clearly describes the services that must be performed prepetition as well as other services that may be provided; and

    d) The postpetition agreement clearly describes the included services (delineated, where appropriate as "if necessary"); and specifically describes the excluded services, and any additional flat fee or hourly charge associated with those excluded services.

### Disclosure Issues - the Court

*HN21*[↑] In addition to the critical importance of disclosure to the client, attorneys also must make sure that any bifurcated fee arrangement is properly disclosed to the Court and to parties **[**40]** in interest.

*HN22*[↑] *Bankruptcy Rule 2016* requires that every attorney for a debtor (regardless of whether the attorney is applying for compensation) shall file the statement required by *section 329*. *Section 329* requires a disclosure of the compensation paid or to be paid if the agreement was made within one year before the date of filing the petition for services rendered or to be rendered in contemplation of or in connection with the case, and the source of the compensation. While in each case before the Court the Form 2030 Fee Disclosure disclosed the fees paid and those agreed to be paid, none of the forms disclosed that the "to be paid" portions of the fees were contingent upon the debtor's execution of, or agreed to by virtue of, an agreement signed postpetition nor that the fees were to be paid on a monthly basis.

Both Law Firms acknowledge that the Form 2030 Fee Disclosure needs to be amended when and if a debtor signs **[*101]** a postpetition agreement, and, if the fees are being paid monthly, disclose the details of the monthly payment arrangement. The UST argues that the Form 2030 Fee Disclosure must be amended, and disclosure needs to be made, each time the law firm receives payment - meaning every month if payments are due monthly. **[**41]** The Court

---

[35] Each of the Fee Agreements in this opinion disclosed that counsel would continue to represent the Debtor postpetition until allowed to withdraw even if the Debtor did not sign the postpetition agreement.

631 B.R. 77, *101; 2021 Bankr. LEXIS 1598, **41

finds that this level of disclosure is not necessary so long as the form is amended when the postpetition agreement is signed, and that the amended form discloses the payments that will be made monthly.

HN23[ ] Schedule J requires that a debtor list all monthly expenses. The UST argues, and both Law Firms agree, that if a debtor signs the postpetition agreement and it includes a monthly payment, Schedule J must be amended to reflect the payment obligation, and then amended again, once the monthly payments are completed. The Court does not agree. Schedules I and J reflect information as of the petition date. As of the petition date, a chapter 7 debtor does not have an obligation to pay an attorney a fee postpetition. Once the debtor signs the postpetition fee agreement, the debtor's counsel must file the Form 2030 Fee Disclosure. There is no need to amend Schedule J.

### Timing and Rescission

HN24[ ] A postpetition fee agreement cannot be signed prepetition; otherwise it is a contract subject to rescission. However, a postpetition fee agreement signed immediately after the petition is filed does not provide the debtor with any meaningful opportunity to consider his or her options. Judge Williamson in [**42] *Walton* and other courts require some sort of "breathing room" for the debtor to sign or be obligated under the postpetition agreement. In *Walton*, Judge Williamson approved a 14-day rescission period. In *Carr*, the court approved a 14-day period between the petition date and the signing of the postpetition agreement. In each case, the law firm was required to continue representing the debtors until allowed to withdraw. The Court finds that it is necessary and appropriate for the debtor to have a rescission period. Therefore, any arrangement that gives the debtor a 14-day "cooling off" period, whether after the prepetition agreement is signed, or until the postpetition agreement must be signed, is acceptable to the Court.

### Financing the Filing Fees

Is the filing fee a prepetition or postpetition charge? Does a prepetition agreement by a debtor to reimburse the filing fee through a postpetition agreement violate *11 U.S.C. § 526* because the law firm is advising the debtor to incur debt in anticipation of bankruptcy or to pay for bankruptcy related legal services?

In the Brown Case and in the Mcfarland Case nothing was paid up front and the filing fees were paid by the Semrad Law

Firm at the time the petitions [**43] were filed and then repaid through the monthly payment.[36] The Semrad Law Firm argues that the filing fee is due postpetition and therefore, appropriately included as a postpetition charge, because CM/ECF does not actually charge the fee until all of the documents to file the case have been uploaded. [*102] However, the Semrad Law Firm acknowledged in oral argument that, regardless of whether the debtor signs the postpetition fee agreement, if the Semrad Law Firm doesn't pay the filing fee immediately, its CM/ECF privileges will be suspended until the fee is paid. HN25[ ] Moreover, *Fed. R. Bankr. P. 1006* requires that the filing fee "accompany" the petition.

The Semrad Law Firm relies on *Carr*. In *Carr* the court held that the payment of the filing fee by the law firm[37] which was repaid postpetition over time, was acceptable so long as the payments were applied first to the filing fee, as required by *28 U.S.C. § 1930*.[38],[39]

In addition to whether this type of fee repayment arrangement is prohibited by the Bankruptcy Code, the Court must consider whether the payment of the filing fee by a law firm with the expectation of repayment, either immediately or over time, violates R. Regulating Fla. Bar 4-1.8(e) which states that:

A lawyer is prohibited from providing [**44] financial

---

[36] The Van Horn Law Firm charged Ms. McCoy $335.00 in advance; the balance of any fees was only due upon execution of an agreement for postpetition retention. In oral argument, counsel for the Van Horn Law Firm alternatively argued that the $335.00 was the filing fee, (the filing fee on the McCoy Petition Date was $335.00) or was attorney fees with the filing fee paid postpetition (and financed through the monthly payments). The McCoy Prepetition Agreement makes clear the $335.00 was an attorney fee, not the filing fee.

[37] The *Carr* court distinguished the Eleventh Circuit's holding in *Cadwell v. Kaufman, 886 F.3d 1153, 1156 (11th Cir. 2018)*. In *Cadwell*, the Eleventh Circuit held that an attorney violates *section 526* if the attorney advises the client to use a credit card to pay attorney fees. The *Carr* court observed that "this prohibition does not prevent a debtor from paying their [sic] counsel's legal fees directly over time." *In re Carr, 613 B.R. at 437*.

[38] The court also held that because the outlay for the filing fee was repaid postpetition prior to paying any attorney fees, the arrangement did not violate *Fed. R. Bankr. P. 1006(b)(3)*.

[39] The UST argues that filing fees were really not an issue in *Carr* because the debtor paid the filing fee. The UST is not correct; the *Carr* court addressed the *section 526* issue directly.

Case 20-03131-hb    Doc 85-6    Filed 05/19/22    Entered 05/19/22 15:45:10    Desc  Case 6    Page 20 of 22

631 B.R. 77, *102; 2021 Bankr. LEXIS 1598, **44

assistance to a client in connection with pending or contemplated litigation, except that:

(1) a lawyer may advance court costs and expenses of litigation, the repayment of which **may** be contingent on the outcome of the matter; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

(emphasis added).[40]

The Semrad Law Firm argues that because subsection (e)(1) states that the repayment "MAY be contingent on the outcome of the matter" repayment does NOT have to be contingent on the outcome of the matter. Moreover, the Semrad Law Firm argues, as reflected in the comment to Rule 4-1.8(e), the purpose of advancing the fee on behalf of a debtor is, like advancing costs in a contingency fee case, an access to justice issue. The Semrad Law Firm acknowledges it has not found any case that has allowed (or disallowed) cost advances in a non-contingency lawsuit.

The Court finds that *HN26*[⬆] a law firm's payment of the filing fee with postpetition [*103] repayment by the debtor violates the Bankruptcy Code as well as the Florida Bar Rules.[41] The filing fee is due upon the filing of the

bankruptcy petition. Therefore, the debtor's obligation to repay the filing fee to the firm is a prepetition obligation that is dischargeable. A law firm that advances the fee with the expectation of repayment postpetition is violating *section 526* by advising the debtor to incur a debt "to pay for bankruptcy related legal services", violating *11 U.S.C. § 362* and, assuming the debtor [**46] gets his or her discharge, violating *11 U.S.C. § 524*.

Moreover, the payment of the filing fee is a violation of Rule 4-1.8(e).[42] The Court finds that the word "may" means that the attorney *may* advance costs the repayment of which is contingent on the outcome of the case, *not* that the attorney may always advance costs for a client regardless of whether the repayment is contingent on the outcome of the case. The interpretation advocated by the Semrad Law Firm renders Rule 4-1.8(e) meaningless.[43] *HN27*[⬆] The Rule addresses the access to justice issue[44] by authorizing cost advances in contingency fee cases and allowing an attorney to advance costs on behalf of an indigent client.[45] A bifurcation agreement, like any other fee arrangement, should give the debtor the three choices allowed by federal law: pay the fee up front, complete the paperwork to pay the filing fee in installments, or, if applicable, seek waiver of the filing fee.[46]

## APPLICATION TO THESE CASES AND THE REQUEST FOR INJUNCTIVE RELIEF

The Court will now examine the Fee Agreements.

In order to assess the reasonableness of the fees charged in

---

[40] The Comment to R. Regulating Fla. Bar 4-1.8 provides:

**Financial assistance**

Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because financial assistance gives lawyers too great a financial stake in the litigation. These dangers do not warrant a prohibition on a lawyer advancing a client court costs and litigation expenses, including the expenses of diagnostic medical examination used for litigation purposes and the reasonable costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients [**45] to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

[41] The Court is aware that law firms may be fronting the filing fees for debtors in cases filed under chapter 13. The rules discussed in this section apply to all chapters of the Bankruptcy Code. If a law firm is not paid the funds in advance to cover the filing fee or is not holding a retainer in its trust account sufficient to reimburse the cost

---

of the filing fee, the law firm should re-examine this practice.

[42] In *Carr*, the court held that the attorneys did not violate the Kentucky Rules of Professional Conduct by advancing the filing fee. The UST argues that the Kentucky Rules of Professional Conduct regarding financial assistance may be different than Florida's; they are not.

[43] The Court acknowledges that Rule 4-1.8(e) could be written more clearly. Perhaps the Florida Bar will consider rewriting this particular sentence so there is no question whether attorneys may advance filing fees and other court costs for clients in all cases.

[44] The comment to Rule 4-1.8(e) makes a distinction between paying a client's living expenses, which is never allowed, and advancing court costs and litigation expenses, which is permissible as provided in the Rule.

[45] If a debtor is indigent perhaps the attorney should take the case pro bono.

[46] *See 28 U.S.C. § 1930*.

Case 20-03131-hb   Doc 85-6   Filed 05/19/22   Entered 05/19/22 15:45:10   Desc Case
6   Page 21 of 22

631 B.R. 77, *103; 2021 Bankr. LEXIS 1598, **46

each of the three cases at issue, the Court must consider the services provided or promised by each firm prepetition and postpetition. As [**47] the Court has already noted, this determination is not driven by a comparison of the prepetition and postpetition fees charged, nor, since in each instance a flat fee was charged, solely on the services *actually* performed postpetition.

The McCoy Prepetition Agreement did not adequately describe what services the Van Horn Law Firm agreed to provide prepetition for the flat fee charged but rather used the phrase "basic services." Despite the lack of clarity of promised services, the Court finds that $335.00 is a reasonable fee for the prepetition **[*104]** services that were provided because the services included the initial client interview and the preparation of the bankruptcy schedules and the statement of financial affairs.

Turning to the postpetition services promised or actually performed, the Court notes that postpetition the Van Horn Law Firm attended the 341 meeting and negotiated a settlement agreement with the chapter 7 trustee. And, of course, Ms. McCoy ultimately succeeded in obtaining her discharge. The McCoy Postpetition Agreement also included (if necessary) at no additional charge attendance at any 2004 examination conducted by the chapter 7 trustee, review and attendance at hearings **[**48]** for motions for relief from stay, preparation of objections to and defense of such motions, and review of redemption and reaffirmation agreements.

Law firms that have been paid in advance of filing charge debtors extra fees for all of the services just described. Thus, the Court finds that the postpetition flat fee of $1,565.00 was reasonable for the actual services that Van Horn Law Firm performed and the potential services the Van Horn Law Firm would have provided if necessary for Ms. McCoy.

The Semrad Law Firm did a better job of describing its prepetition services. Prepetition the Semrad Law Firm performed an initial client interview and, in both cases also prepared the petition, the schedules, and the statement of financial affairs. Since the Semrad Law Firm charged Ms. Brown and Ms. Mcfarland a flat fee of zero dollars for its prepetition representation, the Court finds the prepetition flat fee was reasonable.

The Brown Case and the Mcfarland Case appear to have been unremarkable postpetition other than a continued 341 meeting, and so it appears that, other than attending the 341 meeting, and taking care of other matters generally incidental to getting a chapter 7 case to discharge **[**49]** and closing, the Semrad Law Firm did not have to do much postpetition

for either Ms. Brown or Ms. Mcfarland. The services that the Semrad Law Firm agreed to provide to Ms. Brown and Ms. Mcfarland for the flat fee paid postpetition included negotiating with the chapter 7 trustee regarding any property or actions adverse to the client, reviewing and negotiating reaffirmation agreements and motions to redeem, reviewing and responding to motions for stay relief, and preparing and serving any motions to avoid liens. All of these are services that other attorneys who get paid in advance would not provide without the payment of an additional fee postpetition. Thus, the Court finds that, based on the services performed and to be performed, if necessary, the Semrad Law Firm's postpetition flat fee of $1,262.00 in the Mcfarland Case and $1,362.00 in the Brown Case was reasonable and will be allowed.

The Van Horn Law Firm and the Semrad Law Firm each advanced the filing fee and other costs for the Debtors. Although this Order holds that this practice is not permitted under the Florida Bar Rules, the Court will not require the filing fees to be disgorged. However, the Law Firms may not, in any **[**50]** new case filed after entry of this opinion, advance the filing fee. If the debtor cannot pay the filing fee up front then part of the Law Firm's prepetition services must include preparation of a motion seeking waiver of the filing fee or a motion seeking to pay the filing fee in installments.

Notwithstanding that the Court finds the Law Firms' fees were reasonable, the Court finds that each of the Law Firms disclosures were either inadequate, misleading, or both. The McCoy Prepetition **[*105]** Agreement did not adequately describe what services are included as "Basic Services." The McCoy Prepetition Agreement also did not clearly outline the Debtor's three options postpetition: sign, represent yourself, or hire another lawyer to do the postpetition work.

The Brown Prepetition Agreement and Mcfarland Prepetition Agreement (collectively the "Semrad Prepetition Agreements") state the law firm agreed to represent the Debtors "in all aspects of the case" but then conditioned that promise on the Debtor executing the postpetition agreement. There are other prepetition obligations described as postpetition services in the Semrad Prepetition Agreements such as advising the Debtor of her obligation to **[**51]** attend the 341 meeting. Advising a potential debtor of his or her responsibilities as a debtor is clearly a prepetition obligation and should be explained when the process of bankruptcy is described to a potential client. The Semrad Prepetition Agreements also describe the filing fee as something the Court requires to be paid after the petition is filed. That is not accurate. The Brown Postpetition Agreement and Mcfarland Postpetition Agreement (collectively the "Semrad Postpetition

Agreements") included as a postpetition item services that must be provided prepetition including "advise Client(s) of the need to attend a debtor education course and provide a certificate of completion to the Firm." That is misleading and must be fixed. The Semrad Prepetition Agreements also list postpetition services, which list includes, if necessary, sending "*In re Mendiola*" letters. The Court has no idea what these letters are, and presumably neither does a potential chapter 7 consumer client.

All of this must be corrected, and presumably will be resolved when both Law Firms revise their agreements to comply with the requirements outlined in this opinion.

The Court will grant the UST's request for injunction **[**52]** insofar as, as of the date of this Order, all attorneys, including the Law Firms, must stop their current practices relating to bifurcated fee arrangements unless those arrangements comply with the requirements outlined by this Court. The balance of the UST's request is DENIED.

## <u>CONCLUSION</u>

The parties asked the Court for guidance regarding bifurcated fee arrangements in chapter 7 cases. The Court holds that so long as attorneys offering a bifurcated fee arrangement comply with the terms of this Order, those arrangements do not violate the Bankruptcy Code or Bankruptcy Rules, this Court's Local Rules, or the Florida Bar Rules.

# # #

**Tagged Opinion**

**ORDERED in the Southern District of Florida on June 16, 2021**.

/s/ Laurel M. Isicoff

**Laurel M. Isicoff**

**Chief United States Bankruptcy Judge**

End of Document